DocuSign Verified - df0bf32f-2856-4d56-ac17-197d77721e66
AuthentiSign ID: 1A5E9C49-33D3-EE11-85F9-6045BDD68161
Case 23-10566-KHK  Doc 412-1  Filed 04/25/24  Entered 04/25/24 11:54:01  Desc
Exhibit(s) A - Sales Contract  Page 1 of 15

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE    ASR

*Pennsylvania Association of Realtors*

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

| | |
|---|---|
| **BUYER(S):** ~~Monica Trejo~~ | **SELLER(S):** ~~Prop Eagle & Llc Invs~~ |
| Monica Casa LLC | H. Jason Gold, Trustee — Subject to Bankruptcy court approval. |
| **BUYER'S MAILING ADDRESS:** | **SELLER'S MAILING ADDRESS:** PO Box 57359, Washington, DC. 20037 |

## PROPERTY

ADDRESS (including postal city) **71 LUCY AVE**
**HUMMELSTOWN**    ZIP **17036**,
in the municipality of _____, County of **DAUPHIN**,
in the School District of **DERRY TOWNSHIP**, in the Commonwealth of Pennsylvania.
Tax ID #(s): **24-031-051-000-0000** and/or
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Buyer is not represented by a broker)**

| | |
|---|---|
| Broker (Company) **Coldwell Banker Realty** | Licensee(s) (Name) **Blanca Sosa** |
| Company License # **RB067335** | State License # **RS360448** |
| Company Address **555 Chocolate Ave, Hershey, PA 17033** | Direct Phone(s) **(717)892-0082** |
| | Cell Phone(s) |
| Company Phone **(717)534-2442)-** | Email **Blanca.sosa@cbrealty.com** |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☐ Buyer Agent (all company licensees represent Buyer) |
| ☒ Buyer Agent (Broker represents Buyer only) | ☒ Buyer Agent ~~with Designated Agency~~ (only Licensee(s) named above represent Buyer) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Seller is not represented by a broker)**

| | |
|---|---|
| Broker (Company) **Protus Realty, Inc.** | Licensee(s) (Name) **Sharon A Weaber** |
| Company License # **RB068595** | State License # **RS305087** |
| Company Address **747 Middletown RD, Hummelstown, PA 17036** | Direct Phone(s) **(717)580-2767** |
| | Cell Phone(s) |
| Company Phone **(717)329-6021** | Email **sharon@protusrealty.com** |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☐ Seller Agent (all company licensees represent Seller) |
| ☒ Seller Agent (Broker represents Seller only) | ☒ Seller Agent ~~with Designated Agency~~ (only Licensee(s) named above represent Seller) |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: **MT**    ASR Page 1 of 14    Seller Initials: _____

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2023
rev. 9/22; rel. 1/23

Coldwell Banker Realty - Hershey, 555 E. Chocolate Avenue Hershey PA 17033    Phone: 7178920082    Fax: 7175342446    71 LUCY AVE
Blanca Sosa    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    04/19/24

| 1 | 1. | **By this Agreement**, dated February 24, 2024 |
|---|---|---|
| 2 | | Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property. |
| 3 | 2. | **PURCHASE PRICE AND DEPOSITS (4-14)** |
| 4 | | (A) Purchase Price $ ~~210,000.00~~ 205,000   *MT* 04/19/24 |
| 5 | | (Two Hundred Ten Thousand   *HJGT* |
| 6 | | ___ U.S. Dollars), to be paid by Buyer as follows: |
| 7 | | 1. Initial Deposit, within ___ days (5 if not specified) of Execution Date, |
| 8 | | if not included with this Agreement: $ **10,000.00** |
| 9 | | 2. Additional Deposit within ___ days of the Execution Date: $ |
| 10 | | 3. ___ $ |
| 11 | | Remaining balance will be paid at settlement. |
| 12 | | (B) **All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer** |
| 13 | | **within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-** |
| 14 | | **sonal check.** |
| 15 | | (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: ___ |
| 16 | | ___ ), |
| 17 | | who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termi- |
| 18 | | nation of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the |
| 19 | | State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement. |
| 20 | 3. | **SELLER ASSIST (If Applicable) (1-10)** |
| 21 | | Seller will pay $ ___ or ___ % of Purchase Price (0 if not specified) toward |
| 22 | | Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is |
| 23 | | approved by mortgage lender.   May 15, 2024 or within 20 days of Bankruptcy Court Approval.   *HJGT* |
| 24 | 4. | **SETTLEMENT AND POSSESSION (1-23)** |
| 25 | | (A) Settlement Date is ___ ~~March 15, 2024~~ ___, or before if Buyer and Seller agree. |
| 26 | | (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless |
| 27 | | Buyer and Seller agree otherwise. |
| 28 | | (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: |
| 29 | | current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer |
| 30 | | fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will |
| 31 | | pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: |
| 32 | | ___ |
| 33 | | (D) For purposes of prorating real estate taxes, the "periods covered" are as follows: |
| 34 | | 1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31. |
| 35 | | 2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December |
| 36 | | 31. School tax bills for all other school districts are for the period from July 1 to June 30. |
| 37 | | (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: ___ |
| 38 | | ___ |
| 39 | | (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: ___ |
| 40 | | ___ |
| 41 | | (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures |
| 42 | | broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property |
| 43 | | is subject to a lease. |
| 44 | | (H) If Seller has identified in writing that the Property is subject to a lease or short-term rental agreement, possession is to be delivered |
| 45 | | by deed, existing keys and assignment of existing leases and short-term rental agreements for the Property, together with security |
| 46 | | deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases or short-term rental agree- |
| 47 | | ments, nor extend existing leases or short-term rental agreements, for the Property without the written consent of Buyer. Buyer |
| 48 | | will acknowledge existing lease(s) or short-term rental agreement(s) by initialing the lease(s) or short-term rental agreement(s) at |
| 49 | | the execution of this Agreement, unless otherwise stated in this Agreement. |
| 50 | | ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement. |
| 51 | 5. | **DATES/TIME IS OF THE ESSENCE (1-10)** |
| 52 | | (A) Written acceptance of all parties will be on or before: ~~02/27/2024~~ **5/14/2024**   *HJGT*   *MT* 04/19/24 |
| 53 | | (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the |
| 54 | | essence and are binding. |
| 55 | | (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by |
| 56 | | signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, exclud- |
| 57 | | ing the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be** |
| 58 | | **initialed and dated.** |
| 59 | | (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree- |
| 60 | | ment of the parties. |
| 61 | | (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms |
| 62 | | and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable |
| 63 | | to all parties, except where restricted by law. |
| 64 | | Buyer Initials: *MT* ___   ASR Page 2 of 14   Seller Initials: *ACV*   *HJGT* |

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   71 LUCY AVE

04/19/24   *MT*

AuDeDigiSign Verified - df0bf32f-2856-4d56-ac17-197d77721e66
Authentisign ID: 1A5E9C49-33D3-EE11-85F9-6045BDD68161
Case 23-10566-KHK    Doc 412-1    Filed 04/25/24    Entered 04/25/24 11:54:01    Desc
Exhibit(s) A - Sales Contract    Page 3 of 15

65  6. **ZONING (4-14)**
66     Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdi-
67     vidable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
68     voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
69     **Zoning Classification, as set forth in the local zoning ordinance: RESIDENTIAL**
70  7. **FIXTURES AND PERSONAL PROPERTY (1-20)**
71     (A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be
72         regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating
73         what items will be included or excluded in this sale.
74     (B) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens,
75         and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting
76         fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric
77         animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television
78         and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps;
79         storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; win-
80         dow covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments);
81         built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking
82         fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane
83         tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: _____
84     _____
85
86     (C) The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/
87         vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____
88     _____
89     (D) EXCLUDED fixtures and items: _____
90     _____
91  8. **BUYER FINANCING (8-22)**
92     (A) Buyer may elect to make this Agreement contingent upon obtaining mortgage financing. Regardless of **any** contingency elected in this
93         Agreement, if Buyer chooses to obtain mortgage financing, the following apply:
94         1. **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial
95            and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment
96            for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated below, or otherwise causes the lender to
97            reject, or refuse to approve or issue, a mortgage loan.
98         2. Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage
99            application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage
100           lender(s) identified in Paragraph 8(F), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for
101           Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage
102           loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the
103           mortgage loan application.
104        3. Seller will provide access to insurers' representatives and, as may be required by the mortgage lender(s), to surveyors, municipal
105           officials, appraisers, and inspectors.
106        4. If the mortgage lender(s) gives Buyer the right to lock in interest rate(s) at or below the maximum levels desired, Buyer will
107           do so at least  15  DAYS before Settlement Date.
108    (B) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
109        LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a spe-
110        cific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan.
111        The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be
112        higher or lower than the Purchase Price and/or market price of the Property.

113                                                    **FHA/VA, IF APPLICABLE**
114    (C) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
115        chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
116        has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
117        Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
118        $_____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
119        proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
120        is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
121        not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
122        Property are acceptable.
123    **Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration
124        Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters
125        or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years,
126        or both."

127  Buyer Initials: *MT*          ASR Page 3 of 14                                    Seller Initials: *MV*
                Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com     71 LUCY AVE
                                                                                                                                        *MT* 04/19/24  *HJGT*

AuthDigiSign Verified - d0bf32f-2856-4d56-ac17-197d77721e66)
Authentisign ID: 1A5E9C49-33D3-EE11-85F9-6045BDD68161
Case 23-10566-KHK   Doc 412-1   Filed 04/25/24   Entered 04/25/24 11:54:01   Desc
Exhibit(s) A - Sales Contract   Page 4 of 15

128  (D) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgment**
129  ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
130  getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
131  FHA will not perform a home inspection nor guarantee the price or condition of the Property.
132  ☐ Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(F))
133  and Buyer's acceptance of additional required repairs as required by the lender.
134  (E) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for
135  purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in
136  connection with this transaction is attached to this Agreement.

137  (F) **Mortgage Contingency**
138  ☒ **WAIVED.** This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the
139  parties may include an appraisal contingency. Buyer and Seller understand that the waiver of this contingency does not restrict
140  Buyer's right to obtain mortgage financing for the Property.
141  ☐ **ELECTED.** This sale is contingent upon Buyer obtaining mortgage financing according to the terms outlined below. Upon
142  receiving documentation demonstrating the mortgage lender's approval, whether conditional or outright, of Buyer's mort-
143  gage application(s) according to the following terms, Buyer will promptly deliver a copy of the documentation to Seller, but
144  in any case no later than _____ (Commitment Date).

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ _____ | Loan Amount $ _____ |
| Minimum Term _____ years | Minimum Term _____ years |
| Type of mortgage _____ | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender _____ | Mortgage lender _____ |
| Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of _____ %. | Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

160  1. The interest rate(s) and fee(s) provisions in Paragraph 8(F) are satisfied if the mortgage lender(s) gives Buyer the right to
161  guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. Buyer gives Seller the right, at Seller's sole
162  option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to
163  Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.
164  2. Seller may terminate this Agreement after the Commitment Date by written notice to Buyer if:
165  a. Seller does not receive a copy of the documentation demonstrating the mortgage lender's conditional or outright approval
166  of Buyer's mortgage application(s) by the Commitment Date,
167  b. The documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage applica-
168  tion(s) does not satisfy the loan terms outlined in Paragraph 8(F), OR
169  c. The documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage applica-
170  tion(s) contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal
171  must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed
172  in writing by the mortgage lender(s) within __7__ DAYS after the Commitment Date, or any extension thereof, other than
173  those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).
174  3. Seller's right to terminate continues until Buyer delivers documentation demonstrating the mortgage lender's conditional
175  or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this
176  Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing. Termination of this Agreement by
177  Buyer due to the mortgage lender's denial of Buyer's mortgage application(s) may demonstrate bad faith by Buyer and result
178  in the forfeiture of deposit monies to Seller.
179  4. If this Agreement is terminated pursuant to Paragraphs 8(F)(2), or the mortgage loan(s) is not obtained for settlement, all
180  deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
181  will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this
182  Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any
183  fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
184  (3) Appraisal fees and charges paid in advance to mortgage lender(s).
185  5. If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s),
186  requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller.
187  Within __5__ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the
188  required repairs at Seller's expense.
189  a. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property
190  and agrees to the RELEASE in Paragraph 28 of this Agreement.

191  Buyer Initials: _MT_      ASR Page 4 of 14      Seller Initials: _____ HJGT
                  Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   71 LUCY AVE
                                                                                                                            MT 04/19/24

192     b. If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will,
193        within __5__ DAYS, notify Seller of Buyer's choice to:
194        1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
195           will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as
196           the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreason-
197           able), OR
198        2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
199           of Paragraph 26 of this Agreement.
200     **If Buyer fails to respond** within the time stated above or fails to terminate this Agreement by written notice to Seller
201     within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and agree
202     to the RELEASE in Paragraph 28 of this Agreement.
203  9. **CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**
204     If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the
205     Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change
206     in employment; failure or loss of sale of Buyer's home; Buyer having incurred a new financial obligation; entry of a judgment against
207     Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to**
208     **purchase.**
209 10. **SELLER REPRESENTATIONS (1-20)**
210     (A) **Status of Water**
211         Seller represents that the Property is served by:
212         [X] Public Water    [ ] Community Water    [ ] On-site Water    [ ] None    [ ] _____
213     (B) **Status of Sewer**
214         1. Seller represents that the Property is served by:
215            [X] Public Sewer    [ ] Community Sewage Disposal System    [ ] Ten-Acre Permit Exemption (see Sewage Notice 2)
216            [ ] Individual On-lot Sewage Disposal System (see Sewage Notice 1)    [ ] Holding Tank (see Sewage Notice 3)
217            [ ] Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
218            [ ] None (see Sewage Notice 1)    [ ] None Available/Permit Limitations in Effect (see Sewage Notice 5)
219            [ ] _____
220         2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
221            **Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the
222            Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
223            repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
224            permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
225            administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
226            local agency charged with administering the Act will be the municipality where the Property is located or that municipality
227            working cooperatively with others.
228            **Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption**
229            **provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required
230            before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage
231            system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and
232            site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by
233            the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance
234            which occurs as a result.
235            **Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a**
236            **water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another**
237            **site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the
238            tank from the date of its installation or December 14, 1995, whichever is later.
239            **Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the dis-**
240            **tance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
241            provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
242            supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hor-
243            izontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
244            absorption area shall be 100 feet.
245            **Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage
246            facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until
247            the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations
248            promulgated thereunder.
249     (C) **Historic Preservation**
250         Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
251         _____
252     (D) **Land Use Restrictions**
253         1. [ ] Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
254            following Act(s) (see Notices Regarding Land Use Restrictions below):
255            [ ] Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
256            [ ] Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
257  Buyer Initials: _MT_    ASR Page 5 of 14    Seller Initials: _MV_

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   71 LUCY AVE

MT  04/19/24

DigiSign Verified - df0bf32f-2856-4d56-ac17-197d77721e66
Authentisign ID: 1A5E9C49-33D3-EE11-85F9-6045BDD68161
Case 23-10566-KHK  Doc 412-1  Filed 04/25/24  Entered 04/25/24 11:54:01  Desc
Exhibit(s) A - Sales Contract  Page 6 of 15

258 ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
259 ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
260 ☐ Other _____

2. **Notices Regarding Land Use Restrictions**
   a. **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
   b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.
   c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.
   d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**
Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**
1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
_____
2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____
_____

(G) **Highway Occupancy Permit**
Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

(H) **Internet of Things (IoT) Devices**
1. The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.
2. On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or anyone on Seller's behalf to access any IoT devices remaining on the Property.
3. Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes, updating network settings and submitting change of ownership and contact information to device manufacturers and service providers.
4. This paragraph will survive settlement.

11. **WAIVER OF CONTINGENCIES (9-05)**
If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.**

320 Buyer Initials: MT  ASR Page 6 of 14  Seller Initials: MV  HJGT

321  **12. BUYER'S DUE DILIGENCE/INSPECTIONS (1-23)**
322   (A) **Rights and Responsibilities**
323    1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.
326    2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.
329    3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**
330    4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
332    5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.
334   (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for Notices Regarding Property and Environmental Inspections)
339   (C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

342    **Home/Property Inspections and Environmental Hazards (mold, etc.)**
343  **Elected**  Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior  **Waived**
344  _MT_  doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances;
345   electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetra-
346  _HJGT_  tion; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environ-
347   mental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer
348   may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the
349   home inspection must be performed by a full member in good standing of a national home inspection association,
350   or a person supervised by a full member of a national home inspection association, in accordance with the ethical
351   standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or
352   architect. (See Notices Regarding Property & Environmental Inspections)

353    **Wood Infestation**
354  **Elected**  Buyer may obtain a written "Wood-Destroying Insect Infestation Report" from an inspector certified as a  **Waived** _MT_ 
355   wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided  _HJGT_
356   by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort-
357   gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be
358   limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection
359   reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesti-
360   cide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer
361   may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to
362   structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

363    **Deeds, Restrictions and Zoning**  _HJGT_
364  **Elected**  Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi-  **Waived** _MT_ 
365   nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the
366   Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking,
367   short-term rentals) is permitted and may elect to make the Agreement contingent upon an anticipated use. Present
368   use: _____

369    **Water Service**
370  **Elected**  Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise  **Waived** _HJGT_ 
371   qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
372   locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
373   condition, at Seller's expense, prior to settlement.

374    **Radon**  _HJGT_
375  **Elected**  Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection  **Waived** _MT_ 
376   Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02
377   working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground
378   by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can
379   increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a
380   house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any
381   person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department
382   of Environmental Protection. Information about radon and about certified testing or mitigation firms is available
383   through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State
384   Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800)23RADON or (717) 783-3594. www.epa.gov

385  Buyer Initials: _MT_    ASR Page 7 of 14    Seller Initials: _AV_ _HJGT_ 71 LUCY AVE _MT_ 04/19/24

| | | | |
|---|---|---|---|
| 386 | | **On-lot Sewage (If Applicable)** | |
| 387 | Elected | Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic | Waived |
| 388 | _____ | load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's | |
| 389 | | expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water | |
| 390 | | needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense, | |
| 391 | | prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection | |
| 392 | | Contingency. | |
| 393 | | **Property and Flood Insurance** | |
| 394 | Elected | Buyer may determine the insurability of the Property by making application for property and casualty insurance | Waived |
| 395 | _____ | for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate | |
| 396 | | with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, | |
| 397 | | Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more | |
| 398 | | prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood | |
| 399 | | insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more | |
| 400 | | flood insurance agents regarding the need for flood insurance and possible premium increases. | |
| 401 | | **Property Boundaries** | |
| 402 | Elected | Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal | Waived |
| 403 | _____ | description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property | |
| 404 | | surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural | |
| 405 | | or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen- | |
| 406 | | tations of size of property are approximations only and may be inaccurate. | |
| 407 | | **Lead-Based Paint Hazards (For Properties built prior to 1978 only)** | |
| 408 | Elected | Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct | Waived |
| 409 | _____ | a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint | |
| 410 | | hazards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard** | |
| 411 | | **Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved** | |
| 412 | | **lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a** | |
| 413 | | **separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any** | |
| 414 | | **lead-based paint records regarding the Property.** | |
| 415 | | **Other** | |
| 416 | Elected | _____ | Waived |
| 417 | | _____ | |

418 The Inspections elected above do not apply to the following existing conditions and/or items:
419 _____
420 _____

421   (D) **Notices Regarding Property & Environmental Inspections**
422     1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
423        the surface of a structure where it may cause mold and damage to the building's frame.
424     2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
425     3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
426        of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's respon-
427        sibility to dispose of them properly.
428     4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer
429        to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop
430        the property would be affected or denied because of its location in a wetlands area.
431     5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
432        pollen and viruses) have been associated with allergic responses.
433     6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
434        directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
435        20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
436        Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
437        and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
438        calling 1-877-724-3258.
439 13. **INSPECTION CONTINGENCY (10-18)**
440   (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
441      in Paragraph 12(C).
442   (B) **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in
443      Paragraph 13(C):
444     1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL **present all Report(s) in**
445        **their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in**
446        **Paragraph 28 of this Agreement,** OR
447     2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
448        **their entirety to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer
449        according to the terms of Paragraph 26 of this Agreement, OR

450 Buyer Initials: _MT_            ASR Page 8 of 14            Seller Initials: _____

AuDeDigiSign Verified - d0bf32f-2856-4d56-ac17-197d77721e66)
Authentisign ID: 1A5E9C49-33D3-EE11-85F9-6045BDD68161
Case 23-10566-KHK    Doc 412-1    Filed 04/25/24    Entered 04/25/24 11:54:01    Desc
Exhibit(s) A - Sales Contract    Page 9 of 15

3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.**
   The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
   a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation Period. During the Negotiation Period:
      (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
      (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
      If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the Negotiation Period ends.
   b. If no mutually acceptable written agreement is reached, or if Seller fails to respond during the Negotiation Period, within _____ days (2 if not specified) **following the end of the Negotiation Period,** Buyer will:
      (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR
      (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
   **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation Period.**

   (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within __5__ DAYS of receiving Seller's Proposal, or **if no Proposal is provided within the stated time,** Buyer will notify Seller in writing of Buyer's choice to:
   1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
   2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR
   3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within __5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
   **If Buyer fails to respond** within the time stated in Paragraph 13(C) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

14. **TITLES, SURVEYS AND COSTS (6-20)**
   (A) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report to Seller.
   (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; **Buyer should consult with a title insurance agent about Buyer's options.** Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance policy.
   (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
   (D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.
   (E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any. **Special Warranty Deed**   *JJGT*
   (F) If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

Buyer Initials: _MT_         ASR Page 9 of 14         Seller Initials: _MT_   *JJGT*   _MT_ 04/19/24

AuthDigiSign Verified - df0bf32f-2856-4d56-ac17-197d77721e66
Authentisign ID: 1A5E9C49-33D3-EE11-85F9-6045BDD68161
Case 23-10566-KHK    Doc 412-1    Filed 04/25/24    Entered 04/25/24 11:54:01    Desc
Exhibit(s) A - Sales Contract    Page 10 of 15

517  (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates,
518  as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned
519  to Buyer according to the terms of Paragraph 26 of this Agreement, or take such title as Seller can convey. If the title condition
520  precludes Seller from conveying title, Buyer's sole remedy shall be to terminate this Agreement. Upon termination, all deposit
521  monies shall be returned to Buyer according to the terms of Paragraph 26 of this Agreement and Seller will reimburse Buyer for
522  any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those
523  items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).
524  (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
525  about the status of those rights unless indicated elsewhere in this Agreement.
526  ☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**
527  (I) **COAL NOTICE (Where Applicable)**
528  THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-
529  NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COM-
530  PLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND
531  ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of
532  the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence
533  resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsid-
534  ence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose
535  of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27,
536  1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.
537  (J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
538  _____
539  (K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
540  ☐ **Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.**
541  2. **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private
542  Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that
543  is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obli-
544  gation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of
545  whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or
546  other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must
547  disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed,
548  the Act gives certain rights and protections to buyers.
549  **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)**
550  (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
551  received after Seller has signed this Agreement and before settlement, Seller will within __5__ DAYS of receiving the notices and/
552  or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
553  1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
554  notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
555  2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or **fails**
556  **within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within __5__ DAYS
557  that Buyer will:
558  a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
559  Paragraph 28 of this Agreement, OR
560  b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
561  Paragraph 26 of this Agreement.
562  **If Buyer fails to respond** within the time stated in Paragraph 15(A)(2) **or fails to terminate** this Agreement by written notice
563  to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
564  (B) If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than __15__ DAYS prior to
565  Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
566  of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of
567  the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to
568  Seller.
569  1. Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a
570  copy of the notice to Buyer and notify Buyer in writing that Seller will:
571  a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/
572  improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
573  b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
574  notify Seller in writing within __5__ DAYS that Buyer will:
575  (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph
576  28 of this Agreement and make the repairs at Buyer's expense after settlement, OR
577  (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
578  of Paragraph 26 of this Agreement.
579  **If Buyer fails to respond** within the time stated in Paragraph 15(B)(1)(b) **or fails to terminate** this Agreement by writ-
580  ten notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this

581  Buyer Initials: _MT_    ASR Page 10 of 14    Seller Initials: _AV_  HJGT

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    71 LUCY AVE

MT 04/19/24

Agreement, and **Buyer accepts the responsibility to perform the repairs/improvements** according to the terms of the notice provided by the municipality.

2. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(2) will survive settlement.**

16. **CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**
    (A) Property is NOT a Condominium or part of a Planned Community unless checked below.
        ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
        ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in Section 5407(a) of the Act.
    (B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:**
        If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant), Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
    (C) **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:**
        1. Within __15__ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.
        2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the association in the Certificate.
        3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
        4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

17. **REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**
    In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax.

18. **MAINTENANCE AND RISK OF LOSS (1-14)**
    (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property) specifically listed in this Agreement in its present condition, normal wear and tear excepted.
    (B) If any part of the Property included in the sale fails before settlement, Seller will:
        1. Repair or replace that part of the Property before settlement, OR
        2. Provide prompt written notice to Buyer of Seller's decision to:
            a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender, if any, OR
            b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed part of the Property.
        3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller fails to notify Buyer of Seller's choice,** Buyer will notify Seller in writing within __5__ DAYS or before Settlement Date, whichever is earlier, that Buyer will:
            a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
            b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
        **If Buyer fails to respond** within the time stated in Paragraph 18(B)(3) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
    (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced prior to settlement, Buyer will:

Buyer Initials: /MT/          ASR Page 11 of 14          Seller Initials: /MV/ /JGT/

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com    71 LUCY AVE

04/19/24  MT

AuthDigiSign Verified - df0bf32f-2856-4d56-ac17-197d77721e66
Authentisign ID: 1A5E9C49-33D3-EE11-85F9-6045BDD68161
Case 23-10566-KHK    Doc 412-1    Filed 04/25/24    Entered 04/25/24 11:54:01    Desc
Exhibit(s) A - Sales Contract    Page 12 of 15

646    1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
647    2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
648       Paragraph 26 of this Agreement.
649 **19. HOME WARRANTIES (1-10)**
650    At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller
651    understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any
652    pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or
653    certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends
654    a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.
655 **20. RECORDING (9-05)**
656    This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
657    causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.
658 **21. ASSIGNMENT (1-10)**
659    This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assign-
660    able, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless
661    otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.
662 **22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
663    (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
664        laws of the Commonwealth of Pennsylvania.
665    (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance
666        by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of
667        Pennsylvania.
668 **23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
669    The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
670    Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
671    real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
672    chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
673    to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S.
674    taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/
675    Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to
676    withhold, you may be held liable for the tax.
677 **24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
678    The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
679    for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal**
680    **police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular prop-
681    erty, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.
682 **25. REPRESENTATIONS (1-10)**
683    (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licens-
684        ees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement.
685        This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants,
686        representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not
687        be altered, amended, changed or modified except in writing executed by the parties.
688    (B) Unless otherwise stated in this Agreement, **Buyer has inspected the Property** (including fixtures and any personal property spe-
689        cifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property**
690        **IN ITS PRESENT CONDITION**, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
691        Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the
692        structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of
693        conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems
694        contained therein.
695    (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
696    (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.
697 **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**
698    (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
699        deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
700        Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
701    (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
702        determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
703        1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
704           agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
705        2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
706           Broker how to distribute some or all of the deposit monies.
707        3. According to the terms of a final order of court.
708        4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
709           deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

710    Buyer Initials: _MT_     ASR Page 12 of 14     Seller Initials: _MV_ HJGT

711     (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

(D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
1. Fail to make any additional payments as specified in Paragraph 2, OR
2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
1. On account of purchase price, OR
2. As monies to be applied to Seller's damages, OR
3. As liquidated damages for such default.

(G) [X] **SELLER IS LIMITED TO RETAINING THOSE SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

(I) Brokers and licensees are not responsible for unpaid deposits.

27. **MEDIATION (7-20)**
Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. Legal proceedings may be initiated prior to the completion of the mediation process to stop any statute of limitations from expiring and for the purpose of indexing a lis pendens by Buyer to prevent the transfer of title to a third party when Buyer is seeking to purchase the Property. The parties agree that all proceedings shall be stayed until the completion of mediation and that a court of competent jurisdiction may award attorneys' fees to the prevailing party should the court find that a party has unreasonably breached this provision or acted in bad faith. Any agreement reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

28. **RELEASE (9-05)**
**Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

29. **REAL ESTATE RECOVERY FUND (4-18)**
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

30. **COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
(A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt.
(B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant to Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

774 Buyer Initials: _MT_      ASR Page 13 of 14      Seller Initials: _VHJGT_ / _MT 04/19/24_

DocuSign Verified - df0bf32f-2856-4d56-ac17-197d77721e66
Authentisign ID: 1A5E9C49-33D3-EE11-85F9-6045BDD68161
Case 23-10566-KHK    Doc 412-1    Filed 04/25/24    Entered 04/25/24 11:54:01    Desc
Exhibit(s) A - Sales Contract    Page 14 of 15

775  **31. HEADINGS (4-14)**
776  The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
777  sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.
778  **32. SPECIAL CLAUSES (1-10)**
779  (A) **The following are attached to and made part of this Agreement if checked:**
780  ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
781  ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
782  ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
783  ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
784  ☐ Appraisal Contingency Addendum (PAR Form ACA)
785  ☐ Short Sale Addendum (PAR Form SHS)
786  ☐ _____
787  ☐ _____
788  ☐ _____

789  (B) **Additional Terms:**

791-797  **Property is sold strictly in "as-is, where-is". Property is being sold by a Bankruptcy Trustee. Sale is subject to US Bankrupty Court Approval. RL TITLE & Escrow to conduct the closing.**

800-801  *HJGT*    *MT* 04/19/24

804  Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

805  **This Agreement may be executed in one or more counterparts,** each of which shall be deemed to be an original and which counterparts
806  together shall constitute one and the same Agreement of the Parties.

807  **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are
808  advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

809  Return of this Agreement, and any addenda and amendments, including **return by electronic transmission**, bearing the signatures of all
810  parties, constitutes acceptance by the parties.

811  *MT* *HJGT* Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
812  *MT* *HJGT* Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.
813  *MT* *HJGT* Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
814  before signing this Agreement.
815  *MT* *HJGT* Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
816  received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

817  BUYER *Monica Trejo*                                     DATE 02/24/2024
     Monica Trejo
818  BUYER _____            DATE _____
819  BUYER _____            DATE _____

820  Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
821  Seller has received a statement of Seller's estimated closing costs before signing this Agreement.
822  SELLER *Maurice Verstandig* *H. Jason Gold, Trustee*    DATE 04/18/2024  *MT* 04/19/24
     Prop Eagle & Llc Invs                                        3/4/2024
823  SELLER _____            DATE _____  *HJGT*

H. Jason Gold, Chapter 7 Trustee
Not individually, but solely in his capacity as the Chapter 7
824  SELLER                                                   DATE _____
Trustee in Bankruptcy In re: Eagle Properties and Investments LLC
Bankruptcy Case No: 23-10566-KHK

ASR Page 14 of 14

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201    www.lwolf.com    71 LUCY AVE

BANKRUPTCY ADDENDUM TO SALES CONTRACT

Dated 4/19/2024 ("Contract")

H. Jason Gold, Trustee ("Seller") to

~~Monica Trejo~~ Monica Casa LLC ("Buyer") for the property:

71 Lucy Ave, Hummelstown, PA 17036 ("Property")

The provisions of this addendum shall govern notwithstanding any other provision of the Contract.

1. Conveyance will be by SPECIAL WARRANTY OF TITLE.

2. The property, and any contents being conveyed herewith, is being sold "AS-IS, WHERE-IS CONDITION." The sale of the Property is subject higher and better offers and subject to the approval of the US Bankruptcy Court, Eastern District of Virginia, Alexandria Division (the "Court"). The Listing Agent will provide to the Selling Agent a copy of the Sale Motion that seeks approval of this Offer with the Court.

3. No Dual Agency and No Designated Representation.

    (a) The Owner does not consent to designated representation thus Owner does not allow the Property to be shown to a buyer represented by the Broker through another designated representative associated with the Broker.

    (b) The Owner does not consent to dual representation thus Owner does not allow the property to be shown to a buyer represented by the Broker through the same sales associate.

4. In addition to the commission provided in the listing agreement, the Broker shall be entitled to be reimbursed for advanced property management and maintenance expenses, such as Trustee approved repairs, utility bills, lawn maintenance, etc., subject to the approval of the US Bankruptcy Court.

5. Seller's Closing Costs. Thru the date of closing, the Seller shall pay: (a) pro-rata real estate taxes, (b) property owners association fees, (c) Grantor's Deed Recording Tax, (d) Regional Congestion Relief Fee, (e) brokerage listing pursuant to the Court approved listing agreement and (f) $150.00 for the Settlement and/or Closing Fee due to the closing company. All other costs of closing, including any additional fees due to the closing company, shall be paid by the Buyer.

6. Title Company Incentive: If the Buyer agrees to have R.L. Title & Escrow of Vienna, Virginia conduct all aspects of the closing, then the Seller will pay an additional $1,000.00 for Settlement and/or Closing Fee costs. If the Buyer is getting a closing cost credit from the Seller, then this credit shall be included in that credit.

This Addendum shall not alter, modify or change in any other represent the Agreement, and except as modified herein, all the terms and provisions of the Agreement are expressly ratified and confirmed and shall remain in full force and effect.

SELLER:

*H. Jason Gold, Trustee*

H. Jason Gold, Chapter 7 Trustee
Not individually but solely in his capacity
as the Chapter 7 Trustee in Bankruptcy
*In re: Eagle Properties and Investments LLC*
*Bankruptcy Case No: 23-10566-KHK*

Date: 04/18/2024

BUYER(S):

*Monica Trejo*

_____

Date: 04/19/24