# RESIDENTIAL SALES CONTRACT (Virginia)

This sales contract ("Contract") is offered on __04/10/2024__ ("Date of Offer") between _____ __Wellset LLC_____ ("Buyer") and __H. Jason Gold, Trustee_____ _____ ("Seller") collectively referred to as "Parties," who, among other things, hereby confirm and acknowledge by their initials and signatures herein that by prior disclosure in this real estate transaction _ __CENTURY 21 New Millennium____ ("Listing Brokerage") represents Seller, and __Century 21 New Millennium__ _____ ("Cooperating Brokerage") represents Buyer. The Listing Brokerage and Cooperating Brokerage are collectively referred to as "Broker." In consideration of the mutual promises and covenants set forth below, and other good and valuable consideration the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. **REAL PROPERTY.** Buyer will buy and Seller will sell for the sales price in Paragraph 2(A) below ("Sales Price") Seller's entire interest in the real property (with all improvements, rights and appurtenances) described as follows ("Property"):
   TAX Map/ID # __0383210005_____ Legal Description: Lot(s) _____
   Section _____ Subdivision or Condominium __Windover heights_____
   Parking Space(s) # _____ County/Municipality __Fairfax_____
   Deed Book/Liber # __24669_____ Page/Folio # __9089_____
   Street Address __445 Windover Ave NW_____
   Unit # _____ City __Vienna_____ ZIP Code __22180_____

2. **PRICE AND FINANCING.** (Any % are percentages of Sales Price)
   A. **Sales Price**.                                                    $ __865,000.00_____
   B. **Down Payment** (If no financing, Down Payment equals Sales Price). $_____ or %_____
   C. **Financing.**
      1. First Trust (if applicable)                                     $_____ or %_____
         ☐ **Conventional** ☐ **VA** ☐ **FHA**
         ☐ **USDA** ☑ **Other:** __CASH_____
      2. Second Trust (if applicable)                                    $_____ or %_____
      3. Seller Held Trust (if applicable)                               $_____ or %_____

         **TOTAL FINANCING**                                             $_____ or %_____

   D. **"Seller Subsidy" to Buyer.** Sellers' net reduced by:            $ __0.00_____ or %_____
   E. **Financing Contingency.** Contract ☐ **is contingent** (addendum attached) OR ☑ **is not contingent** on financing. If Contract is contingent on financing: (i) Buyer will make written application for the financing and any lender-required property insurance no later than seven (7) days after Date of Ratification; and (ii) Buyer grants permission for Cooperating Brokerage and the lender to disclose to Listing Brokerage and Seller general information available about the progress of the loan application and loan approval process.
   F. **Appraisal Contingency.** Contract ☐ **is contingent** (addendum attached) OR ☑ **is not contingent** on Appraisal. If Contract is contingent on financing and/or Appraisal, Seller will provide Appraiser(s) reasonable access to Property for Appraisal purposes. If Contract is not contingent on financing and/or Appraisal; Seller ☐ **will OR** ☐ **will not** provide Appraiser(s) reasonable access for Appraisal purposes.

Created by Stephanie Young with SkySlope® Forms

If Contract is not contingent on Appraisal, Buyer will proceed to Settlement without regard to Appraisal. Seller and Buyer authorize Broker to release Sales Price to Appraiser(s) who contacts them to obtain the information. Nothing in this subparagraph creates a financing contingency not otherwise agreed to by the Parties.

**G. Buyer's Representations.** Buyer ☒ **will OR** ☐ **will not** occupy Property as Buyer's principal residence. **Unless specified in a written contingency, neither Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property.** Buyer acknowledges that Seller is relying upon Buyer's representations, including without limitation, the accuracy of financial or credit information given to Seller, Broker, or the lender by Buyer.

3. **DEPOSIT.** Buyer's deposit ("Deposit") in the amount of ☐ $ __50,000.00__ check/bank-wired funds; and/or ☐ $ _____ by note due and payable on _____ will be held in escrow by the following Escrow Agent: ☑ Settlement Agent **OR** ☐ Cooperating Broker **OR** ☐ Other _____. Buyer ☐ has delivered Deposit to Escrow Agent **OR** ☐ will deliver Deposit to Escrow Agent by __3__ Days after Date of Ratification. If Buyer fails to timely deliver Deposit to Escrow Agent as provided herein, Seller may at Seller's option Deliver to Buyer Notice to Void Contract. Upon Delivery of Seller Notice to Void Contract, all respective rights and obligations of the Parties arising under Contract will terminate. Buyer may cure Default by Delivering Deposit to Escrow Agent prior to Seller Delivery of Notice Voiding Contract.

Deposit will be deposited by Escrow Agent into an escrow account in accordance with applicable state and federal law. This account may be interest bearing and all Parties waive any claim to interest resulting from Deposit. Deposit will be held in escrow until: (i) credited toward Sales Price at Settlement; (ii) all Parties have agreed in writing as to its disposition; (iii) a court of competent jurisdiction orders disbursement and all appeal periods have expired; or (iv) disposed of in any other manner authorized by law. Seller and Buyer agree that no Escrow Agent will have any liability to any party on account of disbursement of Deposit or on account of failure to disburse Deposit, except only in the event of Escrow Agent's gross negligence or willful misconduct. Seller and Buyer further agree that Escrow Agent will not be liable for the failure of any depository in which Deposit is placed and that Seller and Buyer each will indemnify, defend and save harmless Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse Deposit, except in the case of Escrow Agent's gross negligence or willful misconduct.

Or within 14 days of Bankruptcy Court Approval    *HJGT*

4. **SETTLEMENT.** Seller and Buyer will make full settlement in accordance with the terms of Contract on, or with mutual consent before, __06/28/2024__ ("Settlement Date") except    *MJ* as otherwise provided in Contract. If Settlement Date falls on a Saturday, Sunday, or legal holiday, then Settlement will be on the prior business day.
**NOTICE TO BUYER REGARDING THE REAL ESTATE SETTLEMENT AGENTS ACT ("RESAA") Choice of Settlement Agent: Chapter 10 (§ 55.1-1000,** *et seq.***) of Title 51 of the Code of Virginia ("RESAA") provides that the purchaser or the borrower has the right to select the settlement agent to handle the closing of this transaction. The settlement agent's role in closing this transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the Parties. If part of the purchase price is financed, the lender for the purchaser will instruct the settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No settlement agent can provide legal advice to any party to the transaction except a settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a**

party to the transaction for the purpose of providing legal services to that party. No settlement agent may collect any fees from a represented seller payable to the settlement agent or its subsidiaries, affiliates, or subcontractors without first obtaining the written consent of the seller's counsel.

**Variation by agreement: The provisions of the RESAA may not be varied by agreement, and rights conferred by this chapter may not be waived. The seller may not require the use of a particular settlement agent as a condition of the sale of the property.**

**Escrow, closing and settlement service guidelines: The Virginia State Bar issues guidelines to help settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, settlement, or closing services. As a party to a real estate transaction, the purchaser or borrower is entitled to receive a copy of these guidelines from their settlement agent, upon request, in accordance with the provisions of the RESAA.**

**BUYER'S NOTICE TO SELLER.** Buyer designates ___RL TITLE & Escrow___ ("Settlement Agent"). Buyer agrees to contact Settlement Agent within ten (10) Days of Date of Ratification to schedule Settlement. Settlement Agent will order the title exam and survey if required. Pursuant to Virginia law, Settlement Agent is the sole agent responsible for conducting the Settlement as defined in Virginia Code § 55.1-900, *et seq.* Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

To facilitate Settlement Agent's preparation of various closing documents, including any Closing Disclosure, Buyer hereby authorizes Settlement Agent to send such Closing Disclosure to Buyer by electronic means and agrees to provide Settlement Agent with Buyer's electronic mail address for that purpose only.

5. **DOWN PAYMENT.** Down Payment will be paid on or before Settlement Date by certified or cashier's check or by bank-wired funds as required by Settlement Agent. An assignment of funds will not be used without prior written consent of Seller.

6. **DELIVERY.** This paragraph specifies the general delivery requirements under Contract. For delivery of property or condominium owner's association documents see the VIRGINIA RESALE DISCLOSURE ACT paragraph of Contract.

Delivery ("Delivery," "delivery," or "delivered") methods may include hand-carried, sent by professional courier service, by United States mail, by facsimile, or email transmission. The Parties agree that Delivery will be deemed to have occurred on the day: delivered by hand, delivered by a professional courier service (including overnight delivery service) or by United States mail with return receipt requested, or sent by facsimile or email transmission, either of which produces a tangible record of the transmission.

Deliveries will be sent as follows:
**A.** Addressed to Seller **at Property address unless otherwise specified below** by ☐ United States mail, hand delivery or courier service **OR** ☐ fax **OR** ☑ email (check all that apply):
To Seller: ___Stephen@realmarkets.com; stephanie@realmarkets.com___

**B.** Addressed to Buyer by ☑ United States mail, hand delivery or courier service **OR** ☐ fax **OR** ☐ email (check all that apply):
To Buyer: ___amit@eagleinvestmentsllc.com___

No party to Contract will refuse Delivery in order to delay or extend any deadline established in Contract.

7. **VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT.** The Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the Code of Virginia) requires Seller to deliver a disclosure statement prior to the acceptance of Contract unless the transfer of Property is exempt. The law requires Seller, on a disclosure statement provided by the Real Estate Board, to state that Seller makes no representations or warranties concerning the physical condition of the Property and to sell the Property "as is," except as otherwise provided in Contract.

8. **VIRGINIA RESALE DISCLOSURE ACT.** Seller represents that the Property ☐ is **OR** ☑ is not located within a development that is subject to the Virginia Property Owners' Association Act ("POAA"). Seller represents that the Property ☐ is **OR** ☐ is not located within a development that is subject to the Virginia Condominium Act ("Condo Act").

    **A.** Section 55.1-2308 of the Resale Disclosure Act requires the following contract language:

    Subject to the provisions of §55.1-2317, any contract for the resale of a unit in a common interest community shall disclose that (i) the unit is located in a common interest community; (ii) the seller is required to obtain from the association a resale certificate and provide it to the purchaser; (iii) the purchaser has the right to cancel the contract pursuant to §55.1-2312; (iv) the purchaser has the right to request an update of such resale certificate in accordance with §55.1-2311; and (v) the right to receive the resale certificate and the right to cancel the contract are waived conclusively if not exercised before settlement.

    The provisions of §55.1-2312 allow for Buyer cancellation of the Contract under the following circumstances: (i) within 3 days, or up to 7 days if extended by the ratified real estate contract, after the ratification date of the contract if the purchaser receives the resale certificate, whether or not complete, or a notice that the resale certificate is unavailable on or before the date that the contract is ratified; (ii) within 3 days, or up to 7 days if extended by ratified real estate contract, from the date the purchaser receives the resale certificate, whether or not complete, or a notice that the resale certificate is unavailable if delivery occurs after the contract is ratified; or (iii) at any time prior to settlement if the resale certificate is not delivered to the purchaser. Pursuant to §55.1-2307 and for purposes of this Paragraph, "ratified real estate contract" includes any addenda to Contract. If the unit is governed by more than one association, the timeframe for the purchaser's right of cancellation shall run from the date of delivery of the last resale certificate.

    **B.** For delivery of the Resale Certificate or the Notice of non-availability of the Certificate, Buyer prefers delivery at _____ if electronic or _____ if hard copy.

9. **PROPERTY MAINTENANCE AND CONDITION; INSPECTIONS.** Except as otherwise specified herein, Seller will deliver Property free and clear of trash and debris, broom clean and in substantially the same physical condition to be determined as of ☑ **Date of Offer OR** ☐ **Date of home inspection OR** ☐ **Other:** _____ (if no date is selected, then Date of Offer). Seller will have all utilities in service through Settlement. Buyer and Seller will not hold Broker liable for any breach of this Paragraph. Buyer acknowledges that except as otherwise specified in Contract, Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures will convey in its AS-IS condition as of the date specified above.

    ☐ Contract is contingent upon home inspection(s) and/or other inspections of Property. (Addendum

attached); **OR**

☑ Buyer waives the opportunity to make Contract contingent upon home inspection(s) and/or other inspections of Property.

If Contract is contingent upon home inspection(s) and/or other inspections of Property, Seller will provide Broker, Buyer, and inspector(s) retained by Buyer reasonable access to Property to conduct home inspection(s) and/or other inspection(s) of Property.

If Contract is not contingent upon home inspection(s) and/or other inspections of Property **Seller will not provide access** to anyone for the purpose of conducting inspection(s) except for walkthrough inspection(s) as provided below. **However, if checked** ☐ **Seller will** provide Broker, Buyer, and licensed (if applicable), professional, insured inspector(s) retained by Buyer reasonable access to Property to conduct home inspection(s) and/or other inspection(s) of Property beginning on _____ and ending on _____. Nothing in this subparagraph creates a contingency not otherwise agreed to by the Parties**.**

Regardless of whether Contract is contingent upon home inspection(s) and/or other inspections, Seller will provide Broker and Buyer reasonable access to Property to make walkthrough inspection(s) within seven (7) days prior to Settlement and/or occupancy.

10. **POSSESSION DATE.** Unless otherwise agreed to in writing between Seller and Buyer, Seller will give possession of Property at Settlement, including delivery of keys, mailbox keys, key fobs, codes, digital keys, if any. Seller will transfer exclusive control of any Smart Devices to Buyer at Settlement. If Seller fails to do so and occupies Property beyond Settlement, Seller will be a tenant at sufferance of Buyer and hereby expressly waives all notice to quit as provided by law. Buyer will have the right to proceed by any legal means available to obtain possession of Property. Seller will pay any damages and costs incurred by Buyer including reasonable attorney fees.

11. **UTILITIES; MAJOR SYSTEMS.** (Check all that apply)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Water Supply: | ☑ Public | ☐ Private Well | | ☐Community Well | | | | |
| Hot Water: | ☐ Oil | ☐ Gas | ☑ Elec. | ☐Other _____ | | | | |
| Air Conditioning: | ☐ Oil | ☐ Gas | ☑ Elec. | ☐Heat Pump | ☐Other_____ | ☐ Zones ____ | | |
| Heating: | ☐ Oil | ☐ Gas | ☑ Elec. | ☐Heat Pump | ☐Other_____ | ☐ Zones ____ | | |
| Sewage Disposal: | ☑ Public | ☐ Septic for # BR____ | ☐Community Septic | ☐ Alternative Septic for # BR:___ | | | | |

Septic Waiver Disclosure provided by Seller (if applicable) per VA Code §32.1-164.1:1. State Board of Health septic system waivers are not transferable.

12. **PERSONAL PROPERTY AND FIXTURES.** Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, indoor and outdoor sprinkler systems, bathroom mirrors, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, antennas, exterior trees, and shrubs. Smart home devices installed, hardwired or attached to personal property or fixtures conveyed pursuant to this paragraph, including but not limited to, smart switches, smart thermostats, smart doorbells, and security cameras ("Smart Devices") **DO** convey. Electric vehicle charging stations **DO** convey. Solar panels installed on the Property **DO** convey (see attached Addendum). All surface or wall mounted electronic components/devices **DO NOT** convey; however, all related mounts, brackets and hardware **DO** convey. If more than one of an item conveys, the number of items is noted.

**The items marked YES below are currently installed or offered and will convey.**

| Yes # Items | Yes # Items | Yes # Items |
|---|---|---|
| ☐ ___ Alarm System | ☐ ___ Freezer | ☐ ___ Satellite Dish |
| ☐ ___ Built-in Microwave | ☐ ___ Furnace Humidifier | ☐ ___ Storage Shed |
| ☐ ___ Ceiling Fan | ☐ ___ Garage Opener | ☐ ___ Stove or Range |
| ☐ ___ Central Vacuum | ☐ ___ w/ remote | ☐ ___ Trash Compactor |
| ☐ ___ Clothes Dryer | ☐ ___ Gas Log | ☐ ___ Wall Oven |
| ☐ ___ Clothes Washer | ☐ ___ Hot Tub, Equip & Cover | ☐ ___ Water Treatment System |
| ☐ ___ Cooktop | ☐ ___ Intercom | ☐ ___ Window A/C Unit |
| ☐ ___ Dishwasher | ☐ ___ Playground Equip | ☐ ___ Window Fan |
| ☐ ___ Disposer | ☐ ___ Pool, Equip, & Cover | ☐ ___ Window Treatments |
| ☐ ___ Electronic Air Filter | ☐ ___ Refrigerator | ☐ ___ Wood Stove |
| ☐ ___ Fireplace Screen/Door | ☐ ___ w/ ice maker | |

*MJM*  **OTHER CONVEYANCES (as-is, no additional value and for Seller convenience)** Property is
sold strictly in "as-is, where-is" condition.

*HJGT*  **DOES NOT CONVEY**_____

_____

**FUEL TANKS.** ☐ Fuel Tank(s) Leased # _____ **OR** ☐ Fuel Tank(s) Owned (Fuel Tank(s), if
owned, convey) # ____. Unless otherwise agreed to in writing, any heating or cooking fuels
remaining in supply tank(s) at Settlement will become the property of Buyer.

**LEASED ITEMS.** Any leased items, systems or service contracts (including, but not limited to, fuel
tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts)
**DO NOT** convey absent an express written agreement by Buyer and Seller. The following is a list of
the leased items within Property: _____

_____

13. **IRS/FIRPTA – WITHHOLDING TAXES FOR FOREIGN SELLER.** Seller ☐ **is OR** ☐ **is not** a
"Foreign Person," as defined by the Foreign Investment in Real Property Tax Act (FIRPTA). If
Seller is a Foreign Person, Buyer may be required to withhold and pay to the Internal Revenue
Service (IRS) up to fifteen percent (15%) of the Sales Price on behalf of the Seller and file an IRS
form which includes both Seller and Buyer tax identification numbers. The Parties agree to
cooperate with each other and Settlement Agent to effectuate the legal requirements. If Seller's
proceeds are not sufficient to cover the withholding obligations under FIRPTA, Seller may be
required to pay at Settlement such additional certified funds necessary for the purpose of making
such withholding payment.

*MJM*
14. **SMOKE DETECTORS.** ~~Seller~~ **Buyer** will deliver Property with smoke detectors installed and functioning
*HJGT*   in accordance with the laws and regulations of Virginia.

15. **TARGET LEAD-BASED PAINT HOUSING.** Seller represents that any residential dwellings at
Property ☑ **were OR** ☐ **were not** constructed before 1978. If the dwellings were constructed before
1978, then, unless exempt under 42 U.S.C. §4852d, Property is considered "target housing" under
the statute and a copy of the "Sale: Disclosure and Acknowledgment of Information on Lead-Based
Paint and/or Lead-Based Paint Hazards" has been attached and made a part of the Contract as
required by law. Buyer ☑ **does OR** ☐ **does not** waive the right to a risk assessment or inspection of
Property for the presence of lead-based paint and/or lead-based paint hazards. If not, a copy of the

Sales Contract Addendum for Lead-Based Paint Testing is attached to establish the conditions for a lead-based paint risk assessment or inspections.

16. **WOOD-DESTROYING INSECT INSPECTION.** ☑ **None** ☐ **Buyer at Buyer's expense OR** ☐ **Seller at Seller's expense** will furnish a written report from a licensed pest control firm dated not more than 90 days prior to Settlement ("WDI Report") showing that all dwelling(s) and/or garage(s) within Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of live wood-destroying insects and free from visible damage. Seller will provide Buyer, Broker and any representatives of the licensed pest control firm selected by the appropriate party above reasonable access to the Property to perform wood-destroying insect inspection(s). Any treatment for live wood-destroying insects and/or repairs for any damage identified in WDI Report will be made at Seller's expense and Seller will provide written evidence of such treatment and/or repair prior to date of Settlement which will satisfy the requirements of this Paragraph. Unless the Parties otherwise agree in writing, all treatment and/or repairs are to be performed by a contractor licensed to do the type of work required.

17. **HOME WARRANTY.** ☐ **Yes OR** ☑ **No**. Home Warranty Policy selected by: ☐ **Buyer OR** ☐ **Seller** and paid for and provided at Settlement by: ☐ **Buyer OR** ☐ **Seller**. Cost not to exceed $_____. Warranty provider to be _____.

18. **DAMAGE OR LOSS.** The risk of damage or loss to Property by fire, act of God, or other casualty remains with Seller until Settlement.

19. **TITLE.** Buyer will promptly order a title report, as well as any required or desired survey. Fee simple title to Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Buyer. Seller will convey title that is good, marketable and insurable with no additional risk premium to Buyer or non-standard exceptions. In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense. Title may be subject to easements, covenants, conditions and restrictions of record, if any, as of Date of Ratification.

*MJM* Seller will convey Property by ~~general~~ **Special** warranty deed ~~with English covenants of title~~ ("Deed"). The manner of taking title may have significant legal and tax consequences. Buyer is advised to seek the

*HJGT* appropriate professional advice concerning the manner of taking title. Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes Settlement Agent to obtain pay-off or assumption information from any existing lenders. Seller will pay any special assessments and will comply with all orders or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting Property on Settlement Date. Broker is hereby expressly released from all liability for damages by reason of any defect in the title.

20. **NOTICE OF POSSIBLE FILING OF MECHANICS' LIEN.** Code of Virginia §43-1 et seq. permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against Property. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 Days from the last day of the month in which the lienor last performed work or furnished materials; or (ii) 90 Days from the time the construction, removal, repair or improvement is terminated. AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.

**21. FEES.** Seller will pay for Deed preparation, costs to release any existing encumbrances, Grantor's tax, as well as any Regional Congestion Relief Fee and Regional WMATA Capital Fee (applicable in Alexandria City, Arlington, Fairfax, Loudoun and Prince William Counties and all cities contained within). Buyer will pay for the title exam, survey, and recording charges for Deed and any purchase money trusts. Third-party fees charged to Buyer and/or Seller, including but not limited to, legal fees and Settlement Agent fees, will be reasonable and customary for the jurisdiction in which Property is located.

**22. BROKER'S FEE.** Seller irrevocably instructs Settlement Agent to pay Broker compensation ("Broker's Fee") at Settlement as set forth in the listing agreement and to disburse any compensation offered by Listing Brokerage to Cooperating Brokerage in writing as of Date of Offer, and the remaining amount of Broker's compensation to Listing Brokerage.

**23. ADJUSTMENTS.** Rents, taxes, water and sewer charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the Date of Settlement. Taxes, general and special, are to be adjusted according to the most recent property tax bill(s) for Property issued prior to Settlement Date, except that recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller or allowance made at Settlement. If a loan is assumed, interest will be adjusted to the Settlement Date and Buyer will reimburse Seller for existing escrow accounts, if any.

**24. ATTORNEY'S FEES.**
**A.** If any Party breaches Contract and a non-breaching Party retains legal counsel to enforce its rights hereunder, the non-breaching Party will be entitled to recover against the breaching Party, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under Contract, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto. Should any tribunal of competent jurisdiction determine that more than one party to the dispute has breached Contract, then all such breaching Parties will bear their own costs, unless the tribunal determines that one or more parties is a "Substantially Prevailing Party," in which case any such Substantially Prevailing Party will be entitled to recover from any of the breaching parties, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto.
**B.** In the event a dispute arises resulting in the Broker (as used in this paragraph to include any agent, licensee, or employee of Broker) being made a party to any litigation by Buyer or by Seller, the Parties agree that the Party who brought Broker into litigation will indemnify the Broker for all of its reasonable Legal Expenses incurred, unless the litigation results in a judgment against Broker.

**25. DEFAULT.** If Buyer fails to complete Settlement for any reason other than Default by Seller, Buyer will be in Default and, at the option of Seller, Deposit may be forfeited to Seller as liquidated damages and not as a penalty. In such event, Buyer will be relieved from further liability to Seller. If Seller does not elect to accept Deposit as liquidated damages, Deposit may not be the limit of Buyer's liability in the event of a Default. Buyer and Seller knowingly, freely and voluntarily waive any defense as to the validity of liquidated damages under Contract, including Seller's option to elect liquidated damages or pursue actual damages, or that such liquidated damages are void as penalties or are not reasonably related to actual damages.

If Seller fails to perform or comply with any of the terms and conditions of Contract or fails to complete Settlement for any reason other than Default by Buyer, Seller will be in Default and Buyer will have the right to pursue all legal or equitable remedies, including specific performance and/or damages. If either Buyer or Seller is in Default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for title examination, Appraisal, survey and Broker's Fee in full.

If either Seller or Buyer refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who so refused to execute the Release will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation.

**26. VOID CONTRACT.** If Contract becomes void and of no further force and effect, without Default by either party, both Parties will immediately execute a release directing that Deposit, if any, be refunded in full to Buyer according to the terms of the DEPOSIT paragraph.

**27. DEFINITIONS.**

**A.** "Date of Ratification" means the date of Delivery of the final acceptance in writing by Buyer and Seller of all the terms of Contract to Buyer and Seller (not the date of the expiration or removal of any contingencies).

**B.** "Appraisal" means written appraised valuation(s) of Property, conducted by a Virginia-licensed appraiser ("Appraiser").

**C.** "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in Contract.

**D.** All references to time of day refer to the Eastern Time Zone of the United States.

**E.** For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9:00 p.m. on the Day specified.

**F.** The masculine includes the feminine and the singular includes the plural.

**G.** "Legal Expenses" means attorney fees, court costs, and litigation expenses, if any, including, but not limited to, expert witness fees and court reporter fees.

**H.** "Notices" ("Notice," "notice," or "notify") means a unilateral communication from one party to another. All Notices required under Contract will be in writing and will be effective as of Delivery. Written acknowledgment of receipt of Notice is a courtesy but is not a requirement.

**I.** "Buyer" and "Purchaser" may be used interchangeably in Contract and any accompanying addenda or notices.

**J.** "Seller Subsidy" is a payment from Seller towards Buyer's charges (including but not limited to loan origination fees, discount points, buy down or subsidy fees, prepaids or other charges) as allowed by lender(s), if any. Seller Subsidy reduces total proceeds to Seller at Settlement. It is Buyer's responsibility to confirm with any lender(s) that the entire credit provided herein may be utilized. If lender(s) prohibits Seller from the payment of any portion of this credit, then said credit will be reduced to the amount allowed by lender(s).

**28. TIME IS OF THE ESSENCE.** Time is of the essence means that the dates and time frames agreed to by the Parties must be met. Failure to meet stated dates or time frames will result in waiver of contractual rights or will be a Default under the terms of the Contract.

**29. REAL ESTATE LICENSED PARTIES.** The Parties acknowledge that _____ is an ☐ active **OR** ☐ inactive licensed real estate agent in ☐ Virginia and/or ☐ Other _____ and is either the ☐ Buyer **OR** ☐ Seller **OR** ☐ is related to one of the Parties in this transaction.

**30. ENTIRE AGREEMENT.** Buyer and Seller should carefully read Contract to be sure that the terms accurately express their agreement. All contracts for the sale of real property, including any changes or addenda, must be in writing to be enforceable. Contract will be binding upon the Parties and each of their respective heirs, executors, administrators, successors, and permitted assigns. The provisions not satisfied at Settlement will survive the delivery of the deed and will not be merged therein. Contract, unless amended in writing, contains the final and entire agreement of the Parties and the Parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of Contract will be governed by the laws of the Commonwealth of Virginia. Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Typewritten or handwritten provisions included in Contract will control all pre-printed provisions in conflict.

**31. ASSIGNABILITY.** Contract may not be assigned without the written consent of Buyer and Seller. If Buyer and Seller agree in writing to an assignment of Contract, the original parties to Contract remain obligated hereunder until Settlement.

**32. ADDITIONS.** The following forms, if ratified and attached, are made a part of Contract. (This list is not all inclusive of addenda that may need to be attached).

- ☐ Home Inspection/Radon Testing Contingency
- ☐ Lead-Based Paint Inspection Contingency
- ☑ Contingencies/Clauses
- ☐ Pre-Settlement Occupancy
- ☑ Residential Property Disclosure Statement
- ☐ FHA Home Inspection Notice
- ☐ Conventional Financing
- ☐ Extension of Review Period For Common Interest Community Resale Certificate

- ☐ New Home Sales Addendum
- ☐ Escalation Addendum
- ☐ Private Well and/or Septic Inspection
- ☐ Post-Settlement Occupancy
- ☑ Lead-Based Paint Disclosure
- ☐ VA/FHA/USDA Financing
- ☐ Addendum: Sale
- ☐ Solar Panel Addendum
- ☑ Other (specify): __Bankruptcy Addendum__

| Date of Ratification (see DEFINITIONS) |
|---|
| __04/11/2024_____ |

**Property is sold strictly in "as-is, where-is" condition. Property is being sold by a Bankruptcy Trustee. Sale is subject to US Bankruptcy Court Approval.**

*MJM*                    *HJGT*

**SELLER:**                                    **BUYER:**

04/11/2024    _H. Jason Gold Trustee_          04/11/2024 / _Monika Jain, Manager_
Date          Signature                        Date          Signature
**H. Jason Gold, Trustee**
**Not Individually but solely in**
**his capacity as Chapter 7**       /          _____ / _____
Date         Signature                         Date          Signature
**Trustee**
**In Re: Eagle Properties and**
**Investments LLC, Case No.**                  _____ / _____
**23-10566-KHK**
Date         Signature                         Date          Signature

_____ / _____       _____ / _____
Date         Signature                         Date          Signature

*************************************************************************

**For information purposes only:**

Listing Brokerage's Name and Address:         Cooperating Brokerage's Name and Address:

CENTURY 21 New Millennium                      Century 21 New Millennium

6631 Old Dominion Dr McLean VA 22101           6631 Old Dominion Dr McLean VA 22101

Brokerage Phone #: (703) 556-4222              Brokerage Phone #: _____

Bright MLS Broker Code: _____          Bright MLS Broker Code: _____

VA Firm License #: _____           VA Firm License #: _____

Agent Name: Stephen Karbelk                    Agent Name: Stephen Karbelk

Agent Email: stephen@realmarkets.com           Agent Email: stephen@realmarkets.com

Agent Phone #: (571) 481-1037                  Agent Phone #: (571) 481-1037

MLS Agent ID # _____            MLS Agent ID # 3056429

VA Agent License #: _____           VA Agent License #: 0225026849

Team Name: Real Markets                        Team Name: _____

Team Business Entity License #: _____        Team Business Entity License #: _____

**© 2024 Northern Virginia Association of REALTORS®, Inc.**



This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). All rights reserved. This form may only be used by REALTORS® and other members in good standing with NVAR and the National Association of REALTORS®. Reproduction or resale of this form, in whole or in part, or the use of the name NVAR in connection with any other form, is prohibited without prior written consent from NVAR.



DigiSign Verified - obff86d2-f48b-46f1-9470-5c45d04b5eb5cf
Case 23-10566-KHK    Doc 413-1    Filed 04/25/24    Entered 04/25/24 11:59:19    Desc
Exhibit(s) A - Sales Contract    Page 12 of 27

## SALE: DISCLOSURE AND ACKNOWLEDGMENT OF INFORMATION ON LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

For the sale of the Property at: <u>445 Windover Ave NW, Vienna, VA 22180</u>

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller=s possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**Seller's Disclosure (initial)**

<u>HJGT</u>    (a) Presence of lead-based paint and/or lead-based paint hazard (check one below):

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):

_____

_____

<u>HJGT</u>    ☑ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b) Records and Reports available to the seller (check one below):

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below):

**XX** Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment (initial)**

<u>MJM    /</u>    (c) Purchaser has received and had an opportunity to review copies of all information listed above.

<u>MJM    /</u>    (d) Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home*.

<u>MJM    /</u>    (e) Purchaser has (check one below):

☐ Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards; or

☑ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**Sales Associates' Acknowledgments (initial)**

<u>S.K    /S.K</u>    (f) Listing and Selling Sales Associates are aware of their duty to ensure compliance with 42 U.S.C. 4852d. These Associates have informed the Seller of the Sellers' obligations under this law as evidenced by Seller and Purchaser having completed this form.

**Certification of Accuracy**

The undersigned have reviewed the information above and certify that to the best of their knowledge the information they have provided is true and accurate.

**SELLER:**                                      **PURCHASER:**

04/11/2024    *H. Jason Gold Trustee*          04/11/2024    / *Monika Jain, Manager*
Date    Signature                              Date         Signature
H. Jason Gold, Trustee
**Not Individually but solely in his capacity as Chapter 7 Trustee**
**In Re: Eagle Properties and Investments LLC, Case No. 23-10566-KHK**

Date    Signature                              ____/____    Date    Signature

04/11/2024    /    *Stephen Karbelk*          04/11/2024    / *Stephen Karbelk*
Date    Signature of Listing Associate        Date    Signature of Selling Associate



**© 2008 Northern Virginia Association of REALTORS®, Inc.**

This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® and Non-Resident members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® and Non-Resident members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® or Non-Resident member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.



EQUAL HOUSING OPPORTUNITY

# FEDERAL LEAD-BASED PAINT DISCLOSURE LAW AND REGULATIONS:
## INFORMATION FOR OWNERS OF RESIDENTIAL PROPERTY

*Note: 42 U.S.C 4852d exempts from the disclosure requirements for lead-based paint certain transfers of residential property constructed before 1978. The exceptions are: property leased for 100 days or less with no possibility of renewal or extension; re-lease or renewal of a lease for the same property to the same tenant, where the landlord previously complied with the law's disclosures and has no new information about lead-based paint; housing for the elderly or disabled; foreclosure sales; property where there is no separate bedroom; and property that has been certified as lead-paint free under the law. All other residential properties constructed before 1978 are "target housing" subject to the law and regulations, and their owners must be informed of the following.*

**§35.88 Disclosure requirements for sellers and lessors.**

(a) The following activities shall be completed before the purchaser or lessee is obligated under any contract to purchase or lease target housing that is not otherwise an exempt transaction pursuant to §35.82. Nothing in this section implies a positive obligation on the seller or lessor to conduct any evaluation or reduction activities. (1) The seller or lessor shall provide the purchaser or lessee with an EPA-approved lead hazard information pamphlet. Such pamphlets include the EPA document entitled *Protect Your Family From Lead in Your Home* (EPA #747-K-94-001) or an equivalent pamphlet that has been approved for use in that State by EPA. (2) The seller or lessor shall disclose to the purchaser or lessee the presence of any known lead-based paint and/or lead-based paint hazards in the target housing being sold or leased. The seller or lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces. (3) The seller or lessor shall disclose to each agent the presence of any known lead-based paint and/or lead-based paint hazards in the target housing being sold or leased and the existence of any available records or reports pertaining to lead-based paint and/or lead-based paint hazards. The seller or lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces. (4) The seller or lessor shall provide the purchaser or lessee with any records or reports available to the seller or lessor pertaining to lead-based paint and/or lead-based paint hazards in the target housing being sold or leased. This requirement includes records and reports regarding common areas. This requirement also includes records and reports regarding other residential dwellings in multifamily target housing, provided that such information is part of an evaluation or reduction of lead-based paint and/or lead-based paint hazards in the target housing as a whole.

(b) If any of the disclosure activities identified in paragraph (a) of this section occurs after the purchaser or lessee has provided an offer to purchase or lease the housing, the seller or lessor shall complete the required disclosure activities prior to accepting the purchaser's or lessee's offer and allow the purchaser or lessee an opportunity to review the information and possibly amend the offer.

**§35.90 Opportunity to conduct an evaluation.**

(a) Before a purchaser is obligated under any contract to purchase target housing, the seller shall permit the purchaser a 10-day period (unless the parties mutually agree, in writing, upon a different period of time) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

(b) Notwithstanding paragraph (a) of this section, a purchaser may waive the opportunity to conduct the risk assessment or inspection by so indicating in writing.

**§35.92 Certification and acknowledgment of disclosure.**

(a) *Seller requirements.* Each contract to sell target housing shall include an attachment containing the following elements, in the language of the contract (e.g., English, Spanish): (1) A Lead Warning Statement consisting of the following language:

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

(2) A statement by the seller disclosing the presence of known lead-based paint and/or lead-based paint hazards in the target housing being sold or indicating no knowledge of the presence of lead-based paint and/or lead-based paint hazards. The seller shall also provide any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces. (3) A list of any records or reports available to the seller pertaining to lead-based paint and/or lead-based paint hazards in the housing that have been provided to the purchaser. If no such records or reports are available, the seller shall so indicate. (4) A statement by the purchaser affirming receipt of the information set out in such paragraphs (a)(2) and (a)(3) of this section and the lead hazard information pamphlet required under section 15 U.S.C. 2696. (5) A statement by the purchaser that he/she has either: (i) Received the opportunity to conduct the risk assessment or inspection required by §35.90(a); or (ii) Waived the opportunity. (6)When any agent is involved in the transaction to sell target housing on behalf of the seller, a statement that: (i) The agent has informed the seller of the seller's obligations under 42 U.S.C. 4852d; and (ii)The agent is aware of his/her duty to ensure compliance with the requirements of this subpart. (7) The signatures of the sellers, agents, and purchasers, certifying to the accuracy of their statements, to the best of their knowledge, along with the dates of signature.

(b)*Lessor requirements.* Each contract to lease target housing shall include, as an attachment or within the contract, the following elements, in the language of the contract (e.g., English, Spanish): (1) A Lead Warning Statement with the following language:

*Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, lessors must disclose the presence of lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.*

(2) A statement by the lessor disclosing the presence of known lead-based paint and/or lead-based paint hazards in the target housing being leased or indicating no knowledge of the presence of lead-based paint and/or lead-based paint hazards. The lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist in the housing, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces. (3) A list of any records or reports available to the lessor pertaining to lead-based paint and/or lead-based paint hazards in the housing that have been provided to the lessee. If no such records or reports are available, the lessor shall so indicate. (4) A statement by the lessee affirming receipt of the information set out in paragraphs (b)(2) and (b)(3) of this section and the lead hazard information pamphlet required under 15 U.S.C. 2696. (5)When any agent is involved in the transaction to lease target housing on behalf of the lessor, a statement that : (i) The agent has informed the lessor of the lessor's obligations under 42 U.S.C. 4852d; and (ii) The agent is aware of his/her duty to ensure compliance with the requirements of this subpart. (6) The signatures of the lessors, agents, and lessees certifying to the accuracy of their statements to the best of their knowledge, along with the dates of signature.

(c) *Retention of certification and acknowledgment information.* (1) The seller, and any agent, shall retain a copy of the completed attachment required under paragraph (a) of this section for no less than 3 years from the completion date of the sale. The lessor, and any agent, shall retain a copy of the completed attachment or lease contract containing the information required under paragraph (b) of this section for no less than 3 years from the commencement of the leasing period. (2) This recordkeeping requirement is not intended to place any limitations on civil suits under the Act, or to otherwise affect a lessee's or purchaser's rights under the civil penalty provisions of 42 U.S.C. 4852d(b)(3).

(d) The seller, lessor, or agent shall not be responsible for the failure of a purchaser's or lessee's legal representative (where such representative receives all compensation from the purchaser or lessee) to transmit disclosure materials to the purchaser or lessee, provided that all required parties have completed and signed the necessary certification and acknowledgment language required under paragraphs (a) and (b) of this section.

RECEIVED: *Monika Jain, Manager* /04/11/2024 _____ /_____
Signature                              Date         Signature                    Date

NVAR - 1036 - 9/96

Created by Stephanie Young with SkySlope® Forms

DigiSign Verified - ebff86d2-f48b-48f1-9470-5c4fd04b5eb5cf
Case 23-10566-KHK    Doc 413-1    Filed 04/25/24    Entered 04/25/24 11:59:19    Desc
Exhibit(s) A - Sales Contract    Page 14 of 27

# CONTINGENCIES/CLAUSES ADDENDUM

This Addendum is made on  __04/10/24__ , to a sales contract ("Contract") offered on  __04/10/2024__ ,
between  __Wellset LLC__ _____("Buyer") and
__H. Jason Gold, Trustee__ _____ ("Seller") for the
purchase and sale of Property:  __445 Windover Ave NW__ _____
__Vienna VA 22180__ _____

The following provisions if initialed by the parties are incorporated into and made a part of this
Contract:

## 1. CONTINGENCIES

**A. SALE OF BUYER'S PROPERTY AND KICK-OUT** This Contract is contingent until
9 p.m. _____ days after Date of Ratification ("Deadline") upon the sale of
Buyer's property located at _____
_____("Buyer's Property"). If Buyer does not satisfy, amend or remove
this contingency by the Deadline pursuant to sub-paragraph 3 below, this Contract will
become void.

1) Seller may continue to offer Property for sale and accept bona fide back-up offers to
this Contract until this contingency is satisfied or removed. If a back-up offer is
accepted, Seller will Deliver Notice to Buyer requiring that this contingency be
removed or satisfied pursuant to sub-paragraph 3 below not later than 9 p.m. _____
days after Delivery of Notice or this Contract will become void. If Buyer fails to
satisfy or remove the contingency by Deadline, this Contract will become void.

2) Buyer's Property will be listed exclusively and actively marketed by a licensed real
estate broker and entered into a multiple listing service within _____ days after the
Date of Ratification at a price not to exceed $ _____.

3) Buyer may:

   a. Satisfy this contingency by Delivering to Seller a copy of the ratified contract for
   the sale of Buyer's Property with evidence that all contingencies, other than
   financing and appraisal, have been removed or waived by Deadline **OR**

   b. Remove this contingency by Delivering to Seller (1) a letter from the lender
   stating that the financing is not contingent in any manner upon the sale and
   settlement of any real estate or obtaining a lease of any real estate and that Buyer
   has sufficient funds available for the down payment and closing costs necessary to
   complete Settlement; **OR** (2) evidence of sufficient funds available to complete
   Settlement without obtaining financing.

4) If Buyer satisfies the requirements of sub-paragraph 3.a. above, this Contract will
remain contingent upon the settlement of the sale of Buyer's Property. This paragraph
will survive the satisfaction of the contingency for the sale of Buyer's Property.

NVAR – K1344 – rev. 07/23                    Page 1 of 4

Created by Stephanie Young with SkySlope® Forms

DigiSign Verified - ebff86d2-f48b-46f1-9470-5c4fd04b5eb5cf
Case 23-10566-KHK    Doc 413-1    Filed 04/25/24    Entered 04/25/24 11:59:19    Desc
Exhibit(s) A - Sales Contract    Page 15 of 27

Settlement (under this Contract) may not be delayed more than _____ Days after the Settlement Date (specified in this Contract) without the parties' written consent. Seller ☐ will **OR** ☐ will not accept an assignment of funds. If a further delay is required to obtain coinciding settlements, Buyer may at Buyer's option declare the Contract void in writing. Nothing herein shall prohibit the parties from mutually agreeing to extend Settlement Date under terms acceptable by both parties. If at any time after Date of Ratification the contract for the sale of Buyer's Property becomes void, Buyer will immediately Deliver Notice to Seller together with evidence of such voiding, at which time either Seller or Buyer may declare this Contract void by Delivering Notice to the other party.

**B. SETTLEMENT OF BUYER'S PROPERTY** Settlement of this Contract is contingent upon the settlement of the contract for the sale of Buyer's property located at _____ _____ _____ ("Buyer's Property"). Settlement (under this Contract) may not be delayed more than _____ days after Settlement Date (specified in this Contract) without the parties' written consent. Seller ☐ will **OR** ☐ will not accept an assignment of funds. If a further delay is required to obtain coinciding settlements Buyer may at Buyer's option declare the Contract void in writing. Nothing herein shall prohibit the parties from mutually agreeing to extend Settlement Date under terms acceptable by both parties. If at any time after the Date of Ratification the contract for the sale of Buyer's Property becomes void, Buyer will immediately Deliver Notice to Seller together with evidence of such voiding, at which time either Seller or Buyer may declare this Contract void by Delivering Notice to the other party.

**C. CONTINGENT ON THE SELLER PURCHASING ANOTHER HOME** This Contract is contingent until 9 p.m. _____ days after Date of Ratification ("Deadline") to allow Seller to ratify a contract for purchase of another home and conduct whatever due diligence Seller deems necessary under the terms of Seller's contract to purchase another home.  This contingency will terminate at Deadline and this Contract will remain in full force and effect unless Seller delivers Notice to Buyer, prior to Deadline, that this Contract is void.

**D. GENERAL** This Contract is contingent until 9 p.m. _____ days after Date of Ratification ("Deadline") upon: _____ _____ _____ _____ _____

## 2. CLAUSES

**A. BACK-UP CONTRACT** This Contract is first back-up to another contract dated _____
between Seller and _____
_____ as Buyer.

This Contract becomes the primary contract immediately upon Notice from Seller that the
other contract is void. All deadlines contained in this Contract shall be measured from ☐
Date of Ratification **OR** ☐ date this Contract becomes primary.  Additionally,
Settlement Date will be _____ days after the date this Contract becomes primary.
Buyer may void this back-up Contract at any time by Delivering Notice to Seller prior to
Delivery of Notice from Seller that this Contract has become the primary contract. If the
other contract settles, this Contract will become void. The rights and obligations of the
parties under the primary contract are superior to the rights and obligations of the parties
to this back-up Contract.

**B. "AS IS" PROPERTY CONDITION** The following terms in this Contract are hereby
amended (check all that apply):
- ☑ All clauses pertaining to delivery of Property free and clear of trash and debris and
  broom clean are deleted
- ☑ Buyer assumes responsibility for compliance with all laws and regulations regarding
  smoke detectors
- ☑ All clauses pertaining to termites and wood-destroying insects are deleted
- ☑ All clauses pertaining to Seller's compliance with all orders or notices of violation of
  any county or local authority are deleted
- ☑ All requirements for Seller to comply with Property Owners' or Condominium
  Owners' Associations notices of violations related to the physical condition of
  Property are deleted

**C. UNREPRESENTED SELLER OR BUILDER AND BUYER'S BROKER** Upon
Seller's irrevocable instruction, it is understood and agreed by all parties that_____
_____ (Cooperating Broker's name) of _____
_____ (Cooperating Broker's firm) is acting as an agent
solely representing Buyer in this transaction ("Buyer's Broker").  Seller agrees to pay
Buyer's Broker a payment of $_____ ☐ in cash **OR** ☐_____
_____ % of the total sales price. Settlement Agent is hereby irrevocably directed to
deduct Buyer's Broker fee from Seller's proceeds of the sale at Settlement. The parties
acknowledge that Buyer's Broker relationship was disclosed to Seller and/or Seller's
agent prior to showing Property to Buyer.

**D. 1031 EXCHANGE (BUYER)** Property is being acquired to complete an IRC Section
1031 tax-deferred exchange pursuant to an exchange agreement. This Settlement will be
coordinated with _____
_____,

*HJGT*
*MJM*

DigiSign Verified - ebff86d2-f48b-46f1-9470-5c4fd04b5eb5cf
Case 23-10566-KHK Doc 413-1 Filed 04/25/24 Entered 04/25/24 11:59:19 Desc
Exhibit(s) A - Sales Contract Page 17 of 27

("Intermediary"), who shall instruct Seller as to the manner Property shall be conveyed to Buyer. There shall be no additional expense to Seller as a result of the exchange and Seller shall cooperate with Buyer and Intermediary in the completion of the exchange.

E. **1031 EXCHANGE (SELLER)** Seller and Buyer agree to transfer Property by utilizing an IRC Section 1031 tax-deferred exchange. Buyer agrees to cooperate with Seller, at no expense or liability to Buyer, in the completion of the exchange, including execution of all necessary documents, the intention of the parties being that Seller utilizes Section 1031 to defer taxes by acquiring like-kind real estate through an exchange agreement established at Settlement. The parties will execute all necessary documents as determined by Intermediary at Settlement, which documents are prepared at Seller's expense.

F. **REAL ESTATE COOPERATIVE** (Virginia Real Estate Cooperative Act § 55.1-2160) Seller ☐ has delivered **OR** ☐ will deliver to the Buyer the required public offering statement. If the statement was delivered prior to the Date of Ratification then Buyer has 10 days from the Date of Ratification to void this Contract by Delivering a Notice to Seller. If the statement was delivered after the Date of Ratification, then Buyer will have five days from receipt of the statement or Date of Settlement, whichever occurs first, to void the contract by Delivering a Notice to Seller.

**Except as modified by this Addendum, all of the terms and provisions of this Contract are hereby expressly ratified and confirmed and will remain in full force and effect.**

| SELLER: | BUYER: |
|---|---|
| 04/11/2024 *H. Jason Gold Trustee* | 04/11/2024 /*Monika Jain, Manager* |
| Date          Signature | Date          Signature |
| **H. Jason Gold, Trustee Not Individually but solely in his capacity as Chapter 7 Trustee In Re: Eagle Properties and Investments LLC, Case No. 23-10566-KHK** | / |
| Date          Signature | Date          Signature |
| / | / |
| Date          Signature | Date          Signature |
| / | |
| Date          Signature | Date          Signature |



© 2023 Northern Virginia Association of REALTORS®, Inc. This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). All rights reserved. This form may only be used by REALTORS® and other members in good standing with NVAR and the National Association of REALTORS®. Reproduction or resale of this form, in whole or in part, or the use of the name NVAR in connection with any other form, is prohibited without prior written consent from NVAR.



DigiSign Verified - cbff86d2-f48b-46f1-9470-5c4d04b5eb5cf
Case 23-10566-KHK Doc 413-1 Filed 04/25/24 Entered 04/25/24 11:59:19 Desc
Exhibit(s) A - Sales Contract Page 18 of 27



# Virginia Real Estate Board
https://www.dpor.virginia.gov/Consumers/Disclosure_Forms/

# RESIDENTIAL PROPERTY DISCLOSURE STATEMENT
## SELLER AND PURCHASER ACKNOWLEDGEMENT FORM

The Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*) requires the owner of certain residential real property—whenever the property is to be sold or leased with an option to buy—to provide notification to the purchaser of disclosures required by the Act and to advise the purchaser that the disclosures are listed on the Real Estate Board webpage.

Certain transfers of residential property are excluded from this requirement (see § 55.1-702).

**PROPERTY ADDRESS/ LEGAL DESCRIPTION:**
445 Windover Ave NW, Vienna, VA 22180

WINDOVER HEIGHTS LT 5 PT BLK 17

The purchaser is advised of the disclosures listed in the RESIDENTIAL PROPERTY DISCLOSURE STATEMENT located on the Real Estate Board webpage at:
https://www.dpor.virginia.gov/Consumers/Residential_Property_Disclosures

**The owner(s) hereby provides notification** as required under the Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*) and, if represented by a real estate licensee as provided in § 55.1-712, further acknowledges having been informed of the rights and obligations under the Act.

*H. Jason Gold Trustee*

Owner H. Jason Gold, Trustee

H. Jason Gold, Trustee Not Individually but solely in his capacity as Chapter 7 Trustee In Re: Eagle Properties and Investments LLC, Case No. 23-10566-KHK

04/11/2024
Date

**The purchaser(s) hereby acknowledges receipt of notification** of disclosures as required under the Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*). In addition, if the purchaser is (i) represented by a real estate licensee or (ii) not represented by a real estate licensee but the owner is so represented as provided in § 55.1-712, the purchaser further acknowledges having been informed of the rights and obligations under the Act.

*Monika Jain, Manager*

Purchaser

Purchaser

04/11/2024
Date

Date

DPOR rev 07/2021

**DPOR**
Department of Professional and Occupational Regulation

**Virginia Real Estate Board**

http://www.dpor.virginia.gov/Consumers/Disclosure_Forms/

# RESIDENTIAL PROPERTY DISCLOSURE STATEMENT
## REQUIRED NOTICE FOR BUYER TO EXERCISE NECESSARY DUE DILIGENCE

The Virginia Residential Property Disclosure Act (§ 55.1-700 et seq. of the *Code of Virginia*) governs the information owners must disclose to prospective purchasers of residential real property. Certain residential property transfers are excluded from the requirements (*see* § 55.1-702). Information below found in § 55.1-703:

1. **CONDITION:** The owner(s) of the residential real property makes no representations or warranties as to the condition of the real property or any improvements thereon, or with regard to any covenants and restrictions, or any conveyances of mineral rights, as may be recorded among the land records affecting the real property or any improvements thereon, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary including obtaining a home inspection, as defined in § 54.1-500, a mold assessment conducted by a business that follows the guidelines provided by the U.S. Environmental Protection Agency, and a residential building energy analysis, as defined in § 54.1-1144, in accordance with the terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

2. **LOT LINES:** The owner(s) makes no representation with respect to current lot lines or the ability to expand, improve, or add any structures on the property, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary, including obtaining a property survey and contacting the locality to determine zoning ordinances or lot coverage, height, or setback requirements on the property

3. **ADJACENT PARCELS:** The owner(s) makes no representations with respect to any matters that may pertain to parcels adjacent to the subject parcel, including zoning classification or permitted uses of adjacent parcels, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary with respect to adjacent parcels in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

4. **HISTORIC DISTRICT ORDINANCES(S):** The owner(s) makes no representations to any matters that pertain to whether the provisions of any historic district ordinance affect the property and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary with respect to any historic district designated by the locality pursuant to § 15.2-2306, including review of (i) any local ordinance creating such district, (ii) any official map adopted by the locality depicting historic districts, and (iii) any materials available from the locality that explain (a) any requirements to alter, reconstruct, renovate, restore, or demolish buildings or signs in the local historic district and (b) the necessity of any local review board or governing body approvals prior to doing any work on a property located in a local historic district, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

5. **RESOURCE PROTECTION AREAS:** The owner(s) makes no representations with respect to whether the property contains any resource protection areas established in an ordinance implementing the Chesapeake Bay Preservation Act (§ 62.1-44.15:67 et seq.) adopted by the locality where the property is located pursuant to § 62.1-44.15:74, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary to determine whether the provisions of any such ordinance affect the property, including review of any official map adopted by the locality depicting resource protection areas, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

*MJM*

DPOR rev 7/2022

Created by Stephanie Young with SkySlope® Forms

DigiSign Verified - cbff86d2-f48b-46f1-9470-5c4d04b5eb5cf

RESIDENTIAL PROPERTY DISCLOSURE STATEMENT
Virginia Real Estate Board

6.  **SEXUAL OFFENDERS:** The owner(s) makes no representations with respect to information on any sexual offenders registered under Chapter 23 (§ 19.2-387 et seq.) of Title 19.2, and purchasers are advised to exercise whatever due diligence they deem necessary with respect to such information, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

7.  **DAM BREAK INUNDATION ZONE(S):** The owner(s) makes no representations with respect to whether the property is within a dam break inundation zone and purchasers are advised to exercise whatever due diligence they deem necessary with respect to whether the property resides within a dam break inundation zone, including a review of any map adopted by the locality depicting dam break inundation zones.

8.  **WASTEWATER SYSTEM:** The owner(s) makes no representations with respect to the presence of any wastewater system, including the type or size thereof or associated maintenance responsibilities related thereto, located on the property and purchasers are advised to exercise whatever due diligence they deem necessary to determine the presence of any wastewater system on the property and the costs associated with maintaining, repairing, or inspecting any wastewater system, including any costs or requirements related to the pump-out of septic tanks, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

9.  **SOLAR ENERGY COLLECTION DEVICE(S):** The owner(s) makes no representations with respect to any right to install or use solar energy collection devices on the property.

10. **SPECIAL FLOOD HAZARD AREAS:** The owner(s) makes no representations with respect to whether the property is located in one or more special flood hazard areas and purchasers are advised to exercise whatever due diligence they deem necessary, including (i) obtaining a flood certification or mortgage lender determination of whether the property is located in one or more special flood hazard areas, (ii) reviewing any map depicting special flood hazard areas, (iii) contacting the Federal Emergency Management Agency (FEMA) or visiting the website for FEMA's National Flood Insurance Program or for the Virginia Department of Conservation and Recreation's Flood Risk Information System, and (iv) determining whether flood insurance is required, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

11. **CONSERVATION OR OTHER EASEMENTS:** The owner(s) makes no representations with respect to whether the property is subject to one or more conservation or other easements and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event, prior to settlement pursuant to such contract.

12. **COMMUNITY DEVELOPMENT AUTHORITY:** The owner(s) makes no representations with respect to whether the property is subject to a community development authority approved by a local governing body pursuant to Article 6 (§ 15.2-5152 et seq.) of Chapter 51 of Title 15.2 and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary in accordance with terms and conditions as may be contained in the real estate purchase contract, including determining whether a copy of the resolution or ordinance has been recorded in the land records of the circuit court for the locality in which the community development authority district is located for each tax parcel included in the district pursuant to § 15.2-5157, but in any event, prior to settlement pursuant to such contract.

DPOR rev 7/2022

DigiSign Verified - ebff86d2-f48b-46f1-9470-5c4d04b5eb5cf
Case 23-10566-KHK    Doc 413-1    Filed 04/25/24    Entered 04/25/24 11:59:19    Desc
Exhibit(s) A - Sales Contract    Page 21 of 27

RESIDENTIAL PROPERTY DISCLOSURE STATEMENT
Virginia Real Estate Board

**13. MARINE CLAYS:** The owner(s) makes no representations with respect to whether the property is located on or near deposits of marine clays (marumsco soils), and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary in accordance with terms and conditions as may be contained in the real estate purchase contract, including consulting public resources regarding local soil conditions and having the soil and structural conditions of the property analyzed by a qualified professional.

**14. RADON GAS:** The owner(s) makes no representations with respect to whether the property is located in a locality classified as Zone 1 or Zone 2 by the U.S. Environmental Protection Agency's (EPA) Map of Radon Zones, and purchasers are advised to exercise whatever due diligence they deem necessary to determine whether the property is located in such a zone, including (i) reviewing the EPA's Map of Radon Zones or visiting the EPA's radon information website; (ii) visiting the Virginia Department of Health's Indoor Radon Program website; (iii) visiting the National Radon Proficiency Program's website; (iv) visiting the National Radon Safety Board's website that lists the Board's certified contractors; and (v) ordering a radon inspection, in accordance with the terms and conditions as may be contained in the real estate purchase contract, but in any event prior to settlement pursuant to such contract.

**15. DEFECTIVE DRYWALL:** The owner(s) makes no representations with respect to the existence of defective drywall on the property, and purchasers are advised to exercise whatever due diligence they deem necessary to determine whether there is defective drywall on the property, in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event prior to settlement pursuant to such contract. For purposes of this disclosure, "defective drywall" means the same as that term is defined in § 36-156.1.

**16. LEAD PIPES:** The owner(s) makes no representations with respect to whether the property contains any pipe, pipe or plumbing fitting, fixture, solder, or flux that does not meet the federal Safe Drinking Water Act definition of "lead free" pursuant to 42 U.S.C § 300g-6, and purchasers are advised to exercise whatever due diligence they deem necessary to determine whether the property contains any pipe, pipe or plumbing fitting, fixture, solder, or flux that does not meet the federal Safe Drinking Water Act definition of "lead free," in accordance with terms and conditions as may be contained in the real estate purchase contract, but in any event prior to settlement pursuant to such contract.

**17. IMPOUNDING STRUCTURES OR DAMS:** The owner(s) makes no representations with respect to the condition or regulatory status of any impounding structure or dam on the property or under the ownership of the common interest community that the owner of the property is required to join, and purchasers are advised to exercise whatever due diligence a particular purchaser deems necessary to determine the condition, regulatory status, cost of required maintenance and operation, or other relevant information pertaining to the impounding structure or dam, including contacting the Department of Conservation and Recreation or a licensed professional engineer.

DPOR rev 7/2022

DigiSign Verified - ebff86d2-f48b-46f1-9470-5c4fd04b58b5cf

RESIDENTIAL PROPERTY DISCLOSURE STATEMENT
Virginia Real Estate Board

# ADDITIONAL WRITTEN DISCLOSURE REQUIREMENTS

## SELLERS AND BUYERS <u>MAY</u> NEED TO COMPLETE ONE OR MORE
## OF THE FOLLOWING WRITTEN DISCLOSURES

**NOTE:** This information is provided as a resource and does not constitute legal advice. The applicable Virginia Code sections should be consulted before taking any action based on this information, which is intended solely to provide an abridged overview of disclosure requirements and may not be applicable to all transactions.

The entire *Code of Virginia* is accessible online and searchable at http://law.lis.virginia.gov/vacode. You should retain the services of an attorney if you need legal advice or representation.

**FIRST SALE OF A DWELLING:** § 55.1-702.B contains other disclosure requirements for transfers involving the first sale of a dwelling because the first sale of a dwelling is exempt from the disclosure requirements listed above. The builder of a new dwelling shall disclose in writing to the purchaser thereof all known material defects which would constitute a violation of any applicable building code.

**PLANNING DISTRICT 15:** In addition, for property that is located wholly or partially in any locality comprising Planning District 15, the builder or owner (if the builder is not the owner of the property) shall disclose in writing any knowledge of (i) whether mining operations have previously been conducted on the property or (ii) the presence of any abandoned mines, shafts, or pits. If no defects are known by the builder to exist, no written disclosure is required by this subsection.

**SECTION 55.1-704** contains a disclosure requirement for properties in any locality in which there is a *military air installation*.

**SECTION 55.1-706** contains a disclosure requirement for properties with *pending building code or zoning ordinance violations*.

**SECTION 55.1-706.1** contains a disclosure requirement for properties with *lis pendens filed.*

**SECTION 55.1-708** contains a disclosure requirement for *properties previously used to manufacture methamphetamine*.

**SECTION 55.1-708.1** contains a disclosure requirement for properties with *privately owned stormwater management facilities*.

**SECTION 32.1-164.1:1** contains a disclosure requirement regarding the validity of *septic system operating permits*.

<u>**See also**</u> the *Virginia Condominium Act* (§ 55.1-1900 et seq.), the *Virginia Real Estate Cooperative Act* (§ 55.1-2100 et seq.), and the *Virginia Property Owners' Association Act* (§ 55.1-1800 et seq.).

DPOR rev 7/2022

BANKRUPTCY ADDENDUM TO SALES CONTRACT
Dated 4/10/2024 ("Contract")

H. Jason Gold, Trustee ("Seller") to

**Wellset, LLC**
_____("Buyer") for the property:

445 Windover Ave, NW, Vienna, VA 22180 ("Property")

The provisions of this addendum shall govern notwithstanding any other provision of the Contract.

1. Conveyance will be by SPECIAL WARRANTY OF TITLE.

2. The property, and any contents being conveyed herewith, is being sold "AS-IS, WHERE-IS CONDITION." The sale of the Property is subject higher and better offers and subject to the approval of the US Bankruptcy Court, Eastern District of Virginia, Alexandria Division (the "Court"). The Listing Agent will provide to the Selling Agent a copy of the Sale Motion that seeks approval of this Offer with the Court.

3. No Dual Agency and No Designated Representation.

   (a) The Owner does not consent to designated representation thus Owner does not allow the Property to be shown to a buyer represented by the Broker through another designated representative associated with the Broker.

   (b) The Owner does not consent to dual representation thus Owner does not allow the property to be shown to a buyer represented by the Broker through the same sales associate.

4. In addition to the commission provided in the listing agreement, the Broker shall be entitled to be reimbursed for advanced property management and maintenance expenses, such as Trustee approved repairs, utility bills, lawn maintenance, etc., subject to the approval of the US Bankruptcy Court.

5. Seller's Closing Costs. Thru the date of closing, the Seller shall pay: (a) pro-rata real estate taxes, (b) property owners association fees, (c) Grantor's Deed Recording Tax, (d) Regional Congestion Relief Fee, (e) brokerage listing pursuant to the Court approved listing agreement and (f) $150.00 for the Settlement and/or Closing Fee due to the closing company. All other costs of closing, including any additional fees due to the closing company, shall be paid by the Buyer.

6. Title Company Incentive: If the Buyer agrees to have R.L. Title & Escrow of Vienna, Virginia conduct all aspects of the closing, then the Seller will pay an additional $1,000.00 for Settlement and/or Closing Fee costs. If the Buyer is getting a closing cost credit from the Seller, then this credit shall be included in that credit.

This Addendum shall not alter, modify or change in any other represent the Agreement, and except as modified herein, all the terms and provisions of the Agreement are expressly ratified and confirmed and shall remain in full force and effect.

SELLER:                                          BUYER(S):

*H. Jason Gold Trustee*                          *Monika Jain, Manager*
_____                  _____
H. Jason Gold, Chapter 7 Trustee
Not individually but solely in his capacity        **Monika Jain, Manager**
as the Chapter 7 Trustee in Bankruptcy            _____
*In re: Eagle Properties and Investments LLC*
*Bankruptcy Case No: 23-10566-KHK*

Date: _____04/11/2024_____              Date: _____04/11/2024_____

**CENTURY 21**
New Millennium

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT
## (Virginia)

To          **Consumer** _____

From:       CENTURY 21 New Millennium

Property:   **445 Windover Ave NW, Vienna, VA 22180** _____

Date:       **04/10/2024** _____

This is to give you notice that CENTURY 21 New Millennium ("Real Estate Broker") has business relationships with Bay County Title, LLC ("BCT") and Bay County Settlements, LLC ("BCS"), which both provide settlement services and title insurance services, and Harbour, LLC ("Harbour"), and Capstone Insurance Group, Inc. ("CIG"), both of which provide homeowners' and flood insurance services. NM Management, II, LLC. ("NM"), which owns Real Estate Broker, is the 100% owner of BCS. NM has an 82% ownership interest in BCT, and Hazelwood Title & Escrow, Inc. ("Hazelwood"), a title insurance agency, has a 18% ownership interest in BCT. NM has a 90% ownership interest in Harbour and a private individual has a 10% ownership in Harbour. NM has a referral relationship with CIG. Because of these relationships, Real Estate Broker's referral of business to BCT, BCS, Harbour and/or CIG may provide Real Estate Broker, NM, and/or their employees or affiliates a financial or other benefit. BCT, BCS,Harbour and CIG are together referred to as "Listed Providers".

In addition, in connection with the purchase or sale of the above referenced property, you may desire to purchase a home warranty. Be advised that Real Estate Broker has entered into a marketing and advertising arrangement with HSA Home Warranty ("HSA"). While Real Estate Broker has no ownership interest in HSA, Real Estate Broker does receive fees from HSA for its marketing and advertising services.

Furthermore, if you are purchasing a property, you may desire to obtain a mortgage loan. Be advised that Real Estate Broker has entered into a marketing and advertising arrangement with Select Lending Services, LLC ("SLS"). While Real Estate Broker has no ownership interest in SLS, Real Estate Broker does receive fees from SLS for its marketing and advertising services.

Set forth below are the estimated charges or range of charges for the mortgage and settlement services listed. You are NOT required to use the Listed Provider, SLS or HSA, as a condition of the purchase or sale of your property. THERE ARE FREQUENTLY OTHER MORTGAGE AND SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

DigiSign Verified - ebff86d2-f48b-48f1-9470-5c4d04b56b5cf

**CENTURY 21**
New Millennium

| Provider | Settlement Services | Charge/Range of Charges | |
|---|---|---|---|
| Select Lending Services, LLC | *Loan Origination Fee* | 0 - 1% of loan amount | |
| | *Loan Discount Fee / Points* | 0 - 3% of loan amount | |
| | *Administrative Fee* | $750-$925 | |
| | *Processing Fee* | $600-$725 | |
| HSA Home Warranty | *Home Warranty Service* | $490-$755 | |
| Bay County Settlements, LLC Bay County Title, LLC | *Title Insurance* | Rates per $1,000 of coverage | |
| | | First $250,000 | $4.10 - $4.92 |
| | | $250,001 - $500,000 | $3.89 - $4.67 |
| | | $500,001 - $1,000,000 | $3.57 - $4.24 |
| | | $1,000,001 - $2,000,000 | $2.37 - $2.83 |
| | | $2,000,001 - $5,000,000 | $2.10 - $2.52 |
| | | Over $5,000,000 | Call Company for Quote |
| | | Simultaneous Issue Rate | $200 |
| Bay County Settlements, LLC Bay County Title, LLC | *Binder Fee* | $75 - $115 | |
| | *Settlement Fee* | $495 - $725 | |
| | *Title Examination Fee* | $125 - $250 | |
| | *Delivery I Copies* | $75 - $145 | |
| Harbour, LLC Capstone Insurance Group, Inc. | *Homeowner's Insurance, Flood Insurance* *Other Personal Insurance Products* | *The cost of homeowners insurance, flood insurance, andlor personal insurance products varies depending on several factors, including but not limited to: size, value, and age of the structures, geographical location, construction type, value of contents, intended use, and credit scores.* | |

DigiSign Verified - ebff86d2-f49b-46f1-9470-5c45d04b5eb5cf
Case 23-10566-KHK    Doc 413-1    Filed 04/25/24    Entered 04/25/24 11:59:19    Desc
Exhibit(s) A - Sales Contract    Page 26 of 27

**CENTURY 21**
New Millennium

### ACKNOWLEDGMENT

I/we have read this disclosure form, understand that Real Estate Broker is referring me/us to purchase the above-described settlement service(s) and that Real Estate Broker, NM, their employees and/or affiliates may receive a financial or other benefit as a result of this referral, and understand that Real Estate Broker receives a fee for performing marketing and advertising services for HSA and SLS.

*Monika Jain, Manager*
_____        04/11/2024
Buyer's or Seller's Signature                                    Date

*H. Jason Gold Trustee*
_____        04/11/2024
Buyer's or Seller's Signature                                    Date

**H. Jason Gold, Trustee**
**Not Individually but solely in**
**his capacity as Chapter 7**          _____
Buyer's or Seller's Signature                                    Date
**Trustee**
**In Re: Eagle Properties and**
**Investments LLC, Case No.**
**23-10566-KHK**                        _____
Buyer's or Seller's Signature                                    Date

DigiSign Verified - cbff86d2-f48b-46f1-9470-5c4fd04b5eb5cf
Case 23-10566-KHK    Doc 413-1    Filed 04/25/24    Entered 04/25/24 11:59:19    Desc
Exhibit(s) A - Sales Contract    Page 27 of 27

## DISCLOSURE OF BROKERAGE RELATIONSHIP
## FOR UNREPRESENTED PARTY(IES)

The undersigned unrepresented party(ies) do hereby acknowledge disclosure that the licensee

__Stephen Karbelk/Stephanie Young__ (Broker or Salesperson) associated with

__Century 21 New Millennium__ (Brokerage Firm) represents only the

following party in a real estate transaction for the sale or lease of _____

__445 Windover Ave NW, Vienna, VA 22180__ (Property):

☑ Seller(s)    OR    ☐ Landlord(s)

☐ Buyer(s)    OR    ☐ Tenant(s)

| **SELLER/LANDLORD** | **BUYER/TENANT** |
|---|---|
| __H. Jason Gold, Trustee__ | __Wellset LLC__ |
| Print Name | Print Name |
| __04/11/2024__    *H. Jason Gold Trustee* | __04/11/2024__    *Monika Jain, Manager* |
| Date          Signature | Date          Signature |
| H. Jason Gold, Trustee<br>Not Individually but solely in his capacity as Chapter 7 Trustee<br>In Re: Eagle Properties and Investments LLC, Case No. 23-10566-KHK | |

| **SELLER/LANDLORD** | **BUYER/TENANT** |
|---|---|
| _____ | _____ |
| Print Name | Print Name |
| _____/_____ | _____/_____ |
| Date          Signature | Date          Signature |

### © 2013 Northern Virginia Association of REALTORS®, Inc.



This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® and Non-Resident members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® and Non-Resident members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® or Non-Resident member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.

