# PROMISSORY NOTE

**DATED:**         November 23, 2021

**BORROWER:**      **EAGLE PROPERTIES AND INVESTMENTS LLC**
                   **445 Windover Avenue NW**
                   **Vienna, VA 22180-4232**

**LENDER:**        **ABL THREE, LLC**
                   **30 Montgomery Street, Suite 215**
                   **Jersey City, NJ 07302**

**PROPERTY:**      **Parcel No. 68-016-050-000-0000 located in the City of Harrisburg, County of Dauphin, Commonwealth of PA, more commonly known as 7213 Linglestown Road, Harrisburg, PA 17112**

**LOAN:**          **$287,000.00**

PROMISE TO PAY. **EAGLE PROPERTIES AND INVESTMENTS LLC** (the "Borrower") promises to pay to **ABL THREE, LLC** ("Lender"), or order, in lawful money of the United States of America, the principal amount of **$287,000.00**, together with interest on the unpaid principal balance from **November 23, 2021**, until paid in full, together with all applicable fees and expenses.

PAYMENT. Borrower will pay this loan in accordance with the following payment schedule: (i) the amount indicated on the HUD-1 at the closing of the Loan representing interest for the period from the date hereof through November 30, 2021; (ii) thereafter, monthly consecutive interest payments in the amount of $2,152.50, payable in arrears, beginning on January 1, 2022. Monthly payments will increase as constructions draws are disbursed.; and (ii) one principal and interest payment for the balance of the loan and accrued interest on December 1, 2022 ("Maturity Date"). The final payment will be for all principal and accrued interest not yet paid, together with any other unpaid amounts under this Note. Unless otherwise agreed or required by applicable law, payments will be applied first to any unpaid collection costs; then to any late charges; then to any accrued unpaid Interest; and then to principal.

INTEREST RATE. The interest rate on this Note is **9.00%**. The monthly interest rate for this Note is computed on a 30/360 basis; that is, by multiplying the outstanding principal balance by the Interest Rate divided by 12. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

PREPAYMENT. Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: ABL THREE, LLC.

LATE PAYMENT CHARGES. Late payment charges apply to both scheduled monthly interest payments and any balloon payment due upon the Maturity Date. Borrower agrees to pay the late payment charges as follows:

(a) Interest Payment Late Charges. Borrower shall pay Lender a late payment charge in the amount of ten percent (10.00%) of the then due monthly interest payment if said monthly interest payment not received by Lender within

- 2 -

EXHIBIT A

ten (10) days after its due date.

(b) Balloon Payment Late Charges. Borrower shall pay Lender a late payment charge in an amount equal to one percent (1.00%) of the unpaid principal then due if the entire amount of the unpaid principal, together with all accrued and unpaid interest thereon and other sums due under this Note are not received by Lender within ten (10) days after the Maturity Date. Borrower shall pay Lender an additional late payment charge in the amount of one percent (1.00%) of the unpaid principal then due for each successive ninety (90) day period during which all or any amounts due under this Note remain outstanding.

(c) Tender by Borrower or acceptance by the Lender of any balloon payment late charge shall not be construed to cure a maturity default or to extend the Maturity Date.

(d) Late payment charges shall be payable to Lender on demand. Any late charges hereunder shall be in addition to, and not in lieu of, any other right or remedy Lender may have, including but not limited to the Lender's right to receive and the Borrower's obligation to continue to pay principal and interest payments after the Maturity Date set forth in this Note if the entire Loan Amount has not been paid and to the Lender's right to reimbursement of costs and expenses.

INTEREST AFTER DEFAULT. Upon default, including failure to pay upon maturity, Lender, at its option, may, if permitted under applicable law, increase the interest rate on this Note to **18%** per annum ("Default Rate"). The regular interest rate and the Default Rate after default will not exceed the maximum rate permitted by applicable law.

DEFAULT. Each of the following shall constitute an event of default ("Event of Default") under this Note:

Payment Default. Borrower fails to make any payment when due under this Note. Borrower shall be in default with respect to any monthly interest payment if such interest payment is not received by Lender within 15 calendar days of its due date.

Other Defaults. Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents evidencing the Loan or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or there occurs an event of default under any related document.

Construction: Borrower fails to complete the renovations to the Property as evidenced by a final Certificate of Occupancy issued by the municipality by September 1, 2022.

Judgment. The entry of any court order/judgment or the filing by or against Borrower of any legal proceeding which adversely affects the Borrower's interest.

Default In Favor of Third Parties. Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

False Statements. Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

Death or Insolvency. The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

Secondary Liens. Borrower will not create, incur, assume or suffer to exist any mortgage, lien, charge, security interest or other encumbrance upon the Property other than the liens created hereby in favor of the Lender, without prior written consent of the Lender, which Lender may withhold in its sole discretion.

REDACTED

Creditor or Forfeiture Proceedings. Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Transfer of Property. Sale, transfer, hypothecation, assignment, or conveyance of the Property or the Improvements or any portion thereof or interest therein without Lender's prior written consent.

Adverse Change. A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

Default in Insurance and Taxes. Failure of the Borrower to pay insurance and taxes within 30 days of when same become due.

Cure Provisions. If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

EVENT OF DEFAULT: Lender may, in its sole discretion, invoke one or more of the following remedies after providing any notices required by applicable law: (i) declare the entire unpaid and outstanding balance due under this Note, including all principal, interest, points, fees, costs and other charges, to be accelerated and immediately due and payable without demand or notice of any kind; (ii) Confess Judgment without demand or notice of any kind; (iii) assess and collect default interest at the Default Rate of the outstanding balance due under this Note; (iv) enforce the remedies set forth in the Mortgage(s), Security Agreement, Construction Loan Agreement and Guaranty which secure the loan evidenced by this Note; and (v) invoke any other remedies permitted by law.

CROSS-DEFAULT: Any default under the terms of any loan agreement, promissory note, deed of trust, mortgage, lease, conditional sale contract or other agreement, document or instrument evidencing, governing or securing any indebtedness owing by Borrower or any Affiliate of Borrower to Lender or any Affiliate of Lender, shall, at Lender's option, constitute a default under this Note. The following definitions shall apply to this Section: (a) "Affiliate" means, with respect to any Person, any other Person that is directly or indirectly Controlling, Controlled by or under common Control with, such Person; (b) "Control" and derivative terms means the possession, directly or indirectly, and acting either alone or together with others, of the power or authority to direct or cause the direction of the management, material policies, material business decisions or the affairs of a Person, whether through the ownership of equity securities or interests, by contract or other means; and (c) "Person" means any natural person, business, corporation, company, and or association, limited liability company, partnership, limited partnership, limited liability partnership, joint venture, business enterprise, trust, government authority or other legal entity.

**CONFESSION OF JUDGMENT.** EACH UNDERSIGNED BORROWER HEREBY GRANTS TO LENDER THE RIGHT TO DECLARE ALL PRINCIPAL, INTEREST AND CHARGES OWED UNDER THIS NOTE TO BE IMMEDIATELY DUE AND PAYABLE, WITHOUT FURTHER ACTION OF ANY KIND ON THE PART OF THE LENDER. IN ADDITION, EACH UNDERSIGNED BORROWER HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS THE PROTHONOTARY OR CLERK OR ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR AND CONFESS JUDGMENT THEREIN AGAINST HIM/HER/IT FOR THE AMOUNT WHICH MAY BE DUE HEREIN AS EVIDENCED BY THE AFFIDAVIT SIGNED BY AN OFFICER OF THE LENDER SETTING FORTH THE AMOUNT THEN DUE, INCLUDING ACCRUED INTEREST, CHARGES, FEES, LATE CHARGES, COSTS, AND ANY AND ALL CHARGES, TAXES, AND LIENS PAID BY LENDER, ITS SUCCESSORS AND ASSIGNS AND IN ANY MANNER AFFECTING OR CHARGEABLE AGAINST THE PREMISES AND IMPROVEMENTS DESCRIBED IN THE MORTGAGE PLUS ATTORNEY'S FEES IN THE AMOUNT OF FIFTEEN (15%) PERCENT OF THE AMOUNT DUE, BUT IN NO EVENT LESS THAN FIVE THOUSAND ($5,000.00) DOLLARS, AND ANY AND ALL CHARGES, TAXES, AND LIENS PAID BY LENDER, ITS SUCCESSORS AND ASSIGNS AND IN ANY MANNER AFFECTING OR CHARGEABLE AGAINST THE PREMISES AND IMPROVEMENTS DESCRIBED IN THE MORTGAGE TOGETHER WITH COSTS OF SUIT AND RELEASE OF ERRORS. IF A COPY HEREOF, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN SAID PROCEEDING, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. EACH BORROWER WAIVES THE RIGHT TO NOTICE AND A HEARING, ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT WITH RESPECT TO THE ENTRY OF ANY CONFESSION OF JUDGMENT. FURTHER, EACH UNDERSIGNED BORROWER SPECIFICALLY WAIVES AND DISCLAIMS THE BENEFITS AND PROTECTIONS AFFORDED TO HIM/HER/IT AS PRINCIPAL, WITH RESPECT TO THE EXERCISE OF A POWER OF ATTORNEY BY THE AGENT UNDER 20 Pa.C.S. §5601.3(b), INCLUDING, BUT NOT LIMITED TO, THE AGENT'S DUTY TO ACT LOYALLY AND IN THE BEST INTERESTS OF THE PRINCIPAL AND TO AVOID CONFLICTS OF INTEREST. NO SINGLE EXERCISE SHALL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE OR VOID, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS THE HOLDER HEREOF SHALL ELECT, UNTIL ALL SUMS PAYABLE OR THAT MAY BECOME PAYABLE HEREUNDER BY THE BORROWER HAVE BEEN PAID IN FULL.

ATTORNEYS' FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

JURY WAIVER. Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

GOVERNING LAW. This Note will be governed by the laws of the **Commonwealth of Pennsylvania**.

REDACTED

CHOICE OF VENUE. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of **Hudson County, State of New Jersey**.

DISHONORED ITEM FEE. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

RIGHT OF SETOFF. To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking. savings. or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

COLLATERAL. Borrower acknowledges this Note is secured by a first mortgage lien on property located at:

**Parcel No. 68-016-050-000-0000 located in the City of Harrisburg, County of Dauphin, Commonwealth of PA, more commonly known as 7213 Linglestown Road, Harrisburg, PA 17112**

COMMITMENT TO SURVIVE THE CLOSING. The parties hereto agree that this commitment and the General Conditions shall survive the Closing and that each and every one of the obligations and undertakings of the Borrower and any guarantor named herein shall be continuing obligations and undertakings and shall not cease and desist until the entire Loan, together with all interest and fees due herein and any other amounts which may accrue pursuant hereto and/or to the Loan Documents executed pursuant thereto, shall have been paid in full and until all obligations and undertakings of the Borrower and said Guarantor shall have been fully completed and discharged.

SUCCESSOR INTERESTS. The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

GENERAL PROVISIONS. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

- SIGNATURE PAGE TO FOLLOW -

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER, INTENDING TO BE LEGALLY BOUND, AGREES TO THE TERMS OF THE NOTE. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE. THIS PROMISSORY NOTE IS DATED **November 23, 2021.**

**BORROWER:**
**EAGLE PROPERTIES AND INVESTMENTS LLC,**
a Virginia limited liability company

By: _Monika Jain_
**MONIKA JAIN,** Managing Member

~~COMMONWEALTH OF PENNSYLVANIA~~ STATE of Maryland )
                                                    ) SS:
COUNTY OF Montgomery                                )

I CERTIFY that on November 23, 2021, **MONIKA JAIN,** personally came before me and acknowledged under oath, to my satisfaction, that she was the maker of the attached instrument; was authorized to and did execute this instrument as Managing Member of **EAGLE PROPERTIES AND INVESTMENTS LLC,** a Virginia limited liability company, the entity named in this instrument; and executed this instrument as the act of the entity named in this instrument.

_____
Notary Public

Daniel J. Kotz
NOTARY PUBLIC
Montgomery County
State of Maryland
My Commission Expires
July 6, 2022

REDACTED

Prepared By:
Kaplin Stewart Meloff Reiter & Stein, P.C.
Marc Snyder, Esquire
910 Harvest Drive, Suite 200
Blue Bell, PA 19422
(610) 260-6000

Return to:
Colorado Federal Savings Bank
5174 Hillsdale Circle
El Dorado, CA 95762

Tax Parcel No.: 68-016-050-000-0000
UPI# 68-016-050-000-0000
REDACTED

ReturnTo:
CLOSELINE, LLC
702 KING FARM BLVD. SUITE 155
ROCKVILLE, MD 20850

## OPEN-END MORTGAGE
[THIS MORTGAGE SECURES FUTURE ADVANCES]

| | |
|---|---|
| **DATED:** | November 23, 2021 |
| **BORROWER:** | **EAGLE PROPERTIES AND INVESTMENTS LLC**<br>445 Windover Avenue NW<br>Vienna, VA 22180-4232 |
| **LENDER:** | **ABL THREE, LLC**<br>30 Montgomery Street, Suite 215<br>Jersey City, NJ 07302 |
| **PROPERTY:** | Parcel No. 68-016-050-000-0000 located in the City of Harrisburg, County of Dauphin, Commonwealth of PA, more commonly known as 7213 Linglestown Road, Harrisburg, PA 17112 |
| **LOAN:** | $287,000.00 |

*West Hanover Township*

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

Borrower. The word "Borrower" means EAGLE PROPERTIES AND INVESTMENTS LLC and includes all co-signers and co-makers signing the Note.

Default. The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

- 1 -

16861/1/7357850v2

EXHIBIT B

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

Grantor. The word "Grantor" (or sometimes "Mortgagor") means **EAGLE PROPERTIES AND INVESTMENTS LLC.**

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Improvements. The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

Indebtedness. The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

Lender: The word "Lender" (or sometimes "Mortgagee") means **ABL THREE, LLC** and its successors and assigns.

Mortgage. The word "Mortgage" means this Mortgage given by Grantor for the benefit of Lender.

Note. The word "Note" means the promissory note dated **November 23, 2021,** in the original principal amount of **$287,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancing of, consolidations of, and substitutions for the promissory note or agreement.

Personal Property. The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

Property. The word "Property" means collectively the Real Property and the Personal Property.

Real Property. The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

Related Documents. The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

Rents. The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and

other benefits derived from the Property.

THIS MORTGAGE dated **November 23, 2021**, is made and executed by **EAGLE PROPERTIES AND INVESTMENTS LLC** whose address is set forth above (referred to below as "Grantor") for the benefit of **ABL THREE, LLC** ("Lender").

GRANT OF MORTGAGE. For valuable consideration, Grantor mortgages and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including .without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in the **County of Dauphin**, Commonwealth of Pennsylvania:

> **Parcel No. 68-016-050-000-0000 located in the City of Harrisburg, County of Dauphin, Commonwealth of PA, more commonly known as 7213 Linglestown Road, Harrisburg, PA 17112**

### SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

This Open-End Mortgage is a valid first mortgage on the subject property.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

ASSIGNMENT OF RENTS AND LEASES: Grantor presently assigns to Lender, as further security for the payment of the indebtedness secured hereby, all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property, including but not limited to the rents, issues and profits of the Premises, together with all leases and other documents evidencing such rents, issues and profits now or hereafter in effect and any and all deposits held as security under said leases, and shall, upon demand, deliver to the Lender an executed counterpart of each such lease or other document. Nothing contained in the foregoing sentence shall be construed to bind the Lender to the performance of any of the covenants, conditions or provisions contained in any such lease or other document or otherwise to impose any obligation on the Lender (including, without limitation, any liability under the covenant of quiet enjoyment contained in any lease in the event that any tenant shall have been joined as a party defendant in any action to foreclose this Mortgage and shall have been barred and foreclosed thereby of all right, title and interest and equity of redemption in the Premises), except that the Lender shall be accountable for any money actually received pursuant to such assignment. The Grantor hereby further grants to the Lender the right (a) to enter upon and take possession of the Premises for the purpose of collecting the said rents, issues and profits; (b) to dispossess by the usual summary proceedings any tenant defaulting in the payment thereof to the Lender; (c) to let the Premises, or any part thereof, and (d) to apply said rents, issues and profits, after payment of all necessary charges and expenses, on account of said indebtedness. Such assignment and grant shall continue in effect until the indebtedness secured by this Mortgage is paid, the execution of this Mortgage constituting and evidencing the irrevocable consent of the Grantor to the entry upon and taking possession of the Premises by the Lender pursuant to such grant, whether foreclosure has been instituted or not and without applying for a receiver. The Lender, however, grants to the Grantor a license to collect and receive the rents, issues and profits of the Premises until the occurrence of a default by the Grantor under any of the covenants, conditions or agreements contained in this Mortgage. The Grantor agrees to hold said rents, issues and profits as a trust fund for the benefit of the Lender and to apply the same as required by the Lender in payment of principal and interest becoming due on this Mortgage and in payment of taxes, assessments, water rates, sewer rents and carrying charges becoming due against the Premises. Such license of the Grantor to collect and receive said rents, issues and profits may be revoked by the Lender upon any such default by the Grantor without notice to the Grantor of such revocation. In the event of any default under this Mortgage, the Grantor will pay monthly in advance to the Lender, on its entry into possession pursuant to the foregoing grant, or to any receiver appointed to collect said rents, issues and profits, the fair and reasonable rental value for the use and occupation of the Premises or of such part thereof as may be in the possession of the Grantor, and upon default in any such payment will vacate and surrender the possession of the Premises or such part thereof, as the case may be, to the Lender or to such receiver, and, in default thereof, may be evicted by summary proceedings. The Grantor shall not enter into any lease for all or any portion of the Premises without the prior written consent of the Lender.

REDACTED

THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

PAYMENT AND PERFORMANCE. Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

OPEN-END MORTGAGE. This Mortgage is an "Open-End" Mortgage as defined in Section 8143 (f) of Title 42 of the Pennsylvania Consolidated Statues, and as such, is in entitled to the benefits at 42 PA. C.S.A Section 8143 et. Seq. The parties to this Mortgage intend that, in addition to any other debt or obligations secured hereby, including, without limitation the indebtedness evidenced by the Note, this Mortgage shall secure unpaid balances of future advances made after this Mortgage is recorded with the **Recorder's Office of Dauphin County, Pennsylvania**. The maximum amount of the principal of the unpaid loan indebtedness which may be outstanding at any time is **$287,000.00**. In addition to the obligations of the Mortgagor secured hereby, this Mortgage secures unpaid balances of advances made by the Mortgagee with respect to the Premises for the payment of taxes, assessments, maintenance charges, insurance premiums or costs incurred by the Mortgagee for the protection of the Premises or the lien of this Mortgage, and costs and expenses, including but not limited to attorneys' fees, incurred by the Mortgagee by reason of default by the Mortgagor under this Mortgage or the Note.

POSSESSION AND MAINTENANCE OF THE PROPERTY. Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

Possession and Use. Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

Duty to Maintain. Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

Compliance with Environmental Laws. Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

- 4 -

Nuisance, Waste. Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

Removal of Improvements. Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

Lender's Right to Enter. Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

Compliance with Governmental Requirements. Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans with Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

Duty to Protect. Grantor agrees neither to abandon nor leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

CONSTRUCTION LOAN. If some or all of the proceeds of the loan creating the Indebtedness are to be used to construct or complete construction of any Improvements on the Property, the Improvements shall be completed no later than the maturity date of the Note (or such earlier date as Lender may reasonably establish) and Grantor shall pay in full all costs and expenses in connection with the work. Lender will disburse loan proceeds under such terms and conditions as Lender may deem reasonably necessary to insure that the interest created by this Mortgage shall have priority over all possible liens, including those of material suppliers and workmen. Lender may require, among other things, that disbursement requests be supported by receipted bills, expense affidavits, waivers of liens, construction progress reports, and such other documentation as Lender may reasonably request.

TAXES AND LIENS. The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

Payment. Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

Right to Contest. Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

Evidence of Payment. Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the

REDACTED

taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

Notice of Construction. Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $5,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

No Claim for Credit for Taxes. Grantor shall not make deduction from or claim credit on the principal or interest secured by this Mortgage by reason of any governmental taxes, assessments or charges. Grantor shall not claim any deduction from the taxable value of the Property by reason of this Mortgage.

PROPERTY DAMAGE INSURANCE. The following provisions relating to insuring the Property are a part of this Mortgage:

Maintenance of Insurance. Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insured's in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. The Real Property is or will be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area. Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender and to maintain such insurance for the term of the loan.

Application of Proceeds. Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, payer reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

Grantor's Report on Insurance. Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

- 6 -

LENDER'S EXPENDITURES. If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, Including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

WARRANTY; DEFENSE OF TITLE. The following provisions relating to ownership of the Property are a part of this Mortgage:

> Title. Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

> Defense of Title. Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

> Compliance with Laws. Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

> Survival of Representations and Warranties. All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

CONDEMNATION. The following provisions relating to condemnation proceedings are a part of this Mortgage: Proceedings. If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

Application of Net Proceeds. If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES. The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

> Current Taxes, Fees and Charges. Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien

REDACTED

on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

Taxes. The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

Subsequent Taxes. If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Use section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

SECURITY AGREEMENT; FINANCING STATEMENTS. The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

Security Agreement. This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

Security Interest. Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

Addresses. The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

FURTHER ASSURANCES; ATTORNEY-IN-FACT. The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish

the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Note.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor or there occurs an event of default under any Related Document.

**Default In Favor of Third Parties.** Should Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Grantor's property or Grantor's ability to repay the Indebtedness or Grantor's ability to perform Grantor's obligations under this Mortgage or any related document.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any Related Documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any Member withdraws in the event of a corporation, or any member withdraws in the event of a limited liability company or any other termination of Grantor's existence as a going business or the death of any Member or member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the

REDACTED

Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

Transfer of Property.  Sale, transfer, hypothecation, assignment, or conveyance of the Property or the Improvements or any portion thereof or interest therein without Lender's prior written consent.

Change in Ownership. Any issuance or transfer of stock, partnership interests or membership interests (as applicable) in Grantor or any Guarantor, if Grantor or such other Guarantor is a corporation, partnership or limited liability company, without the prior written consent of Lender.

Adverse Change. A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

Insecurity. Lender in good faith believes itself insecure.

Right to Cure. If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

RIGHTS AND REMEDIES ON DEFAULT. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise anyone or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

Accelerate Indebtedness. Lender shall have the right at its option, subject to any notice or right to cure requirements that may be applicable, to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

UCC Remedies. With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

Lender in Possession. Upon acceleration of the Indebtedness or abandonment of the Property, Lender (in person, by agent or by Judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the Rents, including those past due. Any Rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of Rents, including but not limited to receiver's fees, premiums on the receiver's bonds and reasonable attorneys' fees and then to the other Indebtedness secured by this Mortgage.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Leases and Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Judicial Foreclosure. Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

Nonjudicial Sale. If permitted by applicable law, Lender may foreclose Grantor's interest in all or in any part of the Personal Property or the Real Property by non-judicial sale.

Tenancy at Sufferance. If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property Immediately upon the demand of Lender.

**CONFESSION OF JUDGMENT. IN THE EVENT OF THE OCCURRENCE OF ANY OF THE CIRCUMSTANCES OF DEFAULT ON THE PART OF GRANTOR (ALSO REFERRED TO AS "MORTGAGOR") DESCRIBED HEREIN, EACH UNDERSIGNED MORTGAGOR HEREBY GRANTS TO LENDER (ALSO REFERRED TO AS "MORTGAGEE") THE RIGHT TO DECLARE ALL PRINCIPAL, INTEREST AND CHARGES OWED UNDER THE NOTE TO BE IMMEDIATELY DUE AND PAYABLE, WITHOUT FURTHER ACTION OF ANY KIND ON THE PART OF THE LENDER. IN ADDITION, EACH UNDERSIGNED MORTGAGOR HEREBY IRREVOCABLY AUTHORIZES AND EMPOWERS THE PROTHONOTARY OR CLERK OR ANY ATTORNEY OF ANY COURT OF RECORD TO APPEAR FOR AND CONFESS JUDGMENT THEREIN AGAINST HIM/HER/IT FOR THE AMOUNT WHICH MAY BE DUE UNDER THIS MORTGAGE AND THE NOTE AS EVIDENCED BY THE AFFIDAVIT SIGNED BY AN OFFICER OF THE LENDER SETTING FORTH THE AMOUNT THEN DUE, INCLUDING ACCRUED INTEREST, CHARGES, FEES, LATE CHARGES, COSTS, AND ANY AND ALL CHARGES, TAXES, AND LIENS PAID BY LENDER, ITS SUCCESSORS AND ASSIGNS AND IN ANY MANNER AFFECTING OR CHARGEABLE AGAINST THE PREMISES AND IMPROVEMENTS DESCRIBED IN THIS MORTGAGE PLUS ATTORNEY'S FEES IN THE AMOUNT OF FIFTEEN (15%) PERCENT OF THE AMOUNT DUE, BUT IN NO EVENT LESS THAN FIVE THOUSAND DOLLARS ($5,000.00), AND ANY AND ALL CHARGES, TAXES, AND LIENS PAID BY LENDER, ITS SUCCESSORS AND ASSIGNS AND IN ANY MANNER AFFECTING OR CHARGEABLE AGAINST THE PREMISES AND IMPROVEMENTS DESCRIBED IN THIS MORTGAGE TOGETHER WITH COSTS OF SUIT AND RELEASE OF ERRORS. THEREUPON, A WRIT OF POSSESSION MAY IMMEDIATELY ISSUE FOR POSSESSION OF THE PREMISES. LENDER MAY BRING SUCH ACTION BEFORE OR AFTER (A) THE COMMENCEMENT OF FORECLOSURE PROCEEDINGS UNDER THIS MORTGAGE; (B) THE ENTRY OF JUDGMENT FOR MONEY HEREUNDER OR UNDER THE NOTE SECURED HEREBY; OR (C) A SHERIFF'S SALE OF THE PREMISES.**

**IF A COPY HEREOF, VERIFIED BY AN AFFIDAVIT, SHALL HAVE BEEN FILED IN SAID PROCEEDING, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. EACH MORTGAGOR WAIVES THE RIGHT TO NOTICE AND A HEARING, ANY STAY OF EXECUTION AND THE BENEFIT OF ALL EXEMPTION LAWS NOW OR HEREAFTER IN EFFECT WITH RESPECT TO THE ENTRY OF ANY CONFESSION OF JUDGMENT. FURTHER, EACH UNDERSIGNED MORTGAGOR SPECIFICALLY WAIVES AND DISCLAIMS THE BENEFITS AND PROTECTIONS AFFORDED TO HIM/HER/IT AS PRINCIPAL, WITH RESPECT TO THE EXERCISE OF A POWER OF ATTORNEY BY THE AGENT**

REDACTED

**UNDER 20 Pa.C.S. §5601.3(b), INCLUDING, BUT NOT LIMITED TO, THE AGENT'S DUTY TO ACT LOYALLY AND IN THE BEST INTERESTS OF THE PRINCIPAL AND TO AVOID CONFLICTS OF INTEREST.**

**NO SINGLE EXERCISE SHALL BE DEEMED TO EXHAUST THE POWER, WHETHER OR NOT ANY SUCH EXERCISE SHALL BE HELD BY ANY COURT TO BE INVALID, VOIDABLE OR VOID, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS THE HOLDER HEREOF SHALL ELECT, UNTIL ALL SUMS PAYABLE OR THAT MAY BECOME PAYABLE HEREUNDER AND UNDER THE NOTE HAVE BEEN PAID IN FULL.**

**MORTGAGOR ACKNOWLEDGES THAT THIS MORTGAGE CONTAINS GRANTS OF WARRANTS TO CONFESS JUDGMENT AGAINST THE MORTGAGOR, AND THAT THE MORTGAGOR IS HEREBY WAIVING ANY CONSTITUTIONAL RIGHT TO A HEARING PRIOR TO ENTRY OF A JUDGMENT BY CONFESSION AND THE MORTGAGOR UNDERSTANDS THAT THE LIEN OF ANY CONFESSED JUDGMENT WILL ATTACH ON THE DATE OF ENTRY OF THE JUDGMENT TO ALL REAL PROPERTY OF THE MORTGAGOR IN THE COUNTY IN WHICH THE JUDGMENT IS ENTERED.**

**MORTGAGOR AUTHORIZES THE LENDER, AT ITS OPTION AFTER ENTRY OF ANY JUDGMENT IN MORTGAGE FORECLOSURE PURSUANT TO THIS MORTGAGE AND/OR ANY JUDGMENT, BY CONFESSION OR OTHERWISE, PURSUANT TO THE NOTE, TO PETITION THE COURT IN WHICH SUCH JUDGMENT WAS ENTERED TO REASSESS DAMAGES AND/OR MODIFY SUCH JUDGMENT TO INCLUDE (A) ALL SUMS WHICH MAY HAVE BEEN ADVANCED OR PAID BY THE LENDER AFTER THE ENTRY OF SUCH JUDGMENT FOR, OR ARE OTHERWISE DUE AND PAYABLE FOR, TAXES, WATER AND SEWER RENTS, OTHER LIENABLE CHARGES OR CLAIMS, ATTORNEYS' FEES AND COSTS, INSURANCE FOR OR REPAIRS TO OR MAINTENANCE OF THE PREMISES, AND (B) ADDITIONAL ACCRUED INTEREST AT THE RATE SET FORTH HEREIN OR IN THE NOTE.**

Other Remedies. Lender shall have all other rights and remedies provided in this Mortgage, the Note, any other Related Document or available at law or in equity.

Sale of the Property. To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshaled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Notice of Sale. Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Election of Remedies. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this

Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services the cost of searching records, obtaining title commitments and for the costs of title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by facsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**COMMITMENT TO SURVIVE THE CLOSING.** The parties hereto agree that this commitment and the conditions herein shall survive the Closing and that each and every one of the obligations and undertakings of the Borrower and any guarantor named herein shall be continuing obligations and undertakings and shall not cease and desist until the entire Loan, together with all interest and fees due herein and any other amounts which may accrue pursuant hereto and/or to the Loan Documents executed pursuant thereto, shall have been paid in full and until all obligations and undertakings of the Borrower and said Guarantor shall have been fully completed and discharged.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by both Mortgagor and Mortgagee.

**Periodic Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during the period requested in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by the laws of the **Commonwealth of Pennsylvania** without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the Commonwealth of Pennsylvania.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of

- 13 -

REDACTED

the courts of **Hudson County, State of New Jersey.**

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Severability. If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

Non-Liability of Lender. The relationship between Grantor and Lender created by this Mortgage is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor.

Merger. There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

Successors and Assigns. Subject to any limitations stated in this Mortgage on transfer of Grantor's Interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

Time Is of the Essence. Time is of the essence in the performance of this Mortgage.

**WAIVE JURY. ALL PARTIES TO THIS MORTGAGE HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY.**

- SIGNATURE PAGE TO FOLLOW -

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR, INTENDING TO BE LEGALLY BOUND, AGREES TO ITS TERMS. GRANTOR ACKNOWLEDGES RECEIPT, WITHOUT CHARGE, OF A TRUE AND CORRECT COPY OF THIS MORTGAGE. THIS CONSTRUCTION MORTGAGE IS DATED **November 23, 2021**.

**GRANTOR:**
**EAGLE PROPERTIES AND INVESTMENTS LLC,**
a Virginia limited liability company

By: _____
**MONIKA JAIN,** Managing Member

~~Share of Maryland~~
~~COMMONWEALTH OF PENNSYLVANIA~~)
                                                        ) SS:
COUNTY OF _____          )

I CERTIFY that on _____, 2021, **MONIKA JAIN,** personally came before me and acknowledged under oath, to my satisfaction, that she was the maker of the attached instrument; was authorized to and did execute this instrument as Managing Member of **EAGLE PROPERTIES AND INVESTMENTS LLC,** a Virginia limited liability company, the entity named in this instrument; and executed this instrument as the act of the entity named in this instrument.

_____
Notary Public

Daniel J. Kotz
NOTARY PUBLIC
Montgomery County
State of Maryland
My Commission Expires
July 6, 2022

- 15 -

**REDACTED**

Record and Return to:

**Colorado Federal Savings Bank
5174 Hillsdale Circle
El Dorado, CA 95762**

EXHIBIT "A"

ALL THAT CERTAIN TRACT OF UNIMPROVED REAL ESTATE SITUATE IN WEST
HANOVER TOWNSHIP, DAUPHIN COUNTY, PENNSYLVANIA, BOUNDED AND
DESCRIBED AS FOLLOWS, TO WIT:

BEGINNING AT A RAILROAD SPIKE IN THE CENTER LINE OF PENNSYLVANIA ROUTE
NO. 39 (HAVING AN ORDAINED WIDTH OF 33 FEET) AT EASTERN PROPERTY LINE
NOW OR FORMERLY OF HALLEY CHUBB; THENCE ALONG SAID CENTER LINE,
NORTH 88 DEGREES 00 MINUTES EAST 150 FEET TO A RAILROAD SPIKE IN SAID
CENTER LINE AT WESTERN PROPERTY LINE NOW OR LATE OF WALTER J.
BASEHORE, ET UX: THENCE ALONG SAID BASEHORE PROPERTY LINE, SOUTH 09
DEGREES 36 MINUTES 43 SECONDS WEST 663.55 FEET TO AN IRON PIPE ON THE
NORTHERN PROPERTY LINE OF A. E. WATSON; THENCE ALONG SAID WATSON
PROPERTY LINE, NORTH 73 DEGREES 01 MINUTE 00 SECONDS WEST, 150 FEET TO
AN EXISTING ANGLE IRON IN EASTERN PROPERTY LINE NOW OR LATE OF HALLEY
CHUBB; THENCE ALONG CHUBB PROPERTY NORTH 9 DEGREES 47 MINUTES 01
SECONDS EAST 614.12 FEET TO RAILROAD SPIKE, THE PLACE OF BEGINNING.

CONTAINING 2.168 ACRES, MORE OR LESS.

ALL ACCORDING TO SURVEY OF WILLIAM E. SEES, JR., REGISTERED ENGINEER, NO.
8846, DATED 6/19/67, DRAWING NO. S-3563.

Parcel Identification Number: 68-016-050-000-0000

UPI: 68-016-050-000-0000

REDACTED

Prepared by:
The Palisades Group LLC
6001 Bold Ruler Way
Suite 110
Austin TX 78746

UPI # RedactedRedacted

# ASSIGNMENT OF SECURITY INSTRUMENT

Loan #  Redacted

FOR VALUE RECEIVED, **ABL THREE, LLC**, its successors and assigns, whose address is 30 Montgomery St., Ste 215, Jersey City, NJ 07302, does hereby assign and transfer to **Palisades Mortgage Loan Trust 2021-RTL1** whose address is 6001 Bold Ruler Way, Suite 110, Austin, TX 78746 all its right, title and interest in and to the following described **Open-End Mortgage** executed by **EAGLE PROPERTIES AND INVESTMENTS LLC** to **ABL THREE, LLC** for **$287,000.00** dated **11/23/2021** and filed of record **12/22/2021, Book n/a, Page n/a at Document Number** 20210045400 **in Dauphin County, State of PA.**

Together with the note(s) and obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such Assignment of Leases and Rents. To have and to hold the same unto Assignee, its successors and assigns, forever, subject only to terms and conditions of the above-described Security Instruments.

Property Address: 7213 Linglestown RD, Harrisburg, PA  17112

Executed this  9/28/2023

**ABL THREE, LLC**

By: Adam Cohen
Title: Manager

I do hereby certify that the Assignee Address of the withing named Assignee is 6001 Bold Ruler Way, Suite 110, Austin, TX 78746.

Celeste Harkins

1

# ACKNOWLEDMENT

Before me, the undersigned, a Notary Public, on this day personally appeared *Adam Cohen* , *Manager N/A* , known to me (or proved to me on the oath of <u>N/A – PERSONALLY KNOWN</u>), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said **ABL THREE, LLC** ITS SUCCESSORS AND ASSIGNS, a corporation, and that he/she had executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office this *28* day of *September* , A.D. 2023.

Notary Public in and for the State of *New Jersey*
Notary Printed Name: *Angel Martinez*
My Commission Expires: *3/28/27*

ARIEL MARTINEZ
Notary Public, State of New Jersey
Comm. # 50189961
My Commission Expires 3/28/2027

2

**James M. Zugay, Esq.**
Recorder of Deeds
(717) 780-6560
jzugay@dauphinc.org

**Candace E. Meck**
*First Deputy*
www.dauphinc.org/deeds

# Dauphin County



## Recorder of Deeds

*Location:*
Dauphin County Courthouse
Room 102
101 Market Street
Harrisburg, PA 17101

Harrisburg, Pennsylvania

# CERTIFIED END PAGE

**INSTRUMENT #: 20230021222**
**RECORD DATE: 9/29/2023 10:15:48 AM**
**RECORDED BY: CMECK**
**DOC TYPE: ASG MTG**
**AGENT: INGEO**
**DIRECT NAME: ABL THREE, LLC**
**INDIRECT NAME: PALISADES MORTGAGE LOAN TRUST 2021-RTL1**

**RECORDING FEES - State: $0.50**
**RECORDING FEES - County: $13.00**
**ACT 8 OF 1998: $5.00**

**WEST HANOVER TWP**

**AOPC: $19.00**

**UPICount: 1**
**UPIFee:**
**UPIList:    68-016-050-000-0000**

I Certify This Document To Be Recorded
In Dauphin County, Pennsylvania.



**James M. Zugay,** *Recorder of Deeds*

---

# THIS IS A CERTIFICATION PAGE

---

# PLEASE DO NOT DETACH

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

Prepared by And
After Recording Return To:
The Palisades Group LLC
6001 Bold Ruler Way
Suite 110
Austin TX 78746
Loan # RedactedRedactedRedacted

Parcel: 68-016-050-000-0000

# ASSIGNMENT OF SECURITY INSTRUMENT

FOR VALUE RECEIVED, Palisades Mortgage Loan Trust 2021-RTL1, its successors and assigns, whose address is c/o The Palisades Group, 6001 Bold Ruler Way, Suite 110, Austin, TX 78746, does hereby assign and transfer to **GITSIT Solutions, LLC** forever and without recourse, whose address is 333 South Anita Drive, Suite 400, Orange, CA 92868 all its right, title and interest in and to the following described **Open-End Mortgage** executed by **Eagle Properies and Investments LLC** to **ABL Three, LLC** for **$287,000.00** dated **11/23/2021** and filed of record **12/22/2021 as  Document Number 20210045400  in Dauphin County, State of PA.**

Together with the note(s) and obligations therein described, the money due and to become due thereon with interest, and all rights accrued or to accrue under such Assignment of Leases and Rents.  To have and to hold the same unto Assignee, its successors and assigns, forever, subject only to terms and conditions of the above-described Security Instruments.
 Legal Description: : See attached Exhibit A
Property Address:  7213 Linglestown Rd, Harrisburg, PA  17112

Executed this ___11·30·23___

**PALISADES MORTGAGE LOAN TRUST 2021-RTL1, by Palisades Depositor I, LLC as its attorney in fact**

By:  Haseeb Rahman
Title:  Authorized Signatory

Power of Attorney recorded 6/2/2023 in Harris County, TX as Inst. # RP-2023-202541

I do hereby certify that the Assignee Address of the within named assignee is 333 South Anita Drive, Suite 400, Orange, CA 92868.

Anne W. Mwangi

1

# ACKNOWLEDMENT

Before me, the undersigned, a Notary Public, on this day personally appeared **Haseeb Rahman, Authorized Signatory,** known to me (or proved to me on the oath of <u>N/A – PERSONALLY KNOWN</u>), to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said **Palisades Depositor I, LLC attorney in fact for** <u>**Palisades Mortgage Loan Trust 2021-RTL1**</u> ITS SUCCESSORS AND ASSIGNS, a corporation, and that he/she had executed the same as the act of such corporation for the purpose and consideration therein expressed, and in the capacity therein stated.

Given under my hand and seal of office this ___30ᵗʰ___ day of ___November___, A.D. 2023.

_____
Notary Public in and for the State of Texas
Notary Printed Name: Anne W. Mwangi
My Commission Expires: 1/26/2027

ANNE W MWANGI
Notary Public, State of Texas
Comm. Expires 01-26-2027
Notary ID 128277577

2

# Exhibit A

All that certain tract of unimproved real estate situate in West Hanover Township, Dauphin County, Pennsylvania, bounded and described as follows, to wit: Beginning at a railroad spike in the center line of Pennsylvania Route No. 39 (having an Ordained width of 33 feet) at Eastern property line now or formerly of Halley Chubb; Thence along said center line, North 88 degrees 00 minutes East 150 feet to a railroad spike in said center line at Western property line now or late of Walter J. Basehore, et ux: Thence along said Basehore property line, South 09 degrees 36 minutes 43 seconds West 663.55 feet to an iron pipe on the Northern Property line of A. E. Watson; Thence along said Watson property line, North 73 degrees 01 minute 00 seconds East, 150 feet to an existing angle iron in Eastern property line now or late of Halley Chubb; Thence along Chubb property North 9 degrees 47 minutes 01 seconds East 614.12 feet to Railroad Spike, the place of beginning. Containing 2.168 acres, more or less. All according to Survey of William E. Sees, Jr., Registered Engineer, No. 8846, dated 6/19/67, Drawing No. S-3563.

Parcel ID: 68-016-050-000-0000

James M. Zugay, Esq.
Recorder of Deeds
(717) 780-6560

Candace E. Meck
*First Deputy*



**Recorder of Deeds**

Harrisburg, Pennsylvania

**CERTIFIED END PAGE**

*Location:*
Dauphin County Courthouse
Room 102
Front & Market Streets
Harrisburg, PA 17101

**INSTRUMENT #:** 20240008199
**RECORD DATE:** 4/25/2024 8:34:02 AM
**RECORDED BY:** CWASHINGER
**DOC TYPE:** ASG MTG
**AGENT:** SIMPLIFILE
**DIRECT NAME:** PALISADES MORTGAGE LOAN TRUST 2021-RTL1 BY AIF
**INDIRECT NAME:** GITSIT SOLUTIONS, LLC

**RECORDING FEES - State:** $0.50
**RECORDING FEES - County:** $13.00
**ACT 8 OF 1998:** $5.00

**WEST HANOVER TWP**

**AOPC:** $40.25

**UPICount:** 1
**UPIFee:** 20
**UPIList:** 68-016-050-000-0000

I Certify This Document To Be Recorded
In Dauphin County, Pennsylvania.



James M. Zugay, *Recorder of Deeds*

## THIS IS A CERTIFICATION PAGE

# PLEASE DO NOT DETACH

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

**Fill in this information to identify the case:**

Debtor name ___Eagle Properties and Investments LLC___

United States Bankruptcy Court for the: ___Eastern District of Virginia___

Case number (If known): ___23-10566___

☑ Check if this is an amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property                12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1:   Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand** — $30,650.00

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | Fulton Bank | Checking | 1  2  0  6 | $51.04 |
| 3.2. | See continuation sheet | | | $174.39 |

4. **Other cash equivalents** *(Identify all)*

   4.1. _____   $_____
   4.2. _____   $_____

5. **Total of Part 1**
   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.   $30,875.43

## Part 2:   Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

   ☐ No. Go to Part 3.
   ☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**

   Description, including name of holder of deposit

| | | |
|---|---|---|
| 7.1. | Alex & Betsy Dalton (1203 Cottage St. SW) Security Deposit | $3,200.00 |
| 7.2. | See continuation sheet | $17,550.00 |

EXHIBIT C

| Debtor | Eagle Properties and Investments LLC | Case number *(if known)* 23-10566 |
|---|---|---|
| | Name | |

---

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1. _____  $_____

8.2. _____  $_____

9. **Total of Part 2.**

Add lines 7 through 8. Copy the total to line 81.    $ 20,750.00

---

**Part 3:    Accounts receivable**

10. **Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.

☑ Yes. Fill in the information below.

**Current value of debtor's interest**

11. **Accounts receivable**

11a. 90 days old or less:    0.00 — 0.00 = ....➜   $ 0.00
face amount    doubtful or uncollectible accounts

11b. Over 90 days old:    5,813,000.00 — 5,813,000.00 = ....➜   $ 0.00
face amount    doubtful or uncollectible accounts

12. **Total of Part 3**

Current value on lines 11a + 11b = line 12. Copy the total to line 82.    $ 0.00

---

**Part 4:    Investments**

13. **Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1. _____   _____   $_____

14.2. _____   _____   $_____

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                    % of ownership:

15.1. _____   _____%   _____   $_____

15.2. _____   _____%   _____   $_____

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1. _____   _____   $_____

16.2. _____   _____   $_____

17. **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.    $_____

---

Debtor    Eagle Properties and Investments LLC
          Name                                                    Case number *(if known)* 23-10566

---

## Part 5:  Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

    ☑ No. Go to Part 6.

    ☐ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | | | | |
| _____ | ____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **20. Work in progress** | | | | |
| _____ | ____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **21. Finished goods, including goods held for resale** | | | | |
| _____ | ____ MM / DD / YYYY | $_____ | _____ | $_____ |
| **22. Other inventory or supplies** | | | | |
| _____ | ____ MM / DD / YYYY | $_____ | _____ | $_____ |

23. **Total of Part 5**

    Add lines 19 through 22. Copy the total to line 84.                              $_____

24. **Is any of the property listed in Part 5 perishable?**

    ☐ No

    ☐ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

    ☐ No

    ☐ Yes. Book value _____   Valuation method_____   Current value_____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

    ☐ No

    ☐ Yes

---

## Part 6:  Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

    ☑ No. Go to Part 7.

    ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** | | | |
| _____ | $_____ | _____ | $_____ |
| **29. Farm animals** *Examples*: Livestock, poultry, farm-raised fish | | | |
| _____ | $_____ | _____ | $_____ |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| _____ | $_____ | _____ | $_____ |
| **31. Farm and fishing supplies, chemicals, and feed** | | | |
| _____ | $_____ | _____ | $_____ |
| **32. Other farming and fishing-related property not already listed in Part 6** | | | |
| _____ | $_____ | _____ | $_____ |

Debtor  Eagle Properties and Investments LLC
Name

Case number (*if known*)  23-10566

**33. Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.

$ _____

**34. Is the debtor a member of an agricultural cooperative?**

☐ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

☐ No

☐ Yes

**35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value $ _____ Valuation method _____ Current value $ _____

**36. Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

**37. Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

| Part 7: | Office furniture, fixtures, and equipment; and collectibles |
|---|---|

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39. Office furniture**<br>5 Desk Custom Made | $ 15.00 | | $ 10,500.00 |
| **40. Office fixtures**<br>Electrical Supplies | $ 4,500.00 | | $ 3,150.00 |
| **41. Office equipment, including all computer equipment and communication systems equipment and software**<br>4 Computers | $ 3,600.00 | | $ 2,520.00 |
| **42. Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 15 Paintings | $ 2,750.00 | | $ 1,925.00 |
| 42.2 10 Wall Decoration Pieces | $ 1,700.00 | | $ 1,190.00 |
| 42.3 | $ | | · $ |
| **43. Total of Part 7.**<br>Add lines 39 through 42. Copy the total to line 86. | | | $ 40,250.00 |

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

☑ No

☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No

☐ Yes

Debtor    Eagle Properties and Investments LLC
          Name

Case number *(if known)* 23-10566

---

## Part 8:   Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

    ☐ No. Go to Part 9.

    ☑ Yes. Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 2021 Lincoln Navigator | $ 0.00 | Lease | $ Unknown |
| 47.2 _____ | $ _____ | _____ | $ _____ |
| 47.3 _____ | $ _____ | _____ | $ _____ |
| 47.4 _____ | $ _____ | _____ | $ _____ |
| **48. Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 _____ | $ _____ | _____ | $ _____ |
| 48.2 _____ | $ _____ | _____ | $ _____ |
| **49. Aircraft and accessories** | | | |
| 49.1 _____ | $ _____ | _____ | $ _____ |
| 49.2 _____ | $ _____ | _____ | $ _____ |
| **50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| | $ _____ | | $ _____ |

51. **Total of Part 8.**
    Add lines 47 through 50. Copy the total to line 87.

    $ 0.00

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

    ☐ No

    ☑ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

    ☑ No

    ☐ Yes

---

Debtor  Eagle Properties and Investments LLC
Name _____  Case number (if known) _____ 23-10566

---

| Part 9: | Real property |
|---|---|

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

☑ Yes. Fill in the information below.

**55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| | Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|---|
| 55.1 | 6958 New Oxford Rd, Harrisburg, Pa 17112 | Owned | $ 275,000.00 | Zillow | $ 307,500.00 |
| 55.2 | 3012 Dupont Ave Baltimore, Md 21215 | Owned | $ 110,000.00 | Zillow | $ 158,700.00 |
| 55.3 | See continuation sheet | | $ 5,397,810.00 | | $ 8,907,950.00 |

**56. Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$ 9,374,150.00

**57. Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No

☑ Yes

**58. Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☐ No

☑ Yes

---

| Part 10: | Intangibles and intellectual property |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| | General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 60. | **Patents, copyrights, trademarks, and trade secrets** | $ | | $ |
| 61. | **Internet domain names and websites** | $ | | $ |
| 62. | **Licenses, franchises, and royalties** | $ | | $ |
| 63. | **Customer lists, mailing lists, or other compilations** | $ | | $ |
| 64. | **Other intangibles, or intellectual property** | $ | | $ |
| 65. | **Goodwill** | $ | | $ |

**66. Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

$ _____

Case 23-10566-KHK   Doc 38   Filed 06/05/01   Entered 06/05/01 27 07:42   Desc Main
Debtor   Eagle Properties and Investments LLC   Document   Page 37 of 43   AMENDED
Name                                                                              Case number (if known)   23-10566

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)?

☐ No

☐ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☐ No

☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☐ No

☐ Yes

## Part 11:   All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

☑ No. Go to Part 12.

☐ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

71. **Notes receivable**

Description (include name of obligor)

_____   Total face amount − doubtful or uncollectible amount = ➔   $_____

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____   Tax year _____   $_____
_____   Tax year _____   $_____
_____   Tax year _____   $_____

73. **Interests in insurance policies or annuities**

_____   $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

_____   $_____

Nature of claim   _____

Amount requested   $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

_____   $_____

Nature of claim   _____

Amount requested   $_____

76. **Trusts, equitable or future interests in property**

_____   $_____

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

_____   $_____
_____   $_____

78. **Total of Part 11.**

Add lines 71 through 77. Copy the total to line 90.   $_____

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☐ No

☐ Yes

Debtor    Eagle Properties and Investments LLC                                    Case number (if known)   23-10566
          Name

---

| Part 12: | Summary |
|---|---|

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 30,875.43 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 20,750.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 40,250.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* ............................. ➜ | | $ 9,374,150.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column. ...........................91a. | $ 91,875.43 | + 91b. $ 9,374,150.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ............................................................  9,466,025.43     $ 9,466,025.43

| Debtor 1 | Eagle Properties and Investments LLC | | Case number *(if known)* | 23-10566 |
|---|---|---|---|---|
| | First Name    Middle Name    Last Name | | | |

## Continuation Sheet for Official Form 206 A/B

**3) Checking, savings, money market, or financial brokerage accounts**

| | | |
|---|---|---|
| Virginia Partners Bank | Checking | 1616 |
| Balance: 0.00 | | |
| Main Street Bank | Checking | 7704 |
| Balance: 0.00 | | |
| Orrstown Bank | Checking | 7546 |
| Balance: 2.51 | | |
| Capital One | Checking | 0368 |
| Balance: 67.00 | | |
| Capital One | Checking | 0251 |
| Balance: 2.21 | | |
| Fulton Bank | Checking | 1525 |
| Balance: 10.00 | | |
| Bank Of Clarke | Checking | 6121 |
| Balance: 5.85 | | |
| Bank of Clarke County | Checking | 8576 |
| Balance: 0.00 | | |
| Orrstown Bank | Checking | 8122 |
| Balance: 2.53 | | |
| Atlantic Union Bank | Checking | 7943 |
| Balance: 47.82 | | |
| Virginia Partners Bank | Checking | 9217 |
| Balance: 0.00 | | |
| Atlantic Union Bank | Checking | 3843 |
| Balance: 36.47 | | |

**7) Deposits, including security deposits and utility deposits**

| | |
|---|---|
| Lakhwinder Singh and Manjeet Kaur (1001 Manning Dr.) Security Deposit | $1,100.00 |
| Joshua Fowler, Noah Weidner and Julian Weidner (580 W. Areba Ave.) Security Deposit | $2,600.00 |

| Debtor 1 | Eagle Properties and Investments LLC | | Case number (if known) | 23-10566 |
|---|---|---|---|---|
| | First Name        Middle Name        Last Name | | | |

## Continuation Sheet for Official Form 206 A/B

Troy Mason (3002 Williamsburg Rd.)     $2,450.00
Security Deposit

Davon England ( 213 N. Port St.)       $1,450.00
Security Deposit

Cinthia Lovo and Gustavo Hernandez     $3,000.00
(1635 Church Rd.) Security Deposit

Gregory Goodman (15474 Roxbury Rd.)    $4,600.00
Security Deposit

Jairon Pineda (71 Lucy Ave.) Security  $1,100.00
Deposit

Isidoro Luna & Armando Beltra (202 N.  $1,250.00
Port St.) Security Deposit


55) Real property

| | | | |
|---|---|---|---|
| 897 W Lombard St Baltimore, Md 21201 | 50,000.00 | Zillow less estimated completion costs | 140,000.00 |
| Owned | | | |
| 71 Lucy Ave Hummelstown Pa 17036 | 200,000.00 | Zillow | 240,000.00 |
| Owned | | | |
| 3110 P Street Richmond Va 23223 | 47,500.00 | Zillow | 40,000.00 |
| Owned | | | |
| 249 Berkstone Dr Harrisburg Pa 17112 | 256,000.00 | Zillow less rehab costs | 322,000.00 |
| Owned | | | |
| 213 N Port Street Baltimore Md 21224 | 57,000.00 | Zillow | 217,700.00 |
| Owned | | | |
| 7180 Jonestown Rd Harrisburg Pa 17112 | 265,000.00 | Zillow less rehab costs | 294,000.00 |
| Owned | | | |
| 6961 Sterling Rd, €Harrisburg, Pa 17112 | 236,000.00 | Zillow less rehab costs | 226,400.00 |
| Owned | | | |

| Debtor 1 | Eagle Properties and Investments LLC | | Case number *(if known)* | 23-10566 |
|---|---|---|---|---|
| | First Name  Middle Name  Last Name | | | |

## Continuation Sheet for Official Form 206 A/B

| | | | |
|---|---|---|---|
| 15474 Roxbury Rd Glenwood Md 21738 | 650,000.00 | Zillow less rehab costs | 719,400.00 |
| Owned | | | |
| 449 Lawyers Rd Nw Vienna, Va 22180 | 560,000.00 | Zillow less rehab costs | 720,000.00 |
| Owned | | | |
| 204 S Fairville Ave Harrisburg Pa 17112 | 220,000.00 | Zillow less rehab costs | 175,000.00 |
| Owned | | | |
| 1635 Church Rd Hershey Pa 17033 | 340,000.00 | Zillow less rehab costs | 534,000.00 |
| Owned | | | |
| 1343 Church Rd Hershey Pa 17033 | 335,000.00 | Zillow reduced for unfinished basement | 289,700.00 |
| Owned | | | |
| 580 W Areba Ave Hershey, Pa 17033 | 270,000.00 | Zillow less rehab costs | 479,900.00 |
| Owned | | | |
| 1630 E Chocolate Ave Hershey Pa 17033 | 171,000.00 | Zillow less rehab costs | 120,600.00 |
| Owned | | | |
| 7939 Rider Ln Hummelstown, Pa 17036   Rehab $68, 000 | 300.00 | Zillow less rehab costs | 271,000.00 |
| Owned | | | |
| 1203 Cottage St Sw Vienna, Va 22180 | 550.00 | Zillow | 570,000.00 |
| Owned | | | |
| 202 N Port St Baltimore Md 21224 | 58,000.00 | Zillow less rehab costs | 116,200.00 |
| Owned | | | |
| 1010 Lynn St Sw Vienna, Va 22180 | 539.00 | Zillow less rehab costs | 720,000.00 |
| Owned | | | |
| 7213 Linglestown | 370.00 | Zillow less rehab | 362,500.00 |

| Debtor 1 | | | | Case number *(if known)* | 23-10566 |
|---|---|---|---|---|---|
| | Eagle Properties and Investments LLC | | | | |
| | First Name | Middle Name | Last Name | | |

## Continuation Sheet for Official Form 206 A/B

| | | | |
|---|---|---|---|
| Rd, Harrisburg, Pa 17112 | | costs | |
| Owned | | | |
| 7616 Grove Ave, Harrisburg Pa. | 191.00 | Zillow less rehab costs | 176,700.00 |
| Owned | | | |
| 445 Windover Ave, NW, Vienna, VA 22180 | 800,000.00 | Zillow | 840,000.00 |
| owned | | | |
| 1001 Manning Dr Falmouth, Va 22405 | 170.00 | Zillow less rehab costs | 195,000.00 |
| Owned | | | |
| 3002 Williamsburg Road Richmond Va 23231 | 190.00 | Zillow less rehab costs | 332,200.00 |
| Owned | | | |
| 2565 Chain Bridge Rd Vienna, Va 22181 | 880,000.00 | Trulia less rehab costs | 805,650.00 |
| Owned | | | |