**IMPORTANT NOTICE: THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**IMPORTANT NOTICE: THIS INSTRUMENT CONTAINS A BALLOON PAYMENT WHICH REQUIRES THE FULL PAYMENT OF ALL UNPAID PRINCIPAL AND INTEREST AND OTHER APPLICABLE LOAN FEES IN ONE (1) YEAR FROM DATE HEREOF REGARDLESS OF THE AMORTIZATION OF PAYMENTS.**

**IMPORTANT NOTICE: THE BORROWER HEREBY REPRESENTS AND CERTIFIES TO THE LENDER THAT BORROWER DOES NOT INTEND TO OCCUPY THE PROPERTY AS A RESIDENCE.**

**JANUARY 7, 2022**                                                                                   **$260,000.00**

## COMMERCIAL DEED OF TRUST NOTE

GIVEN AND SECURED by a Deed of Trust of even date for real property having the address of **449 LAWYERS ROAD NW, VIENNA, VIRGINIA** and **1010 LYNN STREET SW, VIENNA, VIRGINIA 22180** (collectively "the Property").

FOR VALUE RECEIVED, **EAGLE PROPERTIES AND INVESTMENTS LLC**, a Virginia limited liability company ("the Borrower"), having the address of 445 Windover Avenue, Vienna, Virginia 22180, jointly and severally, promise to pay to the order of **GUS GOLDSMITH**, his successors and/or assigns ("the Lender") having a mailing address of 18205 Biscayne Boulevard, Suite 2226, Aventura, Florida 33160 or at such other place as the holder of this Commercial Deed of Trust Note ("the Note") may from time to time designate, the principal sum of **TWO HUNDRED SIXTY THOUSAND AND NO/100 DOLLARS ($260,000.00),** or so much thereof which is outstanding, together with interest thereon at the rate hereafter specified, and any and all other sums which may be owing to the holder of the Note.

1.      Interest Rate. From the date of the Note through the Maturity Date, interest shall be charged on the outstanding principal balance at the fixed rate *per annum* equal to **ELEVEN PERCENT (11.0%)**. Interest shall be calculated daily based on the actual number of days elapsed over a 360-day year.

2.      Payment of Principal and Interest. Payable in monthly installments of **TWO THOUSAND FOUR HUNDRED SEVENTY-SIX AND 04/100 DOLLARS ($2,476.04)** commencing on **MARCH 1, 2022,** and continuing on the first (1ˢᵗ) day of each month thereafter, with the entire remaining balance, principal and interest, being fully due and payable on **FEBRUARY 1, 2023** ("the Maturity Date").

1

3.  Application of Payments. Payments may be applied or reversed and reapplied in such order as the Lender or as the holder of the Note, in its sole discretion, may determine. The Lender or any holder shall have the continuing and exclusive right to apply or reverse and reapply any and all payments after any default hereunder.

4.  **PREPAYMENT PENALTY**. Provided the Note, the Deed of Trust securing the Note, or any other document executed in connection with the loan evidenced by the Note are not in default, the Note may be prepaid in whole or in part on any loan payment date. In the event a prepayment is made on or before **AUGUST 1, 2022,** in addition to any other payments due hereunder, Borrower shall also be required to pay an amount equal to **SIX (6) MONTHS** of interest, less any interest payments that borrower has made hereunder. Any partial prepayment shall not postpone the due date of any subsequent periodic installments or the Maturity Date, or change the amount of such installments due, unless Lender shall otherwise agree in writing. Any partial prepayment shall not extend or change the due date of any installment due or change the Maturity date.

5.  Time of the Essence. Time shall be of the essence in payment hereunder and performance of each and every term and condition of the Note.

6.  Acceleration Upon Default. Upon a failure to pay any sum due under the Note following a notice and cure period of ten (10) days when and as the same is due and payable or upon any other default hereunder which is not cured within any applicable cure period, the holder may, in the holder's sole and absolute discretion, and without notice or demand, declare the entire unpaid balance of principal plus accrued interest and any other sums due hereunder immediately due and payable.

7.  Default Interest Rate. Upon a failure to pay any amount due under the Note within ten (10) days of its due date or upon any other default hereunder, the holder of the Note may, in addition to any other remedy the holder of the Note may exercise, raise the rate of interest accruing on the unpaid balance of the amount due and payable hereunder to an increased interest rate ("the Default Rate") without notice to Borrower. The Default Rate shall mean the rate of interest in effect as of the date of default, plus five percent (5.0%).

8.  Events of Default. Subject to the right to cure set forth in Paragraph 10 below, the occurrence of any one or more of the following shall constitute an "Event of Default" under this Agreement:
a.  Failure to Pay: The failure to pay, within ten (10) days of the due date, any sums required to be paid under the Note and/or any other note, contract, agreement, extension of credit, deed of trust, or other undertaking with the Lender, which failure to pay shall include, but not limited to, any installment of principal and interest, any late fee, any hazard insurance premium and real estate tax, condominium fee or community association fee for the Property.
b.  Non-Monetary Defaults: The following events are non-monetary defaults: (i) the failure by any obligor to perform or observe, as and when required, any covenant, agreement, warranty, obligation or condition required to be performed or observed under the Note or

2

any other document, contract or agreement entered into in connection herewith; (ii) the existence of any material breach or inaccuracy in any of the representations, warranties or covenants set forth in the Note or in any of the other documents entered into or delivered or to be delivered in connection herewith; (iii) the institution of any complaint, action, suit or proceeding (whether state or federal) challenging the validity, lawfulness, propriety, or enforceability, or otherwise seeking to set aside or declare void or voidable any of the undertakings, agreements or covenants contained herein; or (iv) the filing of a petition for relief under the United States Bankruptcy Code by or against the Borrower.

c. <u>Judgment or Attachment as to Borrower</u>: The entry by any court of a judgment against the Borrower in excess of Ten Thousand and No/100 Dollars ($10,000.00) that, in the opinion of Lender, in its sole and absolute discretion, would have a material adverse effect upon the Borrower's ability to fully meet and satisfy all of its debts and obligations under the Note or under any other agreement entered into in connection herewith that shall not be satisfactorily stayed or discharged within thirty (30) days from the date thereof, or any attachment of any security or collateral that shall not be released, stayed or otherwise provided for to Lender's sole and exclusive satisfaction within thirty (30) days after the occurrence thereof.

d. <u>Judgment or Attachment as to Guarantor</u>: The entry by any court of a judgment against any guarantor of the Note in excess of Ten Thousand and No/100 Dollars ($10,000.00) that, in the opinion of Lender, in its sole and absolute discretion, would have a material adverse effect upon the guarantor's ability to fully meet and satisfy all of its debts and obligations under their guaranty agreement or under any other agreement entered into in connection therewith that shall not be satisfactorily stayed or discharged within thirty (30) days from the date thereof, or any attachment of any security or collateral that shall not be released, stayed or otherwise provided for to Lender's sole and exclusive satisfaction within thirty (30) days after the occurrence thereof.

e. <u>False Representation</u>: If any representation or warranty made by the Borrower under or pursuant to the Note or any of the other loan documents shall be false or misleading in any material respect as of the date when made, or if any material inaccuracy shall exist in any of the documents or other information furnished to the Lender to induce the Lender to enter into the Note.

f. <u>Material Adverse Change</u>: If there occurs a material adverse change in the assets or the business or financial condition or prospects of the Borrower from and of the date hereof which affects materially their ability to meet any of their obligations hereunder or under any of the other loan documents associated herewith, all as may be determined by the Lender in its sole discretion.

g. <u>Failure to Notify Lender of Default or False Representation</u>: If the Borrower shall fail to notify the Lender in writing as soon as practicable upon learning of the occurrence of any event which with the passage of time or the giving of notice or both would constitute an Event of Default hereunder or to otherwise notify the Lender of any other fact, circumstance or event that is required to be disclosed to the Lender pursuant to the terms of the Note.

h. <u>Other Default</u>: The default under any document or instrument creating a lien or security interest in the Property secured by the Deed of Trust (defined below), whether senior,

3

junior, or of equal priority to the lien and security interest of this Deed of Trust, which default is not cured within any applicable cure or grace period.

i. <u>Liens; Encumbrances</u>. The title to the Property securing the Note becomes subject to any lien or encumbrance other than lien in favor of the Lender, or if there shall occur any other changes in the condition of the title to the Property which is not satisfactory to Lender and its attorneys.

j. <u>Transfers</u>. The transfer of any interest, whether beneficial, direct, indirect, or otherwise, in the Property securing the Note or Borrower, unless approved in advance by the Lender in writing.

k. <u>Insurance</u>. If Borrower fails to keep in force any required insurance.

l. <u>Real Estate Taxes, Condominium Fees, Community Association Fees</u>. If Borrower fails to pay and keep current any and all real estate taxes, condominium fees and/or community association fees for the Property.

10. <u>Right to Cure</u>. Any default may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within ten (10) days; or (2) if the cure requires more than ten (10) days, which determination shall be in Lender's sole and absolute discretion, and Borrower immediately initiates steps, which steps the Lender deems, in Lender's sole and absolute discretion, to be sufficient to cure the default, and Borrower thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

11. <u>Expenses of Collection</u>. If Lender retains an attorney to collect, enforce or defend the Note (whether or not suit is filed or judgment has been confessed), or if Borrower or anyone claiming by, through or under Borrower sues Lender in connection with the Note, then Borrower agrees to pay to Lender, in addition to principal, interest, and other charges and fees, all reasonable costs and expenses incurred by Lender in connection with such collection, enforcement or defense, plus reasonable attorneys' fees, plus court costs.

12. <u>Waivers by the Borrower</u>. The Borrower hereby: (i) waives presentment for payment, demand, protest, notice of non-payment, notice of dishonor and protest, and any and all lack of diligence or delays in collection or enforcement hereof and consents that the maturity hereof may be extended without notice; (ii) agrees to remain and continue bound for the payment of the principal and interest provided for by the terms of the Note, notwithstanding any extension or extensions of the time of or the payment of said principal or interest or any change or changes in the amount or amounts agreed to be paid under and by virtue of the obligation to pay provided for in the Note, or any change or changes by way of release or surrender of any property or rights to property held as security for the Note, and each waives all and every kind of notice of such extension or extensions, change or changes; (iii) and agrees that the same may be made without the joinder of any of the parties executing the Note. Any and all homestead and exemption laws and rights, including valuation or appraisement rights or the doctrines of marshalling of liens and marshalling of assets, available to the Borrower, any guarantors and any other parties primarily or secondarily liable hereon, pursuant to the Constitution or laws of any state, territory or jurisdiction of the United States of America, against the collection of this indebtedness or any renewals thereof,

4

or against the enforcement of any lien or assessment securing such indebtedness, are hereby expressly waived by all parties executing the Note and the endorsers, guarantors, and other parties primarily or secondarily liable upon the Note.

13.     No Waiver. The failure of the holder to exercise its option for acceleration of maturity, foreclosure, or either, following the occurrence of any Event of Default, or to exercise any other option granted to it hereunder or under any other loan document executed in connection herewith, or the acceptance by the holder of partial payments or partial performance following the occurrence of any Event of Default, shall not constitute a waiver of any such Event of Default, but such options shall remain continuously in force. Acceleration of maturity, once claimed hereunder by the holder, may at its option be rescinded by written acknowledgment to that effect, but the tender and acceptance of partial payment or partial performance alone shall not in any way affect or rescind such acceleration of maturity. The remedies of the holder hereof as provided herein and in the other Loan Documents shall be cumulative and concurrent, and may be pursued singularly, successively, or together, at the sole discretion of the holder, and may be exercised as often as occasion therefore shall arise.

14.     Commercial Loan. The Borrower represents that the making of the Note is a commercial loan transaction and is not entered into for personal, family or household purposes. The foregoing representation is made with the intent that the Lender, or any subsequent holder of the Note, may rely thereon.

15.     Security. The Note is secured by the terms and provisions of certain ancillary loan documents including, but not limited to, the following: (i) the lien of a first Deed of Trust ("the Deed of Trust") (together with the Note, "the Loan Documents").

16.     Estoppel Certificate. The Borrower agrees to furnish to the holder of the Note at any time and from time to time, within ten (10) days after a written request from the holder of the Note, a written estoppel certificate, duly executed and acknowledged, setting forth the amount then due under the Note, and whether any claim, offset or defense then exists under the Note.

17.     No Partnership or Undertaking. Nothing in the Note, the Purchase Money Deed of Trust or the loan documents shall be interpreted or construed to constitute a partnership, joint venture, enterprise or undertaking, the intent against which is expressly set forth herein.

18.     Indemnification. Borrower hereby indemnifies and agrees to defend and hold harmless Lender, its officers, employees and agents, from and against any and all losses, damages, or liabilities and from any suits, claims or demands, including reasonable attorneys' fees incurred in investigating or defending such claim, suffered by any of them and caused by, arising out of, or in any way connected with the Loan Documents or the transactions contemplated therein (unless determined by a final judgment of a court of competent jurisdiction to have been caused solely by the gross negligence or willful misconduct of any of the indemnified parties) including, without limitation: (i) disputes with any architect, general contractor, subcontractor, materialman or supplier, or on account of any act or omission to act by Lender in connection with the property

5

secured by the Deed of Trust; (ii) losses, damages (including consequential damages), expenses or liabilities sustained by Lender in connection with any environmental inspection, monitoring, sampling or cleanup of the property required or mandated by any applicable environmental law; (iii) claims by any tenant or any other party arising under or in connection with any lease of all or any portion of the property secured by the Deed of Trust; (iv) any untrue statement of a material fact contained in information submitted to Lender by Borrower or the omission of any material fact necessary to be stated therein in order to make such statement not misleading or incomplete; (v) the failure of Borrower to perform any obligations herein required to be performed by Borrower; and (vi) the ownership, construction, occupancy, operation, use or maintenance of the property secured by the Deed of Trust.  In case any action shall be brought against Lender, its officers, employees, or agents, in respect to which indemnity may be sought against Borrower, Lender or such other party shall promptly notify Borrower and Borrower shall assume the defense thereof, including the employment of counsel selected by Borrower and satisfactory to Lender, the payment of all costs and expenses and the right to negotiate and consent to settlement.  Lender shall have the right, at its sole option, to employ separate counsel in any such action and to participate in the defense thereof, all at Borrower's sole cost and expense. Borrower shall not be liable for any settlement of any such action effected without its consent (unless Borrower fails to defend such claim), but if settled with Borrower's consent, or if there be a final judgment for the claimant in any such action, Borrower agrees to indemnify and hold harmless Lender from and against any loss or liability by reason of such settlement or judgment.  The provisions of this Paragraph shall survive the repayment or other satisfaction of the Note and/or any other amount due and payable pursuant to the Loan Documents.

19.     Course of Dealing. No course of dealing between the Lender, the Borrower or any of the guarantors shall be effective to amend, modify or change any provision of the Note or the other Loan Documents. The Lender shall always have the right to enforce the provisions of the Note and/or the other Loan Documents in strict accordance with the provisions hereof and thereof, notwithstanding any conduct or custom on the part of the Lender in refraining from doing so at any time or times. The failure of the Lender at any time or times to strictly enforce its rights under the provisions hereof, strictly in accordance with the terms and conditions hereof, shall not be construed as having created a custom, course of dealing, or in any way or manner having modified or waived the terms and conditions hereof.

20.     Attorney-in-Fact:  The Borrower hereby appoints the duly authorized agent of Lender as the attorney-in-fact for the Borrower for the purpose of carrying out the provisions of the Note and taking any action and executing any instrument which the Lender may deem reasonably necessary and advisable to accomplish the purposes hereof, which appointment is irrevocable, and coupled with an interest.

21.     **CONFESSION OF JUDGMENT. BORROWER HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS GEORGE J. SHAPIRO, OR ANY OTHER DULY AUTHORIZED AGENT OF LENDER, ANY OF WHOM MAY ACT, AS THE DULY CONSTITUTED ATTORNEY-IN-FACT OF BORROWER WITH THE FULL AUTHORITY IN THE NAME, PLACE AND STEAD OF BORROWER TO CONFESS**

6

JUDGMENT IN THE OFFICE OF THE CLERK OF THE CIRCUIT COURT OF ALEXANDRIA, VIRGINIA, OR ANY OTHER COURT SELECTED BY LENDER, IN THE FULL AMOUNT DUE UNDER THE NOTE AND/OR ANY OTHER LOAN DOCUMENT, PLUS REASONABLE ATTORNEYS' FEES OF TWENTY-FIVE PERCENT (25.0%) OF THE OUTSTANDING BALANCE, PLUS COSTS OF SUIT AND ALL OTHER COSTS AND EXPENSES INCURRED BY THE HOLDER OF THE NOTE AND/OR ANY OTHER LOAN DOCUMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST THE UNDERSIGNED BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO. SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS LENDER SHALL DEEM NECESSARY OR DESIRABLE, FOR ALL OF WHICH THE NOTE SHALL BE A SUFFICIENT WARRANT. A SUBSTITUTE ATTORNEY-IN-FACT MAY BE APPOINTED BY THE PAYEE, OBLIGEE OR PERSON OTHERWISE ENTITLED TO PAYMENT UNDER THE NOTE.

22.     Interest After Judgment. If judgment is entered against the Borrower on the Note, the amount of the judgment so entered shall bear interest at the highest rate authorized under the Note as of the date of entry of the judgment.

23.     Choice of Law. The Note shall be governed, construed, and enforced in accordance with the laws of the Commonwealth of Virginia, exclusive of its conflict of laws provisions. The Borrower has had the opportunity to have the Note reviewed by legal counsel of its own choosing and, therefore, the normal rule that ambiguities in an agreement are construed against the drafter shall not be applied in connection with the interpretation or construction hereof.

24.     Notices. Any notice or demand required or permitted by or in connection with the Note (but without implying any obligation to give any notice or demand) shall be in writing and made by hand delivery, by wire, by facsimile transmission, or by overnight courier service with next day delivery, addressed to the Lender or the Borrower at the appropriate address set forth in the Note, or to such other address as may be hereafter specified by written notice by the Lender or the Borrower, and shall be considered given as of the date specified if the written notice or demand.

25.     Tense and Gender. As used herein, the term "Borrower" includes the singular and the plural and refers to all genders.

26.     Assignability. The Note may be freely assigned and transferred by the Lender or any subsequent holder at any time and from time to time. The Borrower shall not assign its rights under the Note.

27. <u>Sales or Participations</u>. Lender may from time to time sell or assign, in whole or in part, or grant participations in, the Note and/or the obligations evidenced thereby. The holder of any such sale, assignment, or participation, if the applicable agreement between Lender and such holder so provides, shall be: (a) entitled to all the rights, obligations, and benefits of Lender; and (b) deemed to hold and may exercise the rights of setoff or banker's lien with respect to any and all obligations of such holder to Borrower, in each case as fully as though Borrower were directly indebted to such holder. Lender may in its discretion give notice to Borrower of such sale, assignment, or participation; however, the failure to give such notice shall not affect any of Lender's or such holder's rights hereunder.

28. <u>Binding Nature</u>. The Note shall inure to the benefit of and be enforceable by the Lender and the Lender's successors and assigns and any other person to whom the Lender may assign an interest in the Borrower's obligations to the Lender and shall be binding and enforceable against the Borrower and the Borrower's successors and permitted assigns.

29. <u>Invalidity of Any Part</u>. If any provision or part of any provision of the Note shall for any reason be held illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions of the Note and Note shall be construed as if such invalid, illegal or unenforceable provision thereof had never been contained herein, but only to the event of its invalidity, illegality, or unenforceability.

30. **<u>WAIVER OF JURY TRIAL</u>. THE BORROWER WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, RELATED TO, THE NOTE OR THE LOAN DOCUMENTS. THIS WAIVER IS KNOWINGLY, INTENTIONALLY, AND VOLUNTARILY MADE BY THE BORROWER AND THE BORROWER ACKNOWLEDGES THAT NEITHER THE LENDER NOR ANY PERSON ACTING ON BEHALF OF THE LENDER HAS MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. THE BORROWER FURTHER ACKNOWLEDGES THAT IT HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THE NOTE AND ALL OTHER LOAN DOCUMENTS AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL. THE BORROWER FURTHER ACKNOWLEDGES THAT IT HAS READ AND UNDERSTANDS THE MEANING AND RAMIFICATIONS OF THIS WAIVER PROVISION AND AS EVIDENCE OF THIS FACT SIGNS THE NOTE BELOW.**

IN WITNESS WHEREOF, the Borrower has executed the Note under seal on the date first above written.

**BORROWER:**

**EAGLE PROPERTIES AND INVESTMENTS LLC,**     Tax ID No. **81-1634545**
a Virginia limited liability company

By: _____/s/ Monika Jain_____ (SEAL)
    **MONIKA JAIN**, sole member

STATE/COMMONWEALTH OF Virginia ;
CITY/COUNTY OF Fairfax ;to-wit:

I, Naomi John, a Notary Public in and for the said City/County and State/Commonwealth aforesaid, do hereby certify that **MONIKA JAIN**, whose name is signed to the foregoing Commercial Deed of Trust Note as sole member of **EAGLE PROPERTIES AND INVESTMENTS LLC**, acknowledged the same before me in my City/County and State/Commonwealth this 7th DAY OF JANUARY 2022.

_____
NOTARY PUBLIC

My commission expires: 01/31/2022
My Registration Number: 7765850

*[Notary Seal: NAOMI JOHN, NOTARY PUBLIC, REG. #7765850, MY COMMISSION EXPIRES 01/31/2022, COMMONWEALTH OF VIRGINIA]*

9

# Loan Amortization Calculator

Almost any data field on this form may be calculated. Enter the appropriate numbers in each slot, leaving blank (or zero) the value that you wish to determine, and then click "Calculate" to update the page.

| Principal | Payments per Year |
|---|---|
| 260000.00 | 12 |

| Annual Interest Rate | Number of Regular Payments |
|---|---|
| 11.0000 | 11 |

| Balloon Payment | Payment Amount |
|---|---|
| 261305.72 | 2476.04 |

☑ Show Amortization Schedule

[Calculate]

This loan calculator is written and maintained by Bret Whissel.
See Bret's Blog for help, a spreadsheet, derivations, calculator news, and more information.

---

**Summary**

| | | | |
|---|---|---|---|
| Principal borrowed: | $260,000.00 | Annual Payments: | 12 |
| Regular Payment amount: | $2,476.04 | Total Payments: | 12 (1.00 years) |
| Final Balloon Payment: | $261,305.72 | Annual interest rate: | 11.00% |
| Interest-only payment: | $2,383.33 | Periodic interest rate: | 0.9167% |
| *Total Repaid: | $288,542.16 | *Total interest paid as a percentage of Principal: | 10.978% |
| *Total Interest Paid: | $28,542.16 | | |

*These results are estimates which do not account for accumulated error of payments being rounded to the nearest cent. See the amortization schedule for more accurate values.

| Pmt | Principal | Interest | Cum Prin | Cum Int | Prin Bal |
|---|---|---|---|---|---|
| 1 | 92.71 | 2,383.33 | 92.71 | 2,383.33 | 259,907.29 |
| 2 | 93.56 | 2,382.48 | 186.27 | 4,765.81 | 259,813.73 |
| 3 | 94.41 | 2,381.63 | 280.68 | 7,147.44 | 259,719.32 |
| 4 | 95.28 | 2,380.76 | 375.96 | 9,528.20 | 259,624.04 |
| 5 | 96.15 | 2,379.89 | 472.11 | 11,908.09 | 259,527.89 |
| 6 | 97.03 | 2,379.01 | 569.14 | 14,287.10 | 259,430.86 |
| 7 | 97.92 | 2,378.12 | 667.06 | 16,665.22 | 259,332.94 |
| 8 | 98.82 | 2,377.22 | 765.88 | 19,042.44 | 259,234.12 |
| 9 | 99.73 | 2,376.31 | 865.61 | 21,418.75 | 259,134.39 |
| 10 | 100.64 | 2,375.40 | 966.25 | 23,794.15 | 259,033.75 |
| 11 | 101.56 | 2,374.48 | 1,067.81 | 26,168.63 | 258,932.19 |
| 12 | *258,932.19 | 2,373.55 | 260,000.00 | 28,542.18 | 0.00 |

*The final payment has been adjusted to account for payments having been rounded to the nearest cent.