IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| In re: ) | Case No. 23-10566-KHK |
| ) | (Chapter 7) |
| EAGLE PROPERTIES AND ) | |
| INVESTMENTS LLC ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |

**FIRST AND FINAL APPLICATION FOR
PAYMENT OF FEES AND REIMBURSEMENT
OF EXPENSES OF MAURICE B. VERSTANDIG AND REQUEST
TO DIRECT DISBURSEMENT OF UNUSED PORTION OF RETAINER**

Comes now Maurice B. VerStandig, pursuant to Sections 327 and 330 of Title 11 of the United States Code and Federal Rule of Bankruptcy Procedure 2016, and moves this Honorable Court to (i) approve compensation, for services rendered as the former chief restructuring officer of Eagle Properties and Investments LLC (the "Debtor") in the amount of $22,365.00; (ii) approve reimbursement of actual and necessary expenses, without markup or alteration, in the amount of $131.60; (iii) approve payment to the undersigned, from funds being held in trust, in the total sum of $22,496.60; and (iv) authorize the undersigned to pay the remainder of the retainer being held (with the subject retainer being $30,000.00 and the anticipated residue being $7,503.40) over to the Chapter 7 trustee herein; and in support thereof states as follows:

**I.      Introduction**

For just under six months, the undersigned served as the Debtor's chief restructuring officer ("CRO"). It was a challenging task, punctuated by challenging facts, that ended under challenging circumstances. Along the way, a retainer in the aggregate sum of $30,000.00 was collected. This was less than what was promised by the Debtor's principal, but the shortfall is ultimately of no moment – the total fees and expenses accrued during service as CRO total only $22,496.60.

1

Accordingly, approval for the payment of such is instantly sought, with it being suggested said order also direct the undersigned to turn over the remaining funds – being a retainer paid by the Debtor's principal but held for the benefit of the Debtor – to the Chapter 7 trustee.

## II.     Recitations Pursuant to Rule 2016

a.     Notably, the work for which compensation is herein sought is *not* work undertaken as an attorney representing the Debtor. While the undersigned is a member of the bar of this Honorable Court, and does frequently practice before this Honorable Court, work undertaken as the Debtor's CRO was carried out in a lay capacity.

b.     Pursuant to Federal Rule of Bankruptcy Procedure 2016(a)(1), attached hereto as Exhibit A is a detailed itemization of all activities for which compensation is sought, as well as the lone expense for which reimbursement is sought.

c.     Pursuant to Federal Rule of Bankruptcy Procedure 2016(a)(2), it is noted that the undersigned seeks fees in the amount of $22,365.00 and reimbursement in the amount of $131.60, for an aggregate payment of $22,496.00.

d.     No payments have heretofore been received by the undersigned, though a retainer, in the cumulative sum of $30,000.00, was paid by the Debtor's principal in five installments (as noted on page 7 of Exhibit A) and that retainer has been held in trust by the undersigned at all times since.

e.     There does not exist any agreement to share funds with any other party, *except* the undersigned does intend to deposit awarded compensation into the operating account of his law firm and recognizes that his law firm is, as a matter of law, a separate person. The undersigned is the sole equity holder of the subject law firm, though the firm does employ other attorneys.

### III. Argument: The Requested Compensation is Appropriate

This case involved (i) some 26 properties, spread over three jurisdictions; (ii) a multitude of secured and unsecured creditors; (iii) significant allegations of fraud directed at no less than three separate parties in interest; (iv) an estate that had already seen the appointment – and ouster – of a prior CRO; (v) a consortium of real estate agents; (vi) putatively illegal short term rentals; (vii) a bizarre blend if dilapidated assets and healthy assets; (viii) rental income that was reliably either not paid at all or, rather often, paid on delinquent terms; and (ix) myriad other challenging conditions. Suffice it to posit the engagement required palpable attention and, at times, an even more palpable measure of patience. The fees sought for this work, while no doubt significant, are more than reasonable by any contextual assessment.

While courts in this district do apply the classic "lodestar" method to analysis of applications for the payment of attorneys' fees, *In re Rothchild's Jewelers, Inc.*, 337 B.R. 561, 568 (Bankr. E.D. Va. 2004), that regime is often – albeit not always – eschewed in favor of the statutory considerations enumerated in Section 330 of Title 11 of the United States Code, *In re Zota Petroleums, LLC*, 2011 WL 6140675, at *1 (Bankr. E.D. Va. Dec. 9, 2011). Here, the undersigned does not seek compensation for work undertaken as counsel but, rather, solely for work as CRO; application of the Section 330 factors seems thusly appropriate in nature. Specifically:

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

3

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

The first two factors are addressed through the time and expense records appended hereto as Exhibit A, with time being tracked in tenth-of-an-hour increments and a uniform rate of $450.00 per hour being applied.

Vis a vis the third factor, the services were certainly necessary to the administration of this case and beneficial to the Debtor's estate. Assets had to be maintained, bills had to be paid, and decisions had to be made. The undersigned worked closely with counsel to operate the Debtor during its final months in Chapter 11, endeavoring to make decisions about the marketing of assets, interfacing with creditors through their counsel, and endeavoring to make strides toward the introduction of a confirmable plan of reorganization. While this case was ultimately converted to Chapter 7, the efforts were still undertaken in good faith furtherance of the Debtor's reorganizational efforts.

Concerning the fourth factor, it is respectfully submitted that the time entries are reasonable in nature. As noted *passim*, this is and was a complex case, with a multitude of moving pieces. At one point, it was discovered a second DIP account was being maintained by the Debtor's principal; cash ebbed from being plentiful to tight as collections became an ever-growing issue; significant work had to be undertaken throughout the engagement. No single time entry stands out as being

4

unusually lengthy relative to the work reflected therein, nor does the aggregate of time entries signify efforts disproportionate to the matters being addressed.

As to the fifth factor, the undersigned is not board certified but does have 15 years of experience as a professional in the insolvency field, including extensive experience with Chapter 11 cases, work as an editor of the American Bankruptcy Institute Journal, several years of service on the Local Rules Advisory Committee of a neighboring bankruptcy court, and a track record of successfully representing debtors in the successful reorganization of businesses ranging from local real estate holdings companies to a publicly traded pharmaceutical company.

Finally, it is respectfully suggested the applied-for compensation is "reasonable based on the customary compensation charged by comparably skilled practitioners" in cases external to bankruptcy matters. 11 U.S.C. § 303(a)(3)(F). While the undersigned does reside primarily in Maine and Nevada, a majority of his practice is in the Washington, DC metropolitan area and his work is undertaken in the context of that market. An hourly rate of $450.00 is well in line with prevailing norms in this market (if not slightly-below the rates of certain similarly-experienced professionals), with such being true not merely of legal practitioners but, too, lay fiduciaries furnishing services in the legal arena.

### IV.     The Excess Retainer

As noted *supra*, the retainer being held by the undersigned is greater than the fees being sought herein. The excess funds may belong to the Chapter 7 trustee and they may belong to the Debtor's principal, but they certainly do not belong to the former CRO. In the interests of avoiding an interpleader action over a relatively minimal amount of money, it is urged an order awarding compensation should, too, direct the manner of disposition for these excess funds. Though the facts

of this case do muddy the consideration somewhat, it appears the excess funds belong to the Chapter 7 trustee.

Generally, "until they are applied for services actually rendered, the funds in a security retainer remain an asset of the estate." *In re James Contracting Grp., Inc.*, 120 B.R. 868, 871 (Bankr. N.D. Ohio 1990). *See also In re Indep. Eng'g Co., Inc.*, 232 B.R. 529, 533 (B.A.P. 1st Cir. 1999) (characterizing a retainer as an asset of a debtor's estate).

There are two notable distinctions in this case, however: (i) the retainer was not paid by the Debtor; and (ii) the retainer was paid post-petition. The former distinction is likely immaterial; while the retainer was not paid by the Debtor, the retainer was paid for the benefit of the Debtor and was thereafter held by the undersigned, in trust, for the exclusive use of the Debtor. There is no legal relationship between the undersigned and the Debtor's principal; there would be no reason for the undersigned to hold monies for the benefit of the Debtor's principal, nor were the funds ever denoted as so being – to the contrary, the trust ledger imprinted at the bottom of Exhibit A clearly shows the monies being held for the Debtor.

The latter issue may be trickier. While Title 11 of the United States Code expressly addresses the treatment of assets acquired post-filing but pre-conversion in Chapter 13 cases, 11 U.S.C. § 348(f)(1)(A), the section is notably silent as to Chapter 11 cases. At least one court has persuasively argued that this silence necessarily means assets acquired post-petition, by a Chapter 11 estate, become part of an ensuing Chapter 7 estate:

> For cases converted from Chapter 13 to Chapter 7, except in instances where the conversion is made "in bad faith," section 348(f) provides that property of the estate "shall consist of property of the estate, as of the date of the filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." Congress chose not to enact a similar limitation for cases converted from Chapter 11. Consequently, upon conversion of the instant case, the estate in Chapter 7 will incorporate assets and interests acquired during its pendency in Chapter 11.

6

*In re Schichtel*, 556 B.R. 90, 93 (Bankr. W.D.N.Y. 2016) (quoting 11 U.S.C. § 348(f)(1)(A)). Without substantively analyzing the issue, the Fifth Circuit has seemingly held similarly with regard to litigation assets acquired by a Chapter 11 debtor post-petition but pre-conversion. *In re Cantu*, 784 F.3d 253, 257 (5th Cir. 2015). *See also In re Gorniak*, 549 B.R. 721, 722 (Bankr. W.D. Wis. 2016) (holding similarly in the issue in the prism of an individual debtor's post-petition earnings).

The Ninth Circuit Bankruptcy Appellate Panel, however, has also analyzed the issue, only to come to the opposite conclusion (albeit in the context of an individual debtor):

> As of the petition date, § 541(a)(6) excludes from the chapter 7 estate earnings from services performed by individual debtors after the commencement of the case. Therefore, by operation of § 348(a), personal service income that came into Debtors' chapter 11 estate is recharacterized as property of the debtor under § 541(a)(6) when the case is converted to chapter 7. Accordingly, upon conversion, the bonus reverted to Debtors.

*In re Markosian*, 506 B.R. 273, 276 (B.A.P. 9th Cir. 2014). *See also In re Evans*, 464 B.R. 429, 441 (Bankr. D. Colo. 2011) ("Consequently, there is no reasoned basis to treat Chapter 11 and 12 cases differently than Chapter 13 cases. Absent a binding precedent to the contrary, this Court will not interpret § 348 as requiring a different result in a conversion from a Chapter 13 case rather than from a Chapter 11 or 12 case."). *But see Matter of Copeland*, 609 B.R. 834, 841 (D. Ariz. 2019) ("...the Court concludes that *Markosian* is an erroneous interpretation of § 348(a), and any post-petition personal service income earned by a Chapter 11 debtor prior to his or her conversion to Chapter 7 constitutes property of the Chapter 7 bankruptcy estate.") (citing *In re Meruelo Maddux Prop., Inc.*, 667 F.3d 1072, 1077 (9th Cir. 2012)).

The United States Court of Appeals for the Tenth Circuit has held similarly to the Ninth Circuit BAP, in the context of a case involving a post-petition, pre-conversion asset acquired by individual debtors, with the notable distinction of the subject asset – a patent – not being in the

7

nature of wages garnered by a natural person. *See, e.g.*, *Patrick A. Casey, P.A. v. Hochman*, 963 F.2d 1347, 1351 (10th Cir. 1992) ("The appellees simply have the general rule backwards; under § 541(a)(1) the general rule is that the estate includes interests of the debtor in property as of the commencement of the case.").

While a corporate Chapter 7 debtor does not enjoy the exemptions available to natural persons, it is still plausible for such an entity to hold property outside the confines of its own bankruptcy estate – especially since a corporate Chapter 7 debtor is not *per se* dissolved through the bankruptcy process. *See In re Gasprom, Inc.*, 500 B.R. 598, 604 (B.A.P. 9th Cir. 2013) (discussing a corporate debtor holding property outside of a bankruptcy estate). And this is not even a hypothetical exercise; in this very case, the abandonment of at least one asset has created a scenario in which the Debtor owns a parcel of real property that is no longer a part of the Debtor's estate. So the notion that the Debtor could, too, hold monies outside the purview of its estate is equally plausible, if not admittedly strange.

Again, the undersigned has no stake in the outcome of this issue. But it is hoped this Honorable Court may enter an appropriate order, one way or the other, so remaining retainer monies may be appropriately disbursed. Absent such, upon the occurrence of an order on this fee application becoming final, and the ensuing appellate period lapsing (or the sending down of a mandate should an appeal be taken), it is the undersigned's intent to initiate an interpleader action pursuant to Federal Rule of Bankruptcy Procedure 7022.

**V.   Conclusion**

WHEREFORE, Maurice B. VerStandig respectfully prays this Honorable Court (i) approve and ratify the fees and expenses sought herein, in the gross sum of $22,496.60, being comprised of $22,365.00 in fees and $131.60 in expenses; (ii) authorize the payment of such fees

from a retainer being held; (iii) direct the residue of said retainer be paid over to the Chapter 7 trustee; and (iv) afford such other and further relief as may be just and proper.

Respectfully Submitted,

Dated: May 19, 2024                By:    /s/ Maurice B. VerStandig
                                          Maurice B. VerStandig
                                          1452 W. Horizon Ridge Pkwy., #665
                                          Henderson, Nevada 89012
                                          Telephone: (301) 444-4600
                                          Facsimile: (301) 444-4600
                                          E-mail: mac@dcbankruptcy.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 19th day of May, 2024, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig