Case 23-10566-KHK    Doc 492-1    Filed 06/06/24    Entered 06/06/24 12:07:20    Desc
Exhibit(s) Exhibit A - Sales Contract    Page 1 of 12

DigiSign Verified - c142d2fe-0a26-4d5e-bfa6-1c9a97c2dfbe18

**Commercial Purchase Agreement**

> Each commercial transaction is different. This form may not address your specific purpose. This is a legally binding document. If not understood, seek competent advice before signing.

This Commercial Purchase Agreement (the "Agreement")   is dated **May 24**                 , 2024, between **H. Jason Gold, Trustee**                                                                                 ("Seller")  and **BEKK Holdings LLC**                                                                                  ("Purchaser"). The   parties  acknowledge that **Century 21 Commercial New Millennium** ("Listing Broker") represents Seller and  that **Verity Commercial, LLC**                                                  ("Selling Broker") represents Purchaser. The parties further acknowledge that disclosure of the brokerage relationships was made to them by the real estate licensees involved in this transaction when specific assistance was first rendered and confirmed in writing.

1. <u>Sale of Property</u>. Purchaser agrees to buy and Seller agrees to sell the land, all improvements thereon, and all rights and appurtenances thereto belonging, located in the City / County of **VIENNA / FAIRFAX**, Virginia, with a tax parcel   no. of **0383 45 0002F and 0383 45 0002E** and a street address of **2565 (F) & 2567 (E) Chain Bridge Road, Vienna, VA 22181**.  Seller discloses  that there are tenants or persons who are in possession of the Property pursuant to the terms of that certain Commercial Lease as described on **SCHEDULE A** attached hereto and made a part hereof (the "Lease").

2. <u>Purchase Price</u>. The purchase price for the  Property is **Eight Hundred Thirty Thousand and 00/100**                    ($830,000.00) (the "Purchase Price") and shall be  paid to Seller at Settlement, subject to the prorations and adjustments described herein, as follows:

   A. <u>Deposit</u>.  Purchaser shall make a deposit   of **$40,000.00**    (the "Deposit") to be held by **RL Title & Escrow**               (the "Escrow Agent").   Purchaser will pay the Deposit to the Escrow Agent within **5** days after this Agreement is fully executed by both parties. If Purchaser fails to pay the Deposit as set forth herein, then Seller may terminate this Agreement by written notice to Purchaser and neither party shall have any further obligation hereunder. The Deposit may be held in an interest-bearing account and the parties waive claim to any such interest. The Deposit shall be applied towards the Purchase Price at Settlement. If Settlement does not occur, the Deposit shall be paid as provided herein.

   B. <u>Balance</u>. The balance of the Purchase Price shall be paid by Purchaser at  Settlement in certified funds or bank wire (inclusive of any loan obtained by Purchaser to purchase the Property).

*HJGT*
*BL*
*BL*

3. <u>Settlement</u>. **On 7/05/2024 or within 20 days of Bankrutptcy Court approval. Feasibility Peroid to Expire July 01, 2024.**

   A. <u>Settlement of Property</u>. Settlement of the purchase and sale of the Property shall be made   through the offices of Escrow Agent ~~on or before twenty (20) days after completion of a successful Feasibility Period and receipt of Bankruptcy Court approval~~ ("Settlement").  Subject to the terms of the Lease, possession of the Property shall be delivered to Purchaser at Settlement.

   B. <u>Deliveries by Seller at Settlement</u>. At Settlement, Seller shall deliver to Purchaser the following:

DigiSign Verified - c142d2fe-0a26-4d5e-bfa6-1c9a97c2dfbe18

Case 23-10566-KHK    Doc 492-1    Filed 06/06/24    Entered 06/06/24 12:07:20    Desc
Exhibit(s) Exhibit A - Sales Contract    Page 2 of 12

(i)    A **special** warranty deed (the "Deed") conveying to the Purchaser a good and marketable fee simple title to the Property, free and clear of all liens, encumbrances, conditions and restrictions, except any lien for real estate taxes not yet due and payable, and any Title Objections for which Purchaser has no objection and/or has waived such objection pursuant to Paragraph 5;

(ii)    An affidavit for the benefit of Purchaser and its title insurer, satisfactory to Purchaser's title company (the "Affidavit") stating that (i) no right to a mechanic's or materialman's lien has accrued with respect to the Property as a result of any act or omission by the Seller and (ii) there are no outstanding leases or agreements with regard to, or other parties in or entitled to possession of, the Property except as disclosed in **SCHEDULE A** attached hereto;

(iii)    A Certificate of Non-Foreign Status as required by Section 1445 of the Internal Revenue Code of 1986 and any other certificates required by any governmental authority or agency;

(iv)    If the Property is leased, a tenant estoppel certificate and an assignment of lease (including the transfer of the security deposit at Settlement) for each and every tenant of the Property, in forms acceptable to Purchaser; and

(v)    Such other Seller certifications as Purchaser's lender or title company may reasonably require.

C.    <u>Costs and Prorations</u>. Seller shall pay the costs of preparing the Deed, the Grantor's tax, Congestion relief Tax Fee and <u>a credit to Purchaser of $1,000 for using RL Title & Escrow</u> and any other expenses incurred by Seller. Purchaser shall pay for the title search, title insurance premiums, survey expenses, lender fees, Grantee's tax and all other settlement expenses incurred by Purchaser. Real estate taxes, rent, CAM and assessments, as applicable, shall be prorated between Seller and Purchaser as of the date of the Settlement. Each party shall pay its own legal, accounting and other expenses incurred in connection with this Agreement or Settlement.

D.    <u>Condition of Property</u>. Purchaser agrees to accept the Property at Settlement in its physical condition at the time this Agreement is fully executed by all parties, except as otherwise provided herein. Seller agrees to maintain the Property and mechanical systems in good working condition and repair until Settlement. At Settlement, Seller agrees to transfer to Purchaser all existing warranties, if any, on the Property's roof, structural components, HVAC, mechanical, electrical, security and plumbing systems.

4.    <u>Feasibility Period</u>.

A.    For a period of **Forty-five (45)** days following execution of this Agreement by all parties (the "Feasibility Period"), Purchaser, its agents and contractors, shall have the right to: (i) enter the Property for the purpose of inspecting the Property and performing tests as are desirable to Purchaser in its sole and absolute discretion; (ii) seek zoning information from the local governing authority concerning Purchaser's intended use of the Property; and/or
(iii) apply for lender financing to acquire the Property.

CONDOMINIUM RESALE. If this is a condominium resale, this Agreement is subject to the Virginia Condominium Act (Section 55-79.97 el seq Code of Virginia) which requires SELLER to furnish certain financial and other disclosures to PURCHASER prior to entering into a binding contract of sale. If the required disclosures are not yet available, SELLER agrees to promptly request same from the Unit Owners Association and deliver them to PURCHASER who agrees to acknowledge receipt upon delivery.

B.    Within fifteen (15) days after Seller's receipt of a fully executed copy of this Agreement, if not previously delivered, Seller shall deliver to Purchaser copies of the following materials related to the Property if in Seller's possession: (i) any Phase I or other environmental studies; (ii) a current survey; (iii) the most current owner's title insurance policy; and (iv) all leases

DigiSign Verified - c142d2fe-0a26-4d5e-bfa6-1c9a97c2dfbe18

Case 23-10566-KHK    Doc 492-1    Filed 06/06/24    Entered 06/06/24 12:07:20    Desc
Exhibit(s) Exhibit A - Sales Contract    Page 3 of 12

and rent rolls for each tenant identified in **SCHEDULE A** (including without limitation, the base monthly rental and all taxes, insurance, and other pass-throughs paid by the tenant), and all contracts affecting the Property that are not terminable at will. Items (i) through (iv) are collectively referred to as the "Materials".

    C.    If Purchaser is not satisfied in its sole and absolute discretion with all aspects of the Property (including zoning) or the Materials, or has not obtained financing upon terms and conditions satisfactory to Purchaser, then Purchaser shall have the right, upon written notice to Seller prior to the expiration of the Feasibility Period, to terminate this Agreement, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

    D.    If Purchaser fails to acquire the Property, Purchaser agrees: (i) to repair any damage arising as a result of its exercise of the right of access granted in this Paragraph 4; (ii) to indemnify and hold Seller harmless from any and all liability of any kind or nature whatsoever as a result of the exercise of such right of access, other than as a result of Seller's negligence or misconduct or the negligence or misconduct of Seller's agents, employees or contractors; and (iii) upon demand to return the Materials to Seller.

5.    <u>Title and Survey Objections</u>. Purchaser may, at its sole expense, obtain a title insurance commitment and a survey for the Property. Prior to the expiration of the Feasibility Period, Purchaser shall notify the Seller in writing as to any title or survey objections regarding the Property that the Purchaser is unwilling to accept (collectively the "Title Objections"). Seller shall advise Purchaser in writing within ten (10) days after receipt of such notice, which if any of the Title Objections will not be cured by Seller at or prior to Settlement. If Seller fails to respond to Purchaser within such ten (10) day period or if Seller's response indicates that it does not intend to cure one or more of the Title Objections, then Purchaser may, at its option either (i) terminate this Agreement by giving written notice to Seller; (ii) cure such Title Objections at its own expense and proceed to Settlement with no reduction in the Purchase Price; or (iii) waive such Title Objections and proceed to Settlement, with no reduction in the Purchase Price. If Purchaser elects to terminate this Agreement, the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

6.    <u>Conditions Precedent to Obligation of Purchaser</u>. This Agreement and all of Purchaser's obligations hereunder are further subject to Purchaser determining in its sole and absolute discretion that all of the conditions set forth in this Paragraph 6 have been satisfied or waived in writing by Purchaser. In the event that any of the following conditions are not satisfied or waived by Purchaser, Purchaser may give written notice to Seller terminating this Agreement on or before Settlement, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

    A.    <u>Seller's Representations and Warranties</u>. All the representations and warranties of Seller made herein shall have been true when made and shall be true and correct as of Settlement, with no material changes therein.

    B.    <u>Seller's Deliveries</u>. As of Settlement, Seller shall have taken all action and delivered all documents and materials required by this Agreement.

    C.    <u>No Litigation</u>. As of Settlement, there shall be no litigation, proceeding or investigation pending, or to the knowledge of Purchaser or Seller threatened, which might prevent or adversely affect the intended use of the Property or which questions the validity of any action taken or to be taken by Seller or Purchaser hereunder, or which threatens the continued operation of the Property for commercial purposes.

DigiSign Verified - c142d2fc-0a26-4d5e-bfa6-1c9a97c2dfbe18

Case 23-10566-KHK    Doc 492-1    Filed 06/06/24    Entered 06/06/24 12:07:20    Desc
Exhibit(s) Exhibit A - Sales Contract    Page 4 of 12

7. <u>Representations and Warranties of the Seller</u>. Seller, jointly and severally (if more than one Seller), represents and warrants unto Purchaser as of the date hereof and on the Settlement date that:

 A. <u>Authority and Marketable Title</u>. Seller is the owner of the Property, possesses the requisite authority to enter into and perform this Agreement, and has the absolute right to sell, assign, and transfer the Property to Purchaser at Settlement.

 B. <u>No Pending Litigation or Bankruptcy</u>. There are no actions, suits or proceedings at law or in equity pending, threatened against, or affecting the Property before or by any federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality. No bankruptcy or similar action, whether voluntary or involuntary, is pending or is threatened against Seller, and Seller has no intention of filing or commencing any such action within ninety (90) days following Settlement.

 C. <u>No Outstanding Purchase Option</u>. No option, right of first refusal or other contractual opportunity to purchase the Property has been granted to, or executed with, a third-party that is enforceable against Seller and/or the Property giving such third-party a right to purchase an interest in the Property or any party thereof.

 D. <u>No Notice of Repairs</u>. Seller has received no written notice from any governmental agency that repairs, alterations or corrections that must be made to the Property.

 E. <u>Utilities</u>. The Property is connected to a municipal water and sewer system and has utility meters installed within the Property located on the Property. Seller makes no representation on whether the capacities of such utilities are sufficient for Purchaser's intended use of the Property.

 F. <u>Hazardous Materials</u>. To the best of Seller's actual knowledge, no toxic or hazardous materials (as said terms are defined in any applicable federal or state laws) have been used, discharged or stored on or about the Property in violation of said laws, and to the best of Seller's knowledge, no such toxic or hazardous materials are now or will be at Settlement located on or below the surface of the Property. There are no petroleum storage tanks located on or beneath the surface of the Property.

 G. <u>Parties in Possession</u>. As of the Settlement date, there will be no adverse or other parties in possession of the Property or any part thereof, nor has any party been granted any license, lease or other right or interest relating to the use or possession of the Property or any part thereof, except for the Leases attached hereto and made a part hereof as **SCHEDULE A**.

 H. <u>Other Contracts</u>. Seller is not a party to any contracts relating to the Property that is not terminable at will, except as disclosed on **SCHEDULE B**, which is attached hereto and made a part hereof. Between the date of this Agreement and the Settlement date, Seller will not, without the prior written consent of Purchaser, which consent shall not be unreasonably withheld, enter into any contract relating to the Property that is not terminable at will.

 I. <u>No Undisclosed Restrictions</u>. Seller has not, nor to the best of Seller's knowledge or belief has any predecessor in title, executed or caused to be executed any document with or for the benefit of any governmental authority restricting the development, use or occupancy of the Property that has not specifically been disclosed to Purchaser or wouldn't be revealed by a title report.

8. <u>Risk of Loss</u>. The risk of loss or damage to the Property by fire or other casualty prior to Settlement shall be on the Seller. If such loss or damage materially and adversely affects the use of the Property as of Settlement, Purchaser shall be entitled to terminate this Agreement by written notice to Seller, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

9. <u>Condemnation</u>. If, prior to Settlement, any taking pursuant to the power of eminent domain is proposed or occurs, as to all or any portion of the Property intended to be acquired at Settlement by the Purchaser, or sale occurs in lieu thereof, the Purchaser shall be entitled to terminate this Agreement by written notice to Seller, in which event the Deposit shall be refunded in full to Purchaser and the parties shall have no further obligation or liability to one another, except for any liability pursuant to the indemnity provisions of Paragraphs 4D., 10 and 11.

10. <u>Access/Cooperation</u>. During the term of this Agreement, Purchaser and his duly authorized agents shall be entitled to reasonable access to the Property for the purpose of surveying, appraising and making other findings related to the Property. Purchaser agrees to indemnify and hold the Seller harmless from any and all liability of any kind or nature whatsoever as a result of the exercise of such right of access, other than as a result of the Seller's gross negligence or willful misconduct.

11. <u>Agents and Brokers</u>. Each party represents and warrants that it did not consult or deal with any broker or agent with regard to this Agreement or the transaction contemplated hereby, except for the Listing Broker and the Selling Broker, and each party hereto agrees to indemnify and hold harmless the other party from all liability, expense, loss, cost or damage, including reasonable attorneys' fees, that may arise by reason of any claim, demand or suit of any agent or broker arising out of facts constituting a breach of the foregoing representation and warranty. Listing Broker shall be paid a brokerage fee by Seller of **3%** of the Purchase Price. Selling Broker shall be paid by Seller a fee of **3%** of the Purchase Price.

12. <u>Notices</u>. Any notice, request or demand required or permitted to be given pursuant to this Agreement shall be in writing and shall be deemed sufficiently given if, delivered by hand or messenger at the address of the intended recipient, sent prepaid by Federal Express (or a comparable guaranteed overnight delivery service), or deposited in the United States first class mail (registered or certified, postage prepaid, with return receipt requested), addressed to the intended recipient, at the intended recipient's address set forth below, or at such other address as the intended recipient may have specified by written notice to the sender given in accordance with the requirements of this Paragraph. Any such notice, request or demand so given shall be deemed given on the day it is received by the recipient.

  For Seller: **Dylan.trache@nelsonmullins.com;
Stephen@realmarkets.com;
stephanie@realmarkets.com**

  For Purchaser: Dr. Brandon Lemuel
        301 Maple Avenue West, Suite 515
        Vienna, VA 22180
        drbrandon@purechiropractic.com

13. <u>Default</u>.

  A. <u>Default by Purchaser</u>. If Purchaser defaults under this Agreement, the damages suffered by Seller would be difficult to ascertain. **Therefore, Seller and Purchaser agree that, in the event of a default by Purchaser, Seller's sole and exclusive remedy, in lieu of all other remedies, shall be to terminate this Agreement and retain the Deposit as full and complete liquidated damages.** If the Deposit is retained as liquidated damages, Seller agrees to pay one-half of the Deposit to the Listing Broker to compensate Broker for his brokerage services in the transaction. Such payment shall have no effect on the payment due in any subsequent transaction. Seller hereby specifically waives the right to seek specific performance of this

Agreement by Purchaser or any other remedy at law or in equity, provided that Seller reserves the right to all remedies available at law and in equity solely in order to enforce the indemnification obligations of Purchaser under Paragraphs 4D., 10 and 11 herein.

      B.    <u>Default by Seller</u>. If Seller defaults under this Agreement, Purchaser shall have the option to (i) seek specific performance of this Agreement, or (ii) terminate this Agreement, in which event the Deposit shall be promptly refunded to Purchaser. Seller shall be liable for Purchaser's expenses in the filing of any specific performance action, including reasonable attorney's fees and court costs.

      C.    <u>Right to Cure Default</u>. Prior to any termination of this Agreement as provided in Subparagraphs 13A. and 13B., the non-defaulting party shall provide written notice of any default(s) to the defaulting party (the "Default Notice") permitting the defaulting party ten (10) days to cure any such default(s). If defaulting party does not cure the default(s) or does not respond to the Default Notice, then the non-defaulting party may terminate the Agreement by written notice to the defaulting party. Nothing herein shall prevent either party from seeking a judicial determination regarding any default; provided however, the court shall award the expenses of attorney's fees and court costs to the prevailing party in any such action.

      D.    <u>Brokerage Fees</u>. Notwithstanding the remedies set forth in Subparagraphs 13A., 13B, and 13C, if either Seller or Purchaser defaults under this Agreement, the defaulting party shall be liable for the full amount of the brokerage fees set forth in Paragraph 11 and any brokerage fees set forth in Seller's listing agreement with the Listing Broker for the Property (which document is hereby incorporated herein by this reference) as if this Agreement and Seller's listing agreement had been performed, and for any damages and all expenses incurred by the Listing Broker and the Selling Broker in connection with this transaction and the enforcement of this Agreement and Seller's listing agreement, including, without limitation, attorney's fees and court costs. Payment of a real estate broker's fee as the result of a transaction relating to the Property which occurs subsequent to a default under this Agreement shall not relieve the defaulting party of liability for any brokerage fees due under this Agreement or Seller's listing agreement.

14.    <u>Miscellaneous</u>.

      A.    <u>Final Agreement</u>. This Agreement contains the entire agreement between the parties hereto relating to the Property and supersedes all prior and contemporaneous negotiations, understandings and agreements, written or oral, between the parties hereto.

      B.    <u>Virginia Law Applicable</u>. This Agreement shall be construed, performed and enforced in accordance with the laws of the Commonwealth of Virginia and shall not be amended or modified and no waiver of any provision hereof shall be effective unless set forth in a written instrument executed with the same formality as this Agreement.

      C.    <u>Assignment</u>. This Agreement shall not be assigned by one party without the written consent of the other party, except the assignment of this Agreement to an entity owned by Purchaser or the principals of Purchaser shall not require the consent of Seller, but Purchaser shall provide written notice to Seller of such assignment. This Agreement shall inure to the benefit of the parties hereto and their respective and permitted successors and assigns.

      D.    <u>Counterparts; Electronic Signatures</u>. This Agreement may be signed in one or more counterparts, each of which is deemed to be an original and all of which shall together constitute the same instrument. The parties agree that an email of any signed original document shall have the same effect as an original.

      E.    <u>Tax-Deferred Exchange</u>. Either party may elect to include the conveyance of the Property in an IRS Section 1031 Like Kind Exchange (a tax-deferred exchange). In the event that a

party makes such an election, the non-exchanging party agrees to execute such documents necessary to effectuate such an exchange (at no cost to the exchanging party), but in no event shall such exchange affect the terms of the transaction or a party's responsibilities to the other party under this Agreement. The exchanging party shall bear the sole costs of its exchange.

15. <u>Additional Provisions</u>: **All equipment, decorations and furniture removed from suite by closing except kitchen appliances.**
**Property is sold strictly in "as-is, where-is" condition. Sale & commissions are subject to US Bankruptcy Court Approval. Property is being sold by a Bankruptcy Trustee.**

16. <u>Acceptance</u>. To be effective this Agreement must be executed by Purchaser and Seller and an original copy of this Agreement returned to Purchaser no later than 5:00 p.m. on _____, or this Purchase Agreement shall be deemed withdrawn.

Each of the parties has executed this Agreement in its name pursuant to due authority as of the dates set forth below.

Purchaser: *BRL* Dr. Brandon Lemuel (May 25, 2024 10:10 EDT)

Printed Name: Brandon R Lemuel

Title (if applicable): _____

Date: 05/25/2024

Seller: *H. Jason Gold, Trustee*

Printed Name: H. Jason Gold, Chapter 7 Trustee Not individually but solely in his capacity as the Chapter 7 Trustee in Bankruptcy In re: Eagle Properties and Investments LLC Bankruptcy Case No. 23-10566-KHK

Title (if applicable): _____

Date: 05/28/2024

**Listing Company's Name and Address**

Verity Commercial, LLC

1821 Michael Faraday Rd., Suite 208

Reston, VA  20190

Ellie Bechtle

(703) 314-4630

ebechtle@veritycommercial.com

**Selling Company's Name and Address**

Century 21 Commercial New Millennium

**6631 Old Dominion Drive, McLean, VA 22101**

Stephanie Young **/Stephen Karbelk**

571-223-9775 (direct)

Stephanie@RealMarkets.com  Stephen@Realmarkets.com

DigiSign Verified - c142d2fe-0a26-4d5e-bfa6-1c9a97c2dfbe18
Case 23-10566-KHK    Doc 492-1    Filed 06/06/24    Entered 06/06/24 12:07:20    Desc
Exhibit(s) Exhibit A - Sales Contract    Page 8 of 12

# SCHEDULE A

## LEASES, AGREEMENTS AND CONTRACTS
## FOR TENANTS AND OTHER PARTIES IN
## POSSESSION OF THE PROPERTY

**List below each such tenant or other party in possession of the Property, and provide Purchaser with a copy of each lease, license or other agreement. If verbal agreement, summarize terms below.**

**Also provide Purchaser with any contract affecting the Property that is not terminable at will.**

Signed lease agreement with current tenant of 2567 (2E) Chain Bridge Rd including all appropriate addendums.

Copy of the Condominium Resale Package and all other association documents that are associated with subject property.

Schedule A

DigiSign Verified - c142d2fc-0a26-4d5e-bfa6-1c9a97c2dfbe18
Case 23-10566-KHK    Doc 492-1    Filed 06/06/24    Entered 06/06/24 12:07:20    Desc
Exhibit(s) Exhibit A - Sales Contract    Page 9 of 12

## SCHEDULE B

## CONTRACTS RELATING TO THE PROPERTY
### (Not terminable at will)

# Please sign -Commercial Purchase Agreement CB - 2565 (F) & 2567 (E) Chain Bridge Road - Ellie Bechtel

Final Audit Report						2024-05-25

| | |
|---|---|
| Created: | 2024-05-24 |
| By: | Leslye Lawson (llawson@veritycommercial.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAIymrU644TTiwnGEuZ2iU9AoesNOZlKQW |

## "Please sign -Commercial Purchase Agreement CB - 2565 (F) & 2567 (E) Chain Bridge Road - Ellie Bechtel" History

- Document created by Leslye Lawson (llawson@veritycommercial.com)
  2024-05-24 - 8:15:10 PM GMT

- Document emailed to Dr. Brandon Lemuel (drbrandon@purechiropractic.com) for signature
  2024-05-24 - 8:15:14 PM GMT

- Email viewed by Dr. Brandon Lemuel (drbrandon@purechiropractic.com)
  2024-05-25 - 2:08:11 PM GMT

- Document e-signed by Dr. Brandon Lemuel (drbrandon@purechiropractic.com)
  Signature Date: 2024-05-25 - 2:10:43 PM GMT - Time Source: server

- Agreement completed.
  2024-05-25 - 2:10:43 PM GMT

Adobe Acrobat Sign

DigiSign Verified - c142d2fe-0a26-4d5e-bfa6-1c9a97c2dfbe18

BANKRUPTCY ADDENDUM TO SALES CONTRACT
Dated __5/28/2024_____("Contract")
H. Jason Gold, Trustee ("Seller") to
<u>2565 (F) & 2567 (E) Chain Bridge Road, Vienna, VA 22181</u> ("Buyer") for the property:
_("Property")

The provisions of this addendum shall govern notwithstanding any other provision of the Contract.

1. Conveyance will be by SPECIAL WARRANTY OF TITLE.

2. The property, and any contents being conveyed herewith, is being sold "AS-IS, WHERE-IS CONDITION." The sale of the Property is subject higher and better offers and subject to the approval of the US Bankruptcy Court, Eastern District of Virginia, Alexandria Division (the "Court"). The Listing Agent will provide to the Selling Agent a copy of the Sale Motion that seeks approval of this Offer with the Court.

3. No Dual Agency and No Designated Representation.

   (a) The Owner does not consent to designated representation thus Owner does not allow the Property to be shown to a buyer represented by the Broker through another designated representative associated with the Broker.

   (b) The Owner does not consent to dual representation thus Owner does not allow the property to be shown to a buyer represented by the Broker through the same sales associate.

4. In addition to the commission provided in the listing agreement, the Broker shall be entitled to be reimbursed for advanced property management and maintenance expenses, such as Trustee approved repairs, utility bills, lawn maintenance, etc., subject to the approval of the US Bankruptcy Court.

5. Seller's Closing Costs. Thru the date of closing, the Seller shall pay: (a) pro-rata real estate taxes, (b) property owners association fees, (c) Grantor's Deed Recording Tax, (d) Regional Congestion Relief Fee, (e) brokerage listing pursuant to the Court approved listing agreement and (f) $150.00 for the Settlement and/or Closing Fee due to the closing company. All other costs of closing, including any additional fees due to the closing company, shall be paid by the Buyer.

6. Title Company Incentive: If the Buyer agrees to have R.L. Title & Escrow of Vienna, Virginia conduct all aspects of the closing, then the Seller will pay an additional $1,000.00 for Settlement and/or Closing Fee costs. If the Buyer is getting a closing cost credit from the Seller, then this credit shall be included in that credit.

This Addendum shall not alter, modify or change in any other represent the Agreement, and except as modified herein, all the terms and provisions of the Agreement are expressly ratified and confirmed and shall remain in full force and effect.

| SELLER: | BUYER(S): |
|---|---|
| *H. Jason Gold, Trustee* | *BRL* |
| _____ | Brandon Lemuel (May 30, 2024 13:35 EDT) |
| H. Jason Gold, Chapter 7 Trustee | |
| Not individually but solely in his capacity | Brandon Lemuel |
| as the Chapter 7 Trustee in Bankruptcy | _____ |
| *In re: Eagle Properties and Investments LLC* | |
| *Bankruptcy Case No: 23-10566-KHK* | |
| 05/28/2024 | 05/30/2024 |
| Date: _____ | Date: _____ |

# digisign-documents-05-29-2024-2

Final Audit Report                                              2024-05-30

| | |
|---|---|
| Created: | 2024-05-29 |
| By: | Leslye Lawson (llawson@veritycommercial.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA74IyFt1N7e4jR3ZCagZCtjYLe7mm4TNo |

## "digisign-documents-05-29-2024-2" History

- Document created by Leslye Lawson (llawson@veritycommercial.com)
  2024-05-29 - 7:21:40 PM GMT

- Document emailed to Brandon Lemuel (drbrandon@purechiropractic.com) for signature
  2024-05-29 - 7:21:45 PM GMT

- Email viewed by Brandon Lemuel (drbrandon@purechiropractic.com)
  2024-05-30 - 5:33:27 PM GMT

- Document e-signed by Brandon Lemuel (drbrandon@purechiropractic.com)
  Signature Date: 2024-05-30 - 5:35:54 PM GMT - Time Source: server

- Agreement completed.
  2024-05-30 - 5:35:54 PM GMT

Adobe Acrobat Sign