Authentisign® ID: 72600249-035b-49a9-9676-b363a84d6c22
DigiSign Verified - 72600249-035b-49a9-9676-b363a84d6c22

**STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE**          ASR

This form recommended and approved for use by, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

| | |
|---|---|
| **BUYER(S):** Annn  Investment | **SELLER(S):** H. Jason Gold, Trustee |

**BUYER'S MAILING ADDRESS:**

**SELLER'S MAILING ADDRESS:**
PO Box 57359
Washington, DC 20037

## PROPERTY

ADDRESS (including postal city) **7616 Grove Ave**

**Harrisburg**          ZIP **17112** ,

in the municipality of          **West Hanover Twp**          , County of **DAUPHIN** ,

in the School District of          **CENTRAL DAUPHIN**          , in the Commonwealth of Pennsylvania.

Tax ID #(s): **68-031-098-000-0000**          and/or

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): 

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Buyer is not represented by a broker)**

| | |
|---|---|
| Broker (Company) **Prime Realty Services** | Licensee(s) (Name) **Alex Saad** |
| Company License # **RB069925** | State License # **RM425669** |
| Company Address **3510 Trindle Rd , Suite A  , Camp Hill, PA 17011** | Direct Phone(s) **717-303-4200** |
| | Cell Phone(s) |
| Company Phone **717-303-4200** | Email **alexsaad@primerealtys.com** |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☐ Buyer Agent (all company licensees represent Buyer) |
| ☒ Buyer Agent (Broker represents Buyer only) | ☒ Buyer Agent ~~with Designated Agency (only Licensee(s) named above represent Buyer)~~ |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Seller is not represented by a broker)**

| | |
|---|---|
| Broker (Company) **CENTURY 21 New Millennium** | Licensee(s) (Name) **Lisa M Jalufka  Broker**  Stephanie Young, Sales Agent |
| Company License # **0226004377** | State License # **ABR006074 /RSR006364** |
| Company Address **661 MILLWOOD AVE 101, WINCHESTER, VA  22601** | Direct Phone(s) **(703)887-8506/ 571-223-9775** |
| | Cell Phone(s) |
| Company Phone **(540)665-0700** | Email **lisa.jalufka@c21nm.com** Stephanie@realmarkets.com |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☐ Seller Agent (all company licensees represent Seller) |
| ☒ Seller Agent (Broker represents Seller only) | ☒ Seller Agent ~~with Designated Agency (only Licensee(s) named above represent Seller)~~ |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

~~A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.~~

~~**By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**~~

Buyer Initials: _____          ASR Page 1 of 14          Seller Initials: **HJGT**

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2023
rev. 9/22; rel. 1/23

DigiSign Verified - 72609240-035b-49a9-9676-b363a84d6c22

1. **By this Agreement**, dated May 4, 2024

Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (4-14)**

(A) Purchase Price $ ~~200,000.00~~ **$267,500**  *HJGT*  **AI**

Two Hundred Sixty Thousand **Two hundred sixty seven thousand five hundred**

_____ U.S. Dollars), to be paid by Buyer as follows:

  1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
if not included with this Agreement:     $ _____ **10,000.00**

  2. Additional Deposit within _____ days of the Execution Date:   $ _____

  3.   $ _____

Remaining balance will be paid at settlement.

(B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by per-sonal check.

(C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____

_____ ),

who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termi-nation of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**

Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender. **Or within 20 days of Bankruptcy Court Approval**  *HJGT*  **AI**

4. **SETTLEMENT AND POSSESSION (1-23)**

(A) Settlement Date is ~~June 14, 2024~~ **July 5,2024** _____, or before if Buyer and Seller agree.

(B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.

(C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____
_____

(D) For purposes of prorating real estate taxes, the "periods covered" are as follows:

  1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.

  2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.

(E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____

(F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____

(G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.

(H) If Seller has identified in writing that the Property is subject to a lease or short-term rental agreement, possession is to be delivered by deed, existing keys and assignment of existing leases and short-term rental agreements for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases or short-term rental agreements, nor extend existing leases or short-term rental agreements, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) or short-term rental agreement(s) by initialing the lease(s) or short-term rental agreement(s) at the execution of this Agreement, unless otherwise stated in this Agreement.

  **Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.**  *HJGT*  **AI**

5. **DATES/TIME IS OF THE ESSENCE (1-10)**

(A) Written acceptance of all parties will be on or before: ~~May 6, 2024~~ **June 11, 2024**

(B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.

(C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, exclud-ing the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be initialed and dated.**

(D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agree-ment of the parties.

(E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

Buyer Initials: _____        **ASR Page 2 of 14**        Seller Initials: *HJGT*

7616 Grove Ave

65    **6.    ZONING (4-14)**
66    Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdi-
67    vidable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
68    voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
69    **Zoning Classification, as set forth in the local zoning ordinance: RESIDENTIAL**

70    **7.    FIXTURES AND PERSONAL PROPERTY (1-20)**
71    (A)  It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be
72    regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating
73    what items will be included or excluded in this sale.
74    (B)  INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens,
75    and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting
76    fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric
77    animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television
78    and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps;
79    storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; win-
80    dow covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments);
81    built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking
82    fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane
83    tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: _____
84    _____
85    _____
86    (C)  The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/
87    vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____
88    _____
89    (D)  EXCLUDED fixtures and items: _____
90    _____

91    **8.    BUYER FINANCING (8-22)**
92    (A)  Buyer may elect to make this Agreement contingent upon obtaining mortgage financing. Regardless of **any** contingency elected in this
93    Agreement, if Buyer chooses to obtain mortgage financing, the following apply:
94    1.    **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial
95    and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment
96    for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated below, or otherwise causes the lender to
97    reject, or refuse to approve or issue, a mortgage loan.
98    2.    Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage
99    application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage
100    lender(s) identified in Paragraph 8(F), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for
101    Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage
102    loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the
103    mortgage loan application.
104    3.    Seller will provide access to insurers' representatives and, as may be required by the mortgage lender(s), to surveyors, municipal
105    officials, appraisers, and inspectors.
106    4.    If the mortgage lender(s) gives Buyer the right to lock in interest rate(s) at or below the maximum levels desired, Buyer will
107    do so at least  15  DAYS before Settlement Date.
108    (B)  The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
109    LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a spe-
110    cific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan.
111    The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be
112    higher or lower than the Purchase Price and/or market price of the Property.

113    | **FHA/VA, IF APPLICABLE** |
114    (C)  It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
115    chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
116    has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
117    Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
118    $_____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
119    proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
120    is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
121    not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
122    Property are acceptable.
123    **Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration
124    Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters
125    or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years,
126    or both."

127    Buyer Initials: _____    ASR Page 3 of 14    Seller Initials: _____ HJGT

| | |
|---|---|
| 128 | **(D) U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgment** |
| 129 | ☒ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of |
| 130 | getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that |
| 131 | FHA will not perform a home inspection nor guarantee the price or condition of the Property. |
| 132 | ☐ Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(F)) |
| 133 | and Buyer's acceptance of additional required repairs as required by the lender. |
| 134 | **(E) Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for |
| 135 | purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in |
| 136 | connection with this transaction is attached to this Agreement. |
| 137 | **(F) Mortgage Contingency** |
| 138 | ☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the |
| 139 | parties may include an appraisal contingency. Buyer and Seller understand that the waiver of this contingency does not restrict |
| 140 | Buyer's right to obtain mortgage financing for the Property. |
| 141 | ☒ ELECTED. This sale is contingent upon Buyer obtaining mortgage financing according to the terms outlined below. Upon |
| 142 | receiving documentation demonstrating the mortgage lender's approval, whether conditional or outright, of Buyer's mort- |
| 143 | gage application(s) according to the following terms, Buyer will promptly deliver a copy of the documentation to Seller, but |
| 144 | in any case no later than **July 5,2024** ~~June 7, 2024~~ (Commitment Date). |

(Stamp at lines 141–144: **Authentic AI HJGT**)

| **First Mortgage on the Property** | **Second Mortgage on the Property** |
|---|---|
| 145 | |
| 146 Loan Amount $ **1,950,000.00** | Loan Amount $ |
| 147 Minimum Term **30** years | Minimum Term _____ years |
| 148 Type of mortgage **Conevetioanl** | Type of mortgage |
| 149 For conventional loans, the Loan-To-Value (LTV) ratio is not to | For conventional loans, the Loan-To-Value (LTV) ratio is not to |
| 150 exceed **75.000** % | exceed _____ % |
| 151 Mortgage lender **The Lending Group** | Mortgage lender |
| 152 | |
| 153 Interest rate **7.500** %; however, **Buyer agrees to accept the** | Interest rate _____ %; however, **Buyer agrees to accept the** |
| 154 **interest rate as may be committed by the mortgage lender,** not | **interest rate as may be committed by the mortgage lender,** not |
| 155 to exceed a maximum interest rate of **10.000** %. | to exceed a maximum interest rate of _____ %. |
| 156 Discount points, loan origination, loan placement and other fees | Discount points, loan origination, loan placement and other fees |
| 157 charged by the lender as a percentage of the mortgage loan (exclud- | charged by the lender as a percentage of the mortgage loan (exclud- |
| 158 ing any mortgage insurance premiums or VA funding fee) not to | ing any mortgage insurance premiums or VA funding fee) not to |
| 159 exceed _____ % (0% if not specified) of the mortgage loan. | exceed _____ % (0% if not specified) of the mortgage loan. |

| | |
|---|---|
| 160 | 1. The interest rate(s) and fee(s) provisions in Paragraph 8(F) are satisfied if the mortgage lender(s) gives Buyer the right to |
| 161 | guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. Buyer gives Seller the right, at Seller's sole |
| 162 | option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to |
| 163 | Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer. |
| 164 | 2. Seller may terminate this Agreement after the Commitment Date by written notice to Buyer if: |
| 165 | a. Seller does not receive a copy of the documentation demonstrating the mortgage lender's conditional or outright approval |
| 166 | of Buyer's mortgage application(s) by the Commitment Date, |
| 167 | b. The documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage applica- |
| 168 | tion(s) does not satisfy the loan terms outlined in Paragraph 8(F), OR |
| 169 | c. The documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage applica- |
| 170 | tion(s) contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal |
| 171 | must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed |
| 172 | in writing by the mortgage lender(s) within _____7_____ DAYS after the Commitment Date, or any extension thereof, other than |
| 173 | those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment). |
| 174 | 3. Seller's right to terminate continues until Buyer delivers documentation demonstrating the mortgage lender's conditional |
| 175 | or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this |
| 176 | Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing. Termination of this Agreement by |
| 177 | Buyer due to the mortgage lender's denial of Buyer's mortgage application(s) may demonstrate bad faith by Buyer and result |
| 178 | in the forfeiture of deposit monies to Seller. |
| 179 | 4. If this Agreement is terminated pursuant to Paragraphs 8(F)(2), or the mortgage loan(s) is not obtained for settlement, all |
| 180 | deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer |
| 181 | will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this |
| 182 | Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any |
| 183 | fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; |
| 184 | (3) Appraisal fees and charges paid in advance to mortgage lender(s). |
| 185 | 5. If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), |
| 186 | requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. |
| 187 | Within _____5_____ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the |
| 188 | required repairs at Seller's expense. |
| 189 | a. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property |
| 190 | and agrees to the RELEASE in Paragraph 28 of this Agreement. |

| | | |
|---|---|---|
| 191 | Buyer Initials: _____ | **ASR Page 4 of 14** | Seller Initials: **HJGT** |

7616 Grove Ave

192    b.    If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will,
193         within ___5___ DAYS, notify Seller of Buyer's choice to:

194         1)    Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
195               will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as
196               the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreason-
197               able), OR

198         2)    Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
199               of Paragraph 26 of this Agreement.

200         **If Buyer fails to respond** within the time stated above or fails to terminate this Agreement by written notice to Seller
201         within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and agree
202         to the RELEASE in Paragraph 28 of this Agreement.

203    **9.    CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**
204         If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the
205         Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change
206         in employment; failure or loss of sale of Buyer's home; Buyer having incurred a new financial obligation; entry of a judgment against
207         Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to**
208         **purchase.**

209    **10.    SELLER REPRESENTATIONS (1-20)**
210         (A)    **Status of Water**
211               Seller represents that the Property is served by:
212               [X] Public Water    [ ] Community Water    [ ] On-site Water    [ ] None    [ ] _____
213         (B)    **Status of Sewer**
214               1.    Seller represents that the Property is served by:
215                     [ ] Public Sewer    [ ] Community Sewage Disposal System    [ ] Ten-Acre Permit Exemption (see Sewage Notice 2)
216                     [ ] Individual On-lot Sewage Disposal System (see Sewage Notice 1)    [ ] Holding Tank (see Sewage Notice 3)
217                     [ ] Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
218                     [ ] None (see Sewage Notice 1)    [ ] None Available/Permit Limitations in Effect (see Sewage Notice 5)
219                     [X] other
220               2.    **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
221                     **Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the
222                     Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
223                     repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
224                     permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
225                     administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
226                     local agency charged with administering the Act will be the municipality where the Property is located or that municipality
227                     working cooperatively with others.
228                     **Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption**
229                     **provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required
230                     before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage
231                     system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and
232                     site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by
233                     the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance
234                     which occurs as a result.
235                     **Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a**
236                     **water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another**
237                     **site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the
238                     tank from the date of its installation or December 14, 1995, whichever is later.
239                     **Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the dis-**
240                     **tance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
241                     provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
242                     supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hor-
243                     izontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
244                     absorption area shall be 100 feet.
245                     **Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage
246                     facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until
247                     the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations
248                     promulgated thereunder.
249         (C)    **Historic Preservation**
250               Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
251               _____
252         (D)    **Land Use Restrictions**
253               1.    [ ] Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
254                     following Act(s) (see Notices Regarding Land Use Restrictions below):
255                     [ ] Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
256                     [ ] Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)

257    Buyer Initials: [signature]                    **ASR Page 5 of 14**                    Seller Initials: *HJGT*

Authentisign® Verified: 572669248-0305-49a9-9676-b363a84d6e22
DigiSign Verified - 572669248-0305-49a9-9676-b363a84d6e22

258    ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
259    ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
260    ☐ Other

261    2.  **Notices Regarding Land Use Restrictions**
262        a.  **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations
263            take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits
264            circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
265        b.  **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-
266            ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
267            of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
268            may result in the future as a result of any change in use of the Property or the land from which it is being separated.
269        c.  **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water
270            supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open
271            space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that
272            the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific
273            termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply
274            from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the
275            Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.
276        d.  **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are
277            environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the
278            land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer
279            has been advised of the need to determine the restrictions on development of the Property and the term of any contract now
280            in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

281  (E)  **Real Estate Seller Disclosure Law**
282        Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real
283        estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential
284        real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of
285        an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING
286        UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures
287        regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale
288        of condominium and cooperative interests.

289  (F)  **Public and/or Private Assessments**
290        1.  Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner asso-
291            ciation assessments have been made against the Property which remain unpaid, and that no notice by any government or public
292            authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to
293            violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition
294            that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
295            _____
296        2.  Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____
297            _____

298  (G)  **Highway Occupancy Permit**
299        Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

300  (H)  **Internet of Things (IoT) Devices**
301        1.  The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data
302            stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things
303            (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.
304        2.  On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property
305            and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to
306            cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be
307            disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or
308            anyone on Seller's behalf to access any IoT devices remaining on the Property.
309        3.  Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the
310            Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously
311            provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes,
312            updating network settings and submitting change of ownership and contact information to device manufacturers and service
313            providers.
314        4.  This paragraph will survive settlement.

315  **11. WAIVER OF CONTINGENCIES (9-05)**
316        If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental condi-
317        tions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exer-
318        cise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts
319        the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.**

320    **Buyer Initials:** [initials]                    ASR Page 6 of 14                    **Seller Initials:** HJGT

**12. BUYER'S DUE DILIGENCE/INSPECTIONS (1-23)**

(A) **Rights and Responsibilities**

1. Seller will provide access to insurers' representatives and as, may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.

2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.

3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**

4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.

5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

(B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for Notices Regarding Property and Environmental Inspections)

(C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

**Home/Property Inspections and Environmental Hazards (mold, etc.)**

**Elected** _____ Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetration; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home inspection must be performed by a full member in good standing of a national home inspection association, or a person supervised by a full member of a national home inspection association, in accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections)

**Waived** 

**Wood Infestation**

**Elected** _____ Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mortgage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesticide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

**Waived** 

**Deeds, Restrictions and Zoning**

**Elected** _____ Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordinances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking, short-term rentals) is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____

**Waived** 

**Water Service**

**Elected** _____ Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement.

**Waived**

**Radon**

**Elected** _____ Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection. Information about radon and about certified testing or mitigation firms is available through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov

**Waived**

Buyer Initials: _____    ASR Page 7 of 14    Seller Initials: _HJGT_

| 386 | | **On-lot Sewage (If Applicable)** | |
|---|---|---|---|
| 387 | **Elected** | Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic | **Waived** |

386 **On-lot Sewage (If Applicable)**

387 **Elected** Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic **Waived**
388 load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's *A*
389 expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water
390 needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense,
391 prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection *HJGT*
392 Contingency.

393 **Property and Flood Insurance**

394 **Elected** Buyer may determine the insurability of the Property by making application for property and casualty insurance **Waived**
395 for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate *A*
396 with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone,
397 Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more *HJGT*
398 prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood
399 insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more
400 flood insurance agents regarding the need for flood insurance and possible premium increases.

401 **Property Boundaries**

402 **Elected** Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal **Waived**
403 description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property *A* *HJGT*
404 surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural
405 or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen-
406 tations of size of property are approximations only and may be inaccurate.

407 **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**

408 **Elected** Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct **Waived**
409 a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint *A*
410 hazards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard**
411 **Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved** *HJGT*
412 **lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a**
413 **separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any**
414 **lead-based paint records regarding the Property.**

415 **Other**

416 **Elected** **Waived**
417 **Property is sold strictly in "as-is, where-is" condition.**
418 The Inspections elected above do not apply to the following existing conditions and/or items: *AI*
419
420 *HJGT*

421 (D) **Notices Regarding Property & Environmental Inspections**
422   1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
423      the surface of a structure where it may cause mold and damage to the building's frame.
424   2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
425   3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
426      of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's respon-
427      sibility to dispose of them properly.
428   4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer
429      to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop
430      the property would be affected or denied because of its location in a wetlands area.
431   5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
432      pollen and viruses) have been associated with allergic responses.
433   6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
434      directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
435      20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
436      Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
437      and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
438      calling 1-877-724-3258.

439 **13. INSPECTION CONTINGENCY (10-18)**
440   (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
441      in Paragraph 12(C).
442   (B) **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in
443      Paragraph 13(C):
444     1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL **present all Report(s) in**
445        **their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in**
446        **Paragraph 28 of this Agreement,** OR
447     2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
448        **their entirety to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer
449        according to the terms of Paragraph 26 of this Agreement, OR

450 Buyer Initials: _____   ASR Page 8 of 14   Seller Initials: *HJGT*

451     3.    If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
452        **their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by**
453        **Buyer.**

454        The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform
455        the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of
456        the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or
457        governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.

458       a.    Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
459           Period. During the Negotiation Period:

460           (1)    Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR

461           (2)    Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improve-
462              ments to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.

463           If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable
464           written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
465           Negotiation Period ends.

466       b.    If no mutually acceptable written agreement is reached, or if Seller fails to respond during the Negotiation Period, within
467           _____ days (2 if not specified) **following the end of the Negotiation Period,** Buyer will:

468           (1)    Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
469              Agreement, OR

470           (2)    Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
471              of Paragraph 26 of this Agreement.

472        **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement**
473        **by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree**
474        **to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation**
475        **Period.**

476 (C)   If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
477      days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to,
478      the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected
479      completion date for corrective measures. Within   5   DAYS of receiving Seller's Proposal, or **if no Proposal is provided within**
480      **the stated time,** Buyer will notify Seller in writing of Buyer's choice to:

481     1.    Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR

482     2.    Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
483        Paragraph 26 of this Agreement, OR

484     3.    Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by
485        any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time
486        required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the
487        Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct
488        the defects, Buyer may, within   5   DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all
489        deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

490      **If Buyer fails to respond** within the time stated in Paragraph 13(C) **or fails to terminate** this Agreement by written notice to
491      Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

492 **14.  TITLES, SURVEYS AND COSTS (6-20)**

493 (A)   Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company
494      for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report
495      to Seller.

496 (B)   Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different
497      from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance
498      policies come in standard and enhanced versions; **Buyer should consult with a title insurance agent about Buyer's options.**
499      Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an
500      owner's title insurance policy.

501 (C)   Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
502      (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
503      and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

504 (D)   Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
505      tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
506      required by the mortgage lender will be obtained and paid for by Buyer.

507 (E)   The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the reg-
508      ular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions;
509      historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
510      ground; easements of record; and privileges or rights of public service companies, if any.

511 (F)   If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or
512      any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to,
513      Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice
514      of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all
515      liens and encumbrances against the Property.

516   Buyer Initials:         **ASR Page 9 of 14**        Seller Initials: *HJGT*

Authentisign ID: 7266D249-035E-49a9-9676-b363a84d6e22

517    (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates,
518       as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned
519       to Buyer according to the terms of Paragraph 26 of this Agreement, or take such title as Seller can convey. If the title condition
520       precludes Seller from conveying title, Buyer's sole remedy shall be to terminate this Agreement. Upon termination, all deposit
521       monies shall be returned to Buyer according to the terms of Paragraph 26 of this Agreement and Seller will reimburse Buyer for
522       any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those
523       items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).

524    (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
525       about the status of those rights unless indicated elsewhere in this Agreement.
526       ☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**

527    (I)  **COAL NOTICE (Where Applicable)**
528       THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-
529       NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COM-
530       PLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND
531       ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of
532       the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence
533       resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsid-
534       ence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose
535       of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27,
536       1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

537    (J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
538       _____

539    (K) 1.  This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
540         ☐ **Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.**
541       2.  **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private
542          Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that
543          is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obli-
544          gation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of
545          whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or
546          other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must
547          disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed,
548          the Act gives certain rights and protections to buyers.

549 **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)**
550    (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
551       received after Seller has signed this Agreement and before settlement, Seller will within   **5**   DAYS of receiving the notices and/
552       or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
553       1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
554         notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
555       2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or **fails**
556         **within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within   **5**   DAYS
557         that Buyer will:
558         a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
559           Paragraph 28 of this Agreement, OR
560         b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
561           Paragraph 26 of this Agreement.
562       **If Buyer fails to respond** within the time stated in Paragraph 15(A)(2) **or fails to terminate** this Agreement by written notice
563       to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

564    (B) If required by law, within   **30**   DAYS from the Execution Date of this Agreement, but in no case later than   **15**   DAYS prior to
565       Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
566       of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of
567       the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to
568       Seller.
569       1. Within   **5**   DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a
570         copy of the notice to Buyer and notify Buyer in writing that Seller will:
571         a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/
572           improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
573         b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
574           notify Seller in writing within   **5**   DAYS that Buyer will:
575           (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph
576             28 of this Agreement and make the repairs at Buyer's expense after settlement, OR
577           (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
578             of Paragraph 26 of this Agreement.
579         **If Buyer fails to respond** within the time stated in Paragraph 15(B)(1)(b) **or fails to terminate** this Agreement by writ-
580         ten notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this

581 Buyer Initials: _____        **ASR Page 10 of 14**        Seller Initials: _HJGT_

582      Agreement, and **Buyer accepts the responsibility to perform the repairs/improvements** according to the terms of the
583      notice provided by the municipality.

584    2.   If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph,
585        Seller will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(2) will survive**
586        **settlement.**

587 **16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**

588    (A)   Property is NOT a Condominium or part of a Planned Community unless checked below.

589      ☐   CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407
590        of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of
591        the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

592      ☐   PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
593        the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the decla-
594        ration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the
595        provisions set forth in Section 5407(a) of the Act.

596    (B)   **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM**
597       **OR A PLANNED COMMUNITY:**

598      If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
599      Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
600      this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
601      Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
602      Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

603    (C)   **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A**
604       **PLANNED COMMUNITY:**

605    1.   Within   __15__   DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
606        a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
607        that the association is required to provide these documents within 10 days of Seller's request.

608    2.   Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer
609        for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
610        association in the Certificate.

611    3.   The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents
612        and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon
613        Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of
614        this Agreement.

615    4.   If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
616        reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
617        Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
618        for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
619        (3) Appraisal fees and charges paid in advance to mortgage lender.

620 **17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**

621      In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-
622      erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for
623      the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of
624      the property and result in a change in property tax.

625 **18. MAINTENANCE AND RISK OF LOSS (1-14)**

626    (A)   Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property)
627       specifically listed in this Agreement in its present condition, normal wear and tear excepted.

628    (B)   If any part of the Property included in the sale fails before settlement, Seller will:

629    1.   Repair or replace that part of the Property before settlement, OR

630    2.   Provide prompt written notice to Buyer of Seller's decision to:

631      a.   Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
632        if any, OR

633      b.   Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
634        part of the Property.

635    3.   If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller**
636        **fails to notify Buyer of Seller's choice,** Buyer will notify Seller in writing within   __5__   DAYS or before Settlement Date,
637        whichever is earlier, that Buyer will:

638      a.   Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR

639      b.   Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
640        Paragraph 26 of this Agreement.

641      **If Buyer fails to respond** within the time stated in Paragraph 18(B)(3) **or fails to terminate** this Agreement by written notice
642      to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

643    (C)   Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
644       replaced prior to settlement, Buyer will:

---


Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com      **7616 Grove Ave**

Authentisign ID: 72609240-035D-49a0-9676-b363a84d6e22

646        1.   Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR

647        2.   Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
648            Paragraph 26 of this Agreement.

649 **19. HOME WARRANTIES (1-10)**

650 At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller
651 understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any
652 pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or
653 certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends
654 a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

655 **20. RECORDING (9-05)**

656 This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
657 causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

658 **21. ASSIGNMENT (1-10)**

659 This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assign-
660 able, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless
661 otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

662 **22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**

663      (A)   The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
664            laws of the Commonwealth of Pennsylvania.

665      (B)   The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance
666            by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of
667            Pennsylvania.

668 **23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**

669 The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
670 Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
671 real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
672 chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
673 to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S.
674 taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/
675 Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to
676 withhold, you may be held liable for the tax.

677 **24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**

678 The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
679 for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal**
680 **police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular prop-
681 erty, or to check the information on the Pennsylvania State Police Web site at www.pamegonslaw.state.pa.us.

682 **25. REPRESENTATIONS (1-10)**

683      (A)   All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licens-
684            ees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement.
685            This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants,
686            representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not
687            be altered, amended, changed or modified except in writing executed by the parties.

688      (B)   Unless otherwise stated in this Agreement, **Buyer has inspected the Property** (including fixtures and any personal property spe-
689            cifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property**
690            **IN ITS PRESENT CONDITION**, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
691            Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the
692            structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of
693            conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems
694            contained therein.

695      (C)   Any repairs required by this Agreement will be completed in a workmanlike manner.

696      (D)   Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

697 **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**

698      (A)   Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
699            deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
700            Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

701      (B)   Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
702            determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

703            1.   If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
704               agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

705            2.   If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
706               Broker how to distribute some or all of the deposit monies.

707            3.   According to the terms of a final order of court.

708            4.   According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
709               deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

710   **Buyer Initials:**          **ASR Page 12 of 14**          **Seller Initials:**   *HJGT*

Authentisign ID: 72609240-035b-49a0-9676-b363a84d6e22
DigiSign Verified - 72609240-035b-49a0-9676-b363a84d6e22

711  (C)  Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved  __30__ days (180 if not
712      specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
713      Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
714      request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the
715      subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of
716      Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement
717      between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of
718      the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution
719      of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties
720      maintain their legal rights to pursue litigation even after a distribution is made.

721  (D)  Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
722      law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
723      monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

724  (E)  Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
725      1.  Fail to make any additional payments as specified in Paragraph 2, OR
726      2.  Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning
727          Buyer's legal or financial status, OR
728      3.  Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

729  (F)  **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
730      1.  On account of purchase price, OR
731      2.  As monies to be applied to Seller's damages, OR
732      3.  As liquidated damages for such default.

733  (G)  [X]  **SELLER IS LIMITED TO RETAINING THOSE SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS**
734          **LIQUIDATED DAMAGES.**

735  (H)  If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
736      and Seller are released from further liability or obligation and this Agreement is VOID.

737  (I)  Brokers and licensees are not responsible for unpaid deposits.

738  **27.  MEDIATION (7-20)**
739      Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
740      to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
741      Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation
742      system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be
743      divided equally among the parties and will be paid before the mediation conference. Legal proceedings may be initiated prior to the
744      completion of the mediation process to stop any statute of limitations from expiring and for the purpose of indexing a lis pendens
745      by Buyer to prevent the transfer of title to a third party when Buyer is seeking to purchase the Property. The parties agree that all
746      proceedings shall be stayed until the completion of mediation and that a court of competent jurisdiction may award attorneys' fees to
747      the prevailing party should the court find that a party has unreasonably breached this provision or acted in bad faith. Any agreement
748      reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this
749      Agreement will survive settlement.

750  **28.  RELEASE (9-05)**
751      **Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any**
752      **OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or**
753      **through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and
754      all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects,
755      radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage
756      disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in
757      default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer
758      of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

759  **29.  REAL ESTATE RECOVERY FUND (4-18)**
760      A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
761      estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
762      unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
763      3658.

764  **30.  COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
765  (A)  If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
766      and Closing Disclosure(s) upon receipt.

767  (B)  Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
768      satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant**
769      **to Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
770      directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or
771      allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if
772      any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the
773      Seller, unless otherwise agreed to by the parties.

774  Buyer Initials: _____    ASR Page 13 of 14    Seller Initials: _HJGT_

**31. HEADINGS (4-14)**

The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

**32. SPECIAL CLAUSES (1-10)**

(A) **The following are attached to and made part of this Agreement if checked:**

- [ ] Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
- [ ] Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
- [ ] Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
- [ ] Settlement of Other Property Contingency Addendum (PAR Form SOP)
- [ ] Appraisal Contingency Addendum (PAR Form ACA)
- [X] Short Sale Addendum (PAR Form SHS)
- [X] **Bankruptcy Addendum**
- [ ] _____
- [ ] _____
- [ ] _____

(B) **Additional Terms:**    _HJGT_    [AI]

# Property is being sold strictly in "as-is, where-is" condition. Sale & commissions are subject to US Bankructcy Court Approval. Property is being sold by a Bankruptcy Trustee. Closing shall be conducted by RL Title in cooperation with Universal Services of PA, LLC

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

**This Agreement may be executed in one or more counterparts,** each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

Return of this Agreement, and any addenda and amendments, including **return by electronic transmission**, bearing the signatures of all parties, constitutes acceptance by the parties.

_A_    Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

_A_    Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

_A_    Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

_A_    Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

**BUYER** _Ahnn Investment_ _____   **DATE** _05/05/2024_

Ahnn Investment  , **Amgad Saad, Managing Member**

**BUYER** _____   **DATE** _____

**BUYER** _____   **DATE** _____

Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.

Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

**SELLER** _H. Jason Gold, Trustee_ _____   **DATE** _06/12/2024_

H. Jason Gold, Trustee

**SELLER** H. Jason Gold, Chapter 7 Trustee   **DATE** _____
Not individually but solely in his capacity
as the Chapter 7 Trustee in Bankruptcy

**SELLER** In re: Eagle Properties and Investments LLC   **DATE** _____
Bankruptcy Case No: 23-10566-KHK

**ASR Page 14 of 14**

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com    **7616 Grove Ave**

DigiSign Verified - 72669249-035b-49a9-9676-b363a84d6c22
Authentisign ID: 72669249-035b-49a9-9676-b363a84d6c22

## BANKRUPTCY ADDENDUM TO SALES CONTRACT
Dated ___5/5/2024___ ("Contract")

H. Jason Gold, Trustee ("Seller") to

**Annn  Investment** _____ ("Buyer") for the property:

___7616 Grove Ave, Harrisburg, PA 17112___ ("Property")

The provisions of this addendum shall govern notwithstanding any other provision of the Contract.

1. Conveyance will be by SPECIAL WARRANTY OF TITLE.

2. The property, and any contents being conveyed herewith, is being sold "AS-IS, WHERE-IS CONDITION." The sale of the Property is subject higher and better offers and subject to the approval of the US Bankruptcy Court, Eastern District of Virginia, Alexandria Division (the "Court"). The Listing Agent will provide to the Selling Agent a copy of the Sale Motion that seeks approval of this Offer with the Court.

3. No Dual Agency and No Designated Representation.

   (a) The Owner does not consent to designated representation thus Owner does not allow the Property to be shown to a buyer represented by the Broker through another designated representative associated with the Broker.

   (b) The Owner does not consent to dual representation thus Owner does not allow the property to be shown to a buyer represented by the Broker through the same sales associate.

4. In addition to the commission provided in the listing agreement, the Broker shall be entitled to be reimbursed for advanced property management and maintenance expenses, such as Trustee approved repairs, utility bills, lawn maintenance, etc., subject to the approval of the US Bankruptcy Court.

5. Seller's Closing Costs. Thru the date of closing, the Seller shall pay: (a) pro-rata real estate taxes, (b) property owners association fees, (c) Grantor's Deed Recording Tax, (d) Regional Congestion Relief Fee, (e) brokerage listing pursuant to the Court approved listing agreement and (f) $150.00 for the Settlement and/or Closing Fee due to the closing company. All other costs of closing, including any additional fees due to the closing company, shall be paid by the Buyer.

6. Title Company Incentive: If the Buyer agrees to have R.L. Title & Escrow of Vienna, Virginia conduct all aspects of the closing, then the Seller will pay an additional $1,000.00 for Settlement and/or Closing Fee costs. If the Buyer is getting a closing cost credit from the Seller, then this credit shall be included in that credit.

This Addendum shall not alter, modify or change in any other represent the Agreement, and except as modified herein, all the terms and provisions of the Agreement are expressly ratified and confirmed and shall remain in full force and effect.

SELLER:                                              BUYER(S):

*H. Jason Gold, Trustee*                           *ANNN Investment*
_____              _____
H. Jason Gold, Chapter 7 Trustee               Annn Investment, Amgad Saad, Managing Member
Not individually but solely in his capacity
as the Chapter 7 Trustee in Bankruptcy
*In re: Eagle Properties and Investments LLC*  _____
*Bankruptcy Case No: 23-10566-KHK*

Date: ___06/12/2024___                          Date: ___07/03/24___

DigiSign Verified: 72660240-035b-49a9-9676-b363a84d6c22

# (21 CENTURY 21
## New Millennium

# *Want to Make an Offer?*

**PROPERTY ADDRESS:**

7616 Grove Ave, Harrisburg, PA 17112

Please see View Docs in Bright MLS for disclosures and information on making an offer.

## CONVEYANCES:

Seller intends for these items marked below to be included in the sale of the property unless otherwise negotiated.

| # | ITEMS | # | ITEMS | # | ITEMS |
|---|---|---|---|---|---|
| | Alarm System | | Fireplace | | Screens |
| | Built-In Microwave | | w/ Screen/Door | | Shades/Blinds |
| | Ceiling Fan | | w/ Gas Log Insert | | Storage Shed |
| | Central Vacuum | | Freezer | | Storm Doors |
| | Clothes Dryer | | Furnace Humidifier | | Storm Windows |
| | Clothes Washer | | Garage Opener | | Stove or Range |
| | Cooktop | | w/ Remote | | Trash Compactor |
| | Dishwasher | | Hot Tub, Equipment & Cover | | TV Antenna |
| | Disposer | | Intercom | | Wall Mount TV Bracket |
| | Draperies/Curtains | | Playground Equipment | | Wall Oven |
| | Drapery/Curtain Rods | | Pool, Equipment & Cover | | Water Treatment System |
| | Electronic Air Filter | | Refrigerator | | Window A/C Unit |
| | Exhaust Fan | | w/ Ice Maker | | Window Fan |
| | Existing Wall-to-Wall Carpet | | Satellite Dish | | Wood Stove |

**OTHER:**

**AS-IS ITEMS:**

Property sold in "As Is, Where Is" condition and subject to US Bankruptcy Court approval.

## LEASED ITEMS:

**FUEL TANKS, SOLAR PANELS, AND OTHER ITEMS:** Seller's intentions with regard to any leased items are as follows:

All information deemed reliable but not guaranteed.

# (21 CENTURY 21
## New Millennium

*Want to Make an Offer?*

## UTILITIES:

| | | | | | |
|---|---|---|---|---|---|
| Water Supply: | ✔ Public | Well | | | |
| Sewage Disposal: | ✔ Public | Septic | | | |
| Heating: | Oil | Gas | ✔ Electric | Heat Pump | Other |
| Hot Water: | Oil | Gas | ✔ Electric | Other | |
| Air Conditioning: | Gas | ✔ Electric | Other | | |

## Useful Information for Making an Offer:

Address:  7616 Grove Ave, Harrisburg, PA 17112
TAX MAP/ID:  68-031-098-000-0000
Subdivision:  West Hanover Township
County:  Dauphin County
Legal Description:

H. Jason Gold, Trustee

n/a

YES    ✔ NO

| | |
|---|---|
| Financing | — Please include lender letter and copy of EMD with your offer. |
| Contract | — Please use appropriate state and jurisdictional forms for offer. |
| Disclosures | — Please see documents section in Bright MLS for disclosures and conveyances. |
| Delivery | — Deliver to seller by EMAIL to:  stephanie@realmarkets.com |
| Title Company | — RL Title in cooperation with Universal Settlement Services of PA, LLC |
| Mortgage Company | — |

Listing Broker Name:  CENTURY 21 New Millennium
Address:  6631 Old Dominion Dr, McLean, VA  22101
Phone:  703-556-4222
MLS Broker Code:  CENT2007
Firm License #:  0226004377

Agent Name:  Stephanie Young
Agent Email:  stephanie@realmarkets.com
Agent Phone:  571-223-9775
MLS Agent ID #:  3064904
Agent License #:  RSR006364

All information deemed reliable but not guaranteed.

Authenti... DigiSign Verified - 72609240-035b-49a9-9676-b363a84d6e22

# CENTURY 21
New Millennium

# AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT
## (MARYLAND AND WASHINGTON D.C.)
### Pennsylvania

To          **Consumers**

From:       CENTURY 21 New Millennium

Property:   **7616 Grove Ave, Harrisburg, PA 17112**

Date:       **6/11/2024**

This is to give you notice that CENTURY 21® New Millennium ("Real Estate Broker") has business relationships with Bay County Settlements, LLC ("BCS"), Bay County Title Services, LLC ("BCTS"), First Title Settlements, LLC ("FTS"), Lighthouse Title Collective, LLC (LTC"), and Capitol Title Insurance Agency, Inc. ("CTI") which provide settlement services and title insurance services; AND Harbour, LLC ("Harbour") and Capstone Insurance Group, Inc. ("CIG"), both of which provide homeowners' and flood insurance services. NM Management II, LLC ("NM"), which owns Real Estate Broker, is the 100% owner of FCM and BCS. NM has a 50% ownership interest in BCTS, and Capitol Title Insurance Agency, Inc. ("CTI") has a 50% ownership interest in BCTS. As regards FTS, NM has a 50% ownership interest in FTS and Trusted Title Services, LLC has a 50% interest in FTS. NM has a 50% ownership interest in LTC and Lighthouse Tile Company of Maryland, LLC has a 50% ownership interest in LTC. NM has a 90% ownership interest in Harbour and a private individual has a 10% ownership interest in Harbour. NM has a referral relationship with CIG. Because of these relationships, Real Estate Broker's referral of business to BCS, BCTS, FTS, LTC, Harbour and/or CIG may provide Real Estate Broker, NM, and/or their employees or affiliates a financial or other benefit. BCS, BCTS, FTS, LTC, CTI, DML, Harbour and CIG are together referred to as "Listed Providers".

In addition, in connection with the purchase or sale of the above referenced property, you may desire a home warranty. Be advised that Real Estate Broker has entered into marketing and advertising arrangements with HSA Home Warranty ("HSA"). While Real Estate Broker has no ownership interest in HSA, Real Estate Broker does receive fees from HSA for its marketing and advertising services.

Furthermore, if you are purchasing a property, you may desire to obtain a mortgage loan. Be advised that Real Estate Broker has entered into a marketing and advertising arrangement with Select Lending Services, LLC ("SLS"). While Real Estate Broker has no ownership interest in SLS, Real Estate Broker does receive fees from SLS for its marketing and advertising services.

Set forth below are the estimated charges or range of charges for the mortgage and settlement services listed. You are NOT required to use a Listed Provider, SLS or HSA, as a condition of the purchase or sale of your property. THERE ARE FREQUENTLY OTHER MORTGAGE AND SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES

Seller: *HJGT*   Buyer: *AI*

**CENTURY 21**
New Millennium

| Provider/s | Settlement Services | Charge/Range of Charges |
|---|---|---|
| **Select Lending Services, LLC** | *Loan Origination Fee* | 0 - 1% of loan amount |
| | *Loan Discount Fee/Points* | 0 - 3% of loan amount |
| | *Administrative Fee* | $750-$925 |
| | *Processing Fee* | $600-$725 |
| | | |
| **HSA Home Warranty** | *Home Warranty Service* | $490-$755 |
| | | |
| **Bay County Settlements, LLC.** | | |
| **Bay County Title Services, LLC** | | |
| | | |
| **Capitol Title Insurance Agency,Inc.** | | |
| **First Title Settlements, LLC** | | |
| **Lighthouse Title Collective, LLC** | | |
| | *Title Examination* | $150-$475 |
| | *Settlement/Closing Fee* | $150-$775 |
| | *Abstract Fee* | $100-$275 |
| | *Title Insurance* | See table below |

*Charge or Range of Charges | Title Insurance Policy rates per $1,000*

| | Maryland owner | Maryland lender | D.C. owner | D.C. lender |
|---|---|---|---|---|
| First $250,000 | $4.80 - $5.75 | $3.20 | $5.70 - $6.84 | $4.50 |
| $250,001 and up to $500,000 | $4.10 - $4.90 | $2.90 | $5.10 - $6.12 | $3.90 |
| $500,001 and up to $1,000,000 | $3.50 - $4.20 | $2.55 | $4.50 - $5.40 | $3.30 |
| $1,000,001 and up to $5,000,000 | $2.75 - $3.30 | $2.00 | $3.90 - $4.68 | $2.70 |
| $5,000,001 and up to $15,000,000 | $1.50 - $2.00 | $1.20 | $1.05 - $3.96 | $0.85 |
| $15,000,001 and over | $1.50 - $2.00 | $1.20 | $0.90 - $3.96 | $0.75 |
| Minimum Premium | $175 | $175 | $228 - $274 | $168 |
| Simultaneous Issue * | $175 | | $150 | |
| Closing Protection Letter ** | $30 | | $50 | |

*\* Simultaneous issue charge is only applicable when Owners and Lenders title insurance policies are issued at the same time.*

*\*\* Closing Protection Letter charge is only applicable when Lender title insurance is issued.*

| | | |
|---|---|---|
| **Harbour, LLC** | Homeowner's Insurance, Flood Insurance | *The cost of homeowner's insurance, flood insurance, and/or personal insurance products varies depending on several factors, including but not limited to: size, value, and age of the structures, geographical location, construction type, value of contents, intended use, and credit scores.* |
| **Capstone Insurance Group, Inc.** | Other Personal Insurance Products | |

Seller: _HJGT_    Buyer _AI_

Authenticity Verified 572600240-035b-49a9-9676-b363a84d6c22
DigiSign Verified - 572600240-035b-49a9-9676-b363a84d6c22

# CENTURY 21
New Millennium

## ACKNOWLEDGMENT

I/we have read this disclosure form, understand that Real Estate Broker is referring me/us to purchase the above-described settlement service(s) and that Real Estate Broker, NM, their employees and/or affiliates may receive a financial or other benefit as a result of this referral, and understand that Real Estate Broker receives a fee for performing marketing and advertising services for HSA and SLS.

*H. Jason Gold, Trustee*                                                06/12/2024
_____                    _____
Buyer's or Seller's Signature                                        Date
H. Jason Gold, Chapter 7 Trustee
Not individually but solely in his capacity
as the Chapter 7 Trustee in Bankruptcy
In re: Eagle Properties and Investments LLC
Bankruptcy Case No: 23-10566-KHK
_____                    _____
Buyer's or Seller's Signature                                        Date

*ANNN Investment*                                              07/03/24
_____                    _____
Buyer's or Seller's Signature                                        Date

_____                    _____
Buyer's or Seller's Signature                                        Date

Seller: *HJGT*      Buyer: _____/_____

**RESIDENTIAL LEAD-BASED PAINT HAZARDS DISCLOSURE FORM** LPD

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR)

**THIS FORM MUST BE COMPLETED FOR ANY PROPERTY BUILT PRIOR TO 1978**

PROPERTY ,7616 Grove Ave, Harrisburg, PA 17112

SELLER H Jason Gold, Trustee

## LEAD WARNING STATEMENT

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

## SELLER'S DISCLOSURE

*HJGT* / ____ **Seller has no knowledge** of the presence of lead-based paint and/or lead-based paint hazards in or about the Property.

____ / ____ **Seller has knowledge** of the presence of lead-based paint and/or lead-based paint hazards in or about the Property. (Provide the basis for determining that lead-based paint and/or hazards exist, the location(s), the condition of the painted surfaces, and other available information concerning Seller's knowledge of the presence of lead-based paint and/or lead-based paint hazards.)

## SELLER'S RECORDS/REPORTS

*HJGT* / ____ **Seller has no records or reports** pertaining to lead-based paint and/or lead-based paint hazards in or about the Property.

____ / ____ **Seller has provided** Buyer with all available records and reports regarding lead-based paint and/or lead-based paint hazards in or about the Property. (List documents):

Seller certifies that to the best of Seller's knowledge the above statements are true and accurate.

SELLER *H. Jason Gold, Trustee* DATE 06/12/2024

SELLER ____ DATE ____

SELLER ____ DATE ____

BUYER ____

DATE OF AGREEMENT ____

## BUYER'S ACKNOWLEDGEMENT

*AI* ____ Buyer has received the pamphlet *Protect Your Family from Lead in Your Home* and has read the Lead Warning Statement.

____ Buyer has reviewed Seller's disclosure of known lead-based paint and/or lead-based paint hazards and has received the records and reports regarding lead-based paint and/or lead-based paint hazards identified above.

Buyer has (initial one):

____ / ____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or

*AI* / ____ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

Buyer certifies that to the best of Buyer's knowledge the statements contained in Buyer's Acknowledgement are true and accurate.

BUYER *ANNN Investment* DATE 07/03/24

BUYER ____ DATE ____

BUYER ____ DATE ____

## AGENT ACKNOWLEDGEMENT AND CERTIFICATION

*SY* ____ Agent/Licensee represents that Agent has informed Seller of Seller's obligations under the Residential Lead-Based-Paint Hazard Reduction Act, 42 U.S.C. §4852(d), and is aware of Agent's responsibility to ensure compliance.

The following have reviewed the information above and certify that the Agent statements are true to the best of their knowledge and belief. **Seller Agent and Buyer Agent must both sign this form.**

BROKER FOR SELLER (Company Name) Century 21 New Millennium
LICENSEE Stephanie Young *Stephanie Young* DATE 06/11/2024

BROKER FOR BUYER (Company Name) Prime Realty Services
LICENSEE *Alex Saad* DATE 07/03/24

Pennsylvania Association of Realtors®
COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016
10/16
Created by Lisa Jalufka with SkySlope® Forms

# SELLER'S PROPERTY DISCLOSURE STATEMENT

**SPD**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

**PROPERTY** _, 7616 Grove Avenue, Harrisburg, PA 17112_

**SELLER** H Jason Gold, Trustee

## INFORMATION REGARDING THE REAL ESTATE SELLER DISCLOSURE LAW

The Real Estate Seller Disclosure Law (68 P.S. §7301, et seq.) requires that before an agreement of sale is signed, the seller in a residential real estate transfer must disclose all known **material defects** about the property being sold that are not readily observable. A **material defect** is a problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is at or beyond the end of its normal useful life is not by itself a material defect.

This property disclosure statement ("Statement") includes disclosures beyond the basic requirements of the Law and is designed to assist Seller in complying with disclosure requirements and to assist Buyer in evaluating the property being considered. Sellers who wish to see or use the basic disclosure form can find the form on the website of the Pennsylvania State Real Estate Commission. Neither this Statement nor the basic disclosure form limits Seller's obligation to disclose a material defect.

This Statement discloses Seller's knowledge of the condition of the Property as of the date signed by Seller and **is not a substitute for any inspections or warranties** that Buyer may wish to obtain. **This Statement is not a warranty of any kind by Seller or a warranty or representation by any listing real estate broker, any selling real estate broker, or their licensees.** Buyer is encouraged to address concerns about the condition of the Property that may not be included in this Statement.

**The Law provides exceptions (listed below) where a property disclosure statement does not have to be completed. All other sellers are obligated to complete a property disclosure statement, even if they do not occupy or have never occupied the Property.**

1. Transfers by a fiduciary during the administration of a decedent estate, guardianship, conservatorship or trust.
2. Transfers as a result of a court order.
3. Transfers to a mortgage lender that results from a buyer's default and subsequent foreclosure sales that result from default.
4. Transfers from a co-owner to one or more other co-owners.
5. Transfers made to a spouse or direct descendant.
6. Transfers between spouses as a result of divorce, legal separation or property settlement.
7. Transfers by a corporation, partnership or other association to its shareholders, partners or other equity owners as part of a plan of liquidation.
8. Transfers of a property to be demolished or converted to non-residential use.
9. Transfers of unimproved real property.
10. Transfers of new construction that has never been occupied and:
    a. The buyer has received a one-year warranty covering the construction;
    b. The building has been inspected for compliance with the applicable building code or, if none, a nationally recognized model building code; and
    c. A certificate of occupancy or a certificate of code compliance has been issued for the dwelling.

### COMMON LAW DUTY TO DISCLOSE

Although the provisions of the Real Estate Seller Disclosure Law exclude some transfers from the requirement of completing a disclosure statement, the Law does not excuse the seller's common law duty to disclose any known material defect(s) of the Property in order to avoid fraud, misrepresentation or deceit in the transaction. **This duty continues until the date of settlement.**

### EXECUTOR, ADMINISTRATOR, TRUSTEE SIGNATURE BLOCK

According to the provisions of the Real Estate Seller Disclosure Law, the undersigned executor, administrator or trustee is not required to fill out a Seller's Property Disclosure Statement. **The executor, administrator or trustee, must, however, disclose any known material defect(s) of the Property.**

_____   **DATE** _____

Seller's Initials  _HJGT_  Date_____      SPD Page 1 of 11      Buyer's Initials  _AI_  Date_07/03/24_

Pennsylvania Association of Realtors®

**COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2021**
rev. 3/21; rel. 7/21

06/12/2024

Created by Lisa Jalufka with SkySlope® Forms

**Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

### 1. SELLER'S EXPERTISE

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) | Does Seller possess expertise in contracting, engineering, architecture, environmental assessment or other areas related to the construction and conditions of the Property and its improvements? A | | | | |
| (B) | Is Seller the landlord for the Property? B | | | | |
| (C) | Is Seller a real estate licensee? C | | | | |

**Explain any "yes" answers in Section 1:** _____

_____

### 2. OWNERSHIP/OCCUPANCY

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) | **Occupancy** | | | | |
| | 1. When was the Property most recently occupied? _____ A1 | | | | |
| | 2. By how many people? _____ A2 | | | | |
| | 3. Was Seller the most recent occupant? A3 | | | | |
| | 4. If "no," when did Seller most recently occupy the Property? _____ A4 | | | | |
| (B) | **Role of Individual Completing This Disclosure.** Is the individual completing this form: | | | | |
| | 1. The owner B1 | | | | |
| | 2. The executor or administrator B2 | | | | |
| | 3. The trustee B3 | | | | |
| | 4. An individual holding power of attorney B4 | | | | |
| (C) | When was the Property acquired? _____ C | | | | |
| (D) | List any animals that have lived in the residence(s) or other structures during your ownership: ____ | | | | |

_____

**Explain Section 2 (if needed):** _____

_____

### 3. CONDOMINIUMS/PLANNED COMMUNITIES/HOMEOWNERS ASSOCIATIONS

(A) Disclosures for condominiums and cooperatives are limited to Seller's particular unit(s). Disclosures regarding common areas or facilities are not required by the Real Estate Seller Disclosure Law.

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (B) | **Type.** Is the Property part of a(n): | | | | |
| | 1. Condominium B1 | | | | |
| | 2. Homeowners association or planned community B2 | | | | |
| | 3. Cooperative B3 | | | | |
| | 4. Other type of association or community B4 | | | | |
| (C) | If "yes," how much are the fees? $_____, paid (☐ Monthly) (☐ Quarterly) (☐ Yearly) C | | | | |
| (D) | If "yes," are there any community services or systems that the association or community is responsible for supporting or maintaining? Explain: _____ D | | | | |
| (E) | If "yes," provide the following information: | | | | |
| | 1. Community Name _____ E1 | | | | |
| | 2. Contact _____ E2 | | | | |
| | 3. Mailing Address _____ E3 | | | | |
| | 4. Telephone Number _____ E4 | | | | |
| (F) | How much is the capital contribution/initiation fee(s)? $_____ F | | | | |

*Notice to Buyer: A buyer of a resale unit in a condominium, cooperative, or planned community must receive a copy of the declaration (other than the plats and plans), the by-laws, the rules or regulations, and a certificate of resale issued by the association, condominium, cooperative, or planned community. Buyers may be responsible for capital contributions, initiation fees or similar one-time fees in addition to regular maintenance fees. The buyer will have the option of canceling the agreement with the return of all deposit monies until the certificate has been provided to the **buyer** and for five days thereafter or until conveyance, whichever occurs first.*

### 4. ROOFS AND ATTIC

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) | **Installation** | | | | |
| | 1. When was or were the roof or roofs installed? _____ A1 | | | | |
| | 2. Do you have documentation (invoice, work order, warranty, etc.)? A2 | | | | |
| (B) | **Repair** | | | | |
| | 1. Was the roof or roofs or any portion of it or them replaced or repaired during your ownership? B1 | | | | |
| | 2. If it or they were replaced or repaired, were any existing roofing materials removed? B2 | | | | |
| (C) | **Issues** | | | | |
| | 1. Has the roof or roofs ever leaked during your ownership? C1 | | | | |
| | 2. Have there been any other leaks or moisture problems in the attic? C2 | | | | |
| | 3. Are you aware of any past or present problems with the roof(s), attic, gutters, flashing or down-spouts? C3 | | | | |

Seller's Initials __*HJGT*__ Date __06/12/2024__  SPD Page 2 of 11  Buyer's Initials __AI__ Date __07/03/24__

**Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

**Explain any "yes" answers in Section 4.** Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date they were done: _____

_____

### 5.  BASEMENTS AND CRAWL SPACES

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) **Sump Pump** | | | | | |
| 1. Does the Property have a sump pit? If "yes," how many? _____ | A1 | | | | |
| 2. Does the Property have a sump pump? If "yes," how many? _____ | A2 | | | | |
| 3. If it has a sump pump, has it ever run? | A3 | | | | |
| 4. If it has a sump pump, is the sump pump in working order? | A4 | | | | |
| (B) **Water Infiltration** | | | | | |
| 1. Are you aware of any past or present water leakage, accumulation, or dampness within the basement or crawl space? | B1 | | | | |
| 2. Do you know of any repairs or other attempts to control any water or dampness problem in the basement or crawl space? | B2 | | | | |
| 3. Are the downspouts or gutters connected to a public sewer system? | B3 | | | | |

**Explain any "yes" answers in Section 5.** Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date they were done: _____

_____

_____

### 6.  TERMITES/WOOD-DESTROYING INSECTS, DRYROT, PESTS

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) **Status** | | | | | |
| 1. Are you aware of past or present dryrot, termites/wood-destroying insects or other pests on the Property? | A1 | | | | |
| 2. Are you aware of any damage caused by dryrot, termites/wood-destroying insects or other pests? | A2 | | | | |
| (B) **Treatment** | | | | | |
| 1. Is the Property currently under contract by a licensed pest control company? | B1 | | | | |
| 2. Are you aware of any termite/pest control reports or treatments for the Property? | B2 | | | | |

**Explain any "yes" answers in Section 6.** Include the name of any service/treatment provider, if applicable: _____

_____

### 7.  STRUCTURAL ITEMS

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) Are you aware of any past or present movement, shifting, deterioration, or other problems with walls, foundations or other structural components? | A | | | | |
| (B) Are you aware of any past or present problems with driveways, walkways, patios or retaining walls on the Property? | B | | | | |
| (C) Are you aware of any past or present water infiltration in the house or other structures, other than the roof(s), basement or crawl space(s)? | C | | | | |
| (D) **Stucco and Exterior Synthetic Finishing Systems** | | | | | |
| 1. Is any part of the Property constructed with stucco or an Exterior Insulating Finishing System (EIFS) such as Dryvit or synthetic stucco, synthetic brick or synthetic stone? | D1 | | | | |
| 2. If "yes," indicate type(s) and location(s) _____ | D2 | | | | |
| 3. If "yes," provide date(s) installed _____ | D3 | | | | |
| (E) Are you aware of any fire, storm/weather-related, water, hail or ice damage to the Property? | E | | | | |
| (F) Are you aware of any defects (including stains) in flooring or floor coverings? | F | | | | |

**Explain any "yes" answers in Section 7.** Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date the work was done: _____

_____

### 8.  ADDITIONS/ALTERATIONS

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) Have any additions, structural changes or other alterations (including remodeling) been made to the Property during your ownership? Itemize and date all additions/alterations below. | A | | | | |

| Addition, structural change or alteration (continued on following page) | Approximate date of work | Were permits obtained? (Yes/No/Unk/NA) | Final inspections/ approvals obtained? (Yes/No/Unk/NA) |
|---|---|---|---|
| | | | |
| | | | |

Seller's Initials ___*MJGT*___  Date  06/12/2024  SPD Page 3 of 11    Buyer's Initials  *AI*   Date 07/03/24

**Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

| Addition, structural change or alteration | Approximate date of work | Were permits obtained? (Yes/No/Unk/NA) | Final inspections/ approvals obtained? (Yes/No/Unk/NA) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

☐ **A sheet describing other additions and alterations is attached.**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|

(B) Are you aware of any private or public architectural review control of the Property other than zoning codes? If "yes," explain: _____ **B** | | | | |

*Note to Buyer: The PA Construction Code Act, 35 P.S. §7210 et seq. (effective 2004), and local codes establish standards for building and altering properties. Buyers should check with the municipality to determine if permits and/or approvals were necessary for disclosed work and if so, whether they were obtained. Where required permits were not obtained, the municipality might require the current owner to up-grade or remove changes made by the prior owners. Buyers can have the Property inspected by an expert in codes compliance to determine if issues exist. Expanded title insurance policies may be available for Buyers to cover the risk of work done to the Property by previous owners without a permit or approval.*

*Note to Buyer: According to the PA Stormwater Management Act, each municipality must enact a Storm Water Management Plan for drainage control and flood reduction. The municipality where the Property is located may impose restrictions on impervious or semi-per-vious surfaces added to the Property. Buyers should contact the local office charged with overseeing the Stormwater Management Plan to determine if the prior addition of impervious or semi-pervious areas, such as walkways, decks, and swimming pools, might affect your ability to make future changes.*

**9. WATER SUPPLY**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) **Source.** Is the source of your drinking water (check all that apply): | | | | | |
| 1. Public | A1 | | | | ■ |
| 2. A well on the Property | A2 | | | | ■ |
| 3. Community water | A3 | | | | ■ |
| 4. A holding tank | A4 | | | | ■ |
| 5. A cistern | A5 | | | | ■ |
| 6. A spring | A6 | | | | ■ |
| 7. Other _____ | A7 | | | | ■ |
| 8. If no water service, explain:_____ | | | | | |
| (B) **General** | | | | | |
| 1. When was the water supply last tested? _____ | B1 | | | | ■ |
| Test results: _____ | | | | | |
| 2. Is the water system shared? | B2 | | | | ■ |
| 3. If "yes," is there a written agreement? | B3 | | | | ■ |
| 4. **Do you have a softener, filter or other conditioning system?** | B4 | | | | ■ |
| 5. **Is the softener, filter or other treatment system leased? From whom?** _____ | B5 | | | | ■ |
| 6. **If your drinking water source is not public, is the pumping system in working order? If "no," explain:** _____ | B6 | | | | ■ |
| (C) **Bypass Valve** (for properties with multiple sources of water) | | | | | |
| 1. Does your water source have a bypass valve? | C1 | | | | ■ |
| 2. If "yes," is the bypass valve working? | C2 | | | | ■ |
| (D) **Well** | | | | | |
| 1. Has your well ever run dry? | D1 | | | | ■ |
| 2. Depth of well _____ | D2 | | | | ■ |
| 3. Gallons per minute: _____ , measured on (date)_____ | D3 | | | | ■ |
| 4. Is there a well that is used for something other than the primary source of drinking water? If "yes," explain _____ | D4 | | | | ■ |
| 5. If there is an unused well, is it capped? | D5 | | | | ■ |

Seller's Initials _MJGT_ Date___ 06/12/2024 **SPD Page 4 of 11** Buyer's Initials _AI_ Date___ 07/03/24

Authentisign ID: 72609240-035b-49a0-9676-b363a84d6c22

**Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

(E) **Issues**

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 1. | Are you aware of any leaks or other problems, past or present, relating to the water supply, pumping system and related items? **E1** | | | X | |
| 2. | Have you ever had a problem with your water supply? **E2** | | | | X |

**Explain any problem(s) with your water supply. Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date the work was done:** _____
_____

## 10. SEWAGE SYSTEM

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) **General** | | | | | |
| 1. Is the Property served by a sewage system (public, private or community)? | **A1** | | X | | |
| 2. If "no," is it due to unavailability or permit limitations? | **A2** | | | | X |
| 3. When was the sewage system installed (or date of connection, if public)? _____ | **A3** | | | | X |
| 4. Name of current service provider, if any: _____ | **A4** | | | | X |
| (B) **Type** Is your Property served by: | | | | | |
| 1. Public | **B1** | | | | X |
| 2. Community (non-public) | **B2** | | | | X |
| 3. An individual on-lot sewage disposal system | **B3** | | | | X |
| 4. Other, explain: _____ | **B4** | | | | X |
| (C) **Individual On-lot Sewage Disposal System.** (check all that apply): | | | | | |
| 1. Is your sewage system within 100 feet of a well? | **C1** | | | | X |
| 2. Is your sewage system subject to a ten-acre permit exemption? | **C2** | | | | X |
| 3. Does your sewage system include a holding tank? | **C3** | | | | X |
| 4. Does your sewage system include a septic tank? | **C4** | | | | X |
| 5. Does your sewage system include a drainfield? | **C5** | | | | X |
| 6. Does your sewage system include a sandmound? | **C6** | | | | X |
| 7. Does your sewage system include a cesspool? | **C7** | | | | X |
| 8. Is your sewage system shared? | **C8** | | | | X |
| 9. Is your sewage system any other type? Explain: _____ | **C9** | | | | X |
| 10. Is your sewage system supported by a backup or alternate system? | **C10** | | | | X |
| (D) **Tanks and Service** | | | | | |
| 1. Are there any metal/steel septic tanks on the Property? | **D1** | | | | X |
| 2. Are there any cement/concrete septic tanks on the Property? | **D2** | | | | X |
| 3. Are there any fiberglass septic tanks on the Property? | **D3** | | | | X |
| 4. Are there any other types of septic tanks on the Property? Explain _____ | **D4** | | | | X |
| 5. Where are the septic tanks located? _____ | **D5** | | | | X |
| 6. When were the tanks last pumped and by whom? _____ _____ | **D6** | | | | X |
| (E) **Abandoned Individual On-lot Sewage Disposal Systems and Septic** | | | | | |
| 1. Are you aware of any abandoned septic systems or cesspools on the Property? | **E1** | | | | X |
| 2. If "yes," have these systems, tanks or cesspools been closed in accordance with the municipality's ordinance? | **E2** | | | | X |
| (F) **Sewage Pumps** | | | | | |
| 1. Are there any sewage pumps located on the Property? | **F1** | | | | X |
| 2. If "yes," where are they located? _____ | **F2** | | | | X |
| 3. What type(s) of pump(s)? _____ | **F3** | | | | X |
| 4. Are pump(s) in working order? | **F4** | | | | X |
| 5. Who is responsible for maintenance of sewage pumps? _____ _____ | **F5** | | | | X |
| (G) **Issues** | | | | | |
| 1. How often is the on-lot sewage disposal system serviced? _____ | **G1** | | | | X |
| 2. When was the on-lot sewage disposal system last serviced and by whom? _____ _____ | **G2** | | | | X |
| 3. Is any waste water piping not connected to the septic/sewer system? | **G3** | | | X | |
| 4. Are you aware of any past or present leaks, backups, or other problems relating to the sewage system and related items? | **G4** | | | X | |

Seller's Initials  *HJGT*  Date _____     06/12/2024     SPD Page 5 of 11     Buyer's Initials  *AI*  Date 07/03/24

| Check yes, no, unknown (unk) or not applicable (N/A) for each question. Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered. |
|---|

**Explain any "yes" answers in Section 10. Include the location and extent of any problem(s) and any repair or remediation efforts, the name of the person or company who did the repairs and the date the work was done:** _____
_____

### 11. PLUMBING SYSTEM

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) **Material(s).** Are the plumbing materials (check all that apply): | | | | | |
| 1. Copper | A1 | | | | |
| 2. Galvanized | A2 | | | | |
| 3. Lead | A3 | | | | |
| 4. PVC | A4 | | | | |
| 5. Polybutylene pipe (PB) | A5 | | | | |
| 6. Cross-linked polyethyline (PEX) | A6 | | | | |
| 7. Other _____ | A7 | | | | |
| (B) Are you aware of any past or present problems with any of your plumbing fixtures (e.g., including but not limited to: kitchen, laundry, or bathroom fixtures; wet bars; exterior faucets; etc.)? | B | | | | |
| If "yes," explain: _____ | | | | | |

### 12. DOMESTIC WATER HEATING

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) **Type(s).** Is your water heating (check all that apply): | | | | | |
| 1. Electric | A1 | | | | |
| 2. Natural gas | A2 | | | | |
| 3. Fuel oil | A3 | | | | |
| 4. Propane | A4 | | | | |
| If "yes," is the tank owned by Seller? | | | | | |
| 5. Solar | A5 | | | | |
| If "yes," is the system owned by Seller? | | | | | |
| 6. Geothermal | A6 | | | | |
| 7. Other _____ | A7 | | | | |
| (B) **System(s)** | | | | | |
| 1. How many water heaters are there?_____ | B1 | | | | |
| Tanks _____    Tankless_____ | | | | | |
| 2. When were they installed?_____ | B2 | | | | |
| 3. Is your water heater a summer/winter hook-up (integral system, hot water from the boiler, etc.)? | B3 | | | | |
| (C) Are you aware of any problems with any water heater or related equipment? | C | | | | |
| If "yes," explain: _____ | | | | | |

### 13. HEATING SYSTEM

| | | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| (A) **Fuel Type(s).** Is your heating source (check all that apply): | | | | | |
| 1. Electric | A1 | | | | |
| 2. Natural gas | A2 | | | | |
| 3. Fuel oil | A3 | | | | |
| 4. Propane | A4 | | | | |
| If "yes," is the tank owned by Seller? | | | | | |
| 5. Geothermal | A5 | | | | |
| 6. Coal | A6 | | | | |
| 7. Wood | A7 | | | | |
| 8. Solar shingles or panels | A8 | | | | |
| If "yes," is the system owned by Seller? | | | | | |
| 9. Other: _____ | A9 | | | | |
| (B) **System Type(s)** (check all that apply): | | | | | |
| 1. Forced hot air | B1 | | | | |
| 2. Hot water | B2 | | | | |
| 3. Heat pump | B3 | | | | |
| 4. Electric baseboard | B4 | | | | |
| 5. Steam | B5 | | | | |
| 6. Radiant flooring | B6 | | | | |
| 7. Radiant ceiling | B7 | | | | |

**Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

|  |  | Yes | No | Unk | N/A |
|---|---|---|---|---|---|
| 8. Pellet stove(s) <br> How many and location? _____ | B8 |  |  |  | ■ |
| 9. Wood stove(s) <br> How many and location? _____ | B9 |  |  |  | ■ |
| 10. Coal stove(s) <br> How many and location? _____ | B10 |  |  |  | ■ |
| 11. Wall-mounted split system(s) <br> How many and location? _____ | B11 |  |  |  | ■ |
| 12. Other: _____ | B12 |  |  |  |  |
| 13. If multiple systems, provide locations _____ | B13 | ■ |  |  |  |
| **(C) Status** |  |  |  |  |  |
| 1. Are there any areas of the house that are not heated? <br> If "yes," explain: _____ | C1 |  | ■ |  | ■ |
| 2. How many heating zones are in the Property? _____ | C2 | ■ |  |  |  |
| 3. When was each heating system(s) or zone installed? _____ | C3 | ■ |  |  |  |
| 4. When was the heating system(s) last serviced? _____ | C4 | ■ |  |  |  |
| 5. Is there an additional and/or backup heating system? If "yes," explain: _____ | C5 |  |  |  | ■ |
| 6. Is any part of the heating system subject to a lease, financing or other agreement? <br> If "yes," explain: _____ | C6 |  | ■ |  | ■ |
| **(D) Fireplaces and Chimneys** |  |  |  |  |  |
| 1. Are there any fireplaces? How many? _____ | D1 | ■ |  |  |  |
| 2. Are all fireplaces working? | D2 | ■ |  |  |  |
| 3. Fireplace types (wood, gas, electric, etc.): _____ | D3 | ■ |  |  |  |
| 4. Was the fireplace(s) installed by a professional contractor or manufacturer's representative? | D4 | ■ |  |  |  |
| 5. Are there any chimneys (from a fireplace, water heater or any other heating system)? | D5 |  | ■ |  |  |
| 6. How many chimneys? _____ | D6 | ■ |  |  |  |
| 7. When were they last cleaned? _____ | D7 | ■ |  |  |  |
| 8. Are the chimneys working? If "no," explain: _____ | D8 | ■ |  |  |  |
| **(E) Fuel Tanks** |  |  |  |  |  |
| 1. Are you aware of any heating fuel tank(s) on the Property? | E1 |  | ■ |  |  |
| 2. Location(s), including underground tank(s): _____ | E2 |  |  |  | ■ |
| 3. If you do not own the tank(s), explain: _____ | E3 |  |  |  | ■ |
| **(F) Are you aware of any problems or repairs needed regarding any item in Section 13? If "yes," explain:** _____ | F |  | ■ |  | ■ |
| **14. AIR CONDITIONING SYSTEM** |  |  |  |  |  |
| **(A) Type(s).** Is the air conditioning (check all that apply): |  |  |  |  |  |
| 1. Central air | A1 | ■ |  |  |  |
| a. How many air conditioning zones are in the Property? _____ | 1a | ■ |  |  |  |
| b. When was each system or zone installed? _____ | 1b | ■ |  |  |  |
| c. When was each system last serviced? _____ | 1c | ■ |  |  |  |
| 2. Wall units <br> How many and the location? _____ | A2 |  | ■ |  |  |
| 3. Window units <br> How many? _____ | A3 |  |  |  | ■ |
| 4. Wall-mounted split units <br> How many and the location? _____ | A4 |  |  |  | ■ |
| 5. Other _____ | A5 |  |  |  | ■ |
| 6. None | A6 |  |  |  | ■ |
| **(B)** Are there any areas of the house that are not air conditioned? <br> If "yes," explain: _____ | B |  | ■ |  | ■ |
| **(C) Are you aware of any problems with any item in Section 14? If "yes," explain:** _____ | C |  | ■ |  | ■ |

**Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

## 15. ELECTRICAL SYSTEM

(A) **Type(s)**

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| A1 |  |  |  | ■ |
| A2 |  |  |  | ■ |
| A3 |  |  |  | ■ |
| 3a | ■ |  |  |  |
| 3b |  |  |  | ■ |
| B | ■ |  |  |  |
| C | ■ |  |  |  |
| D |  |  |  | ■ |

1. Does the electrical system have fuses?
2. Does the electrical system have circuit breakers?
3. Is the electrical system solar powered?
   a. If "yes," is it entirely or partially solar powered? _____
   b. If "yes," is any part of the system subject to a lease, financing or other agreement? If "yes," explain: _____

(B) What is the system amperage? _____
(C) Are you aware of any knob and tube wiring in the Property?
(D) Are you aware of any problems or repairs needed in the electrical system? If "yes," explain: _____
_____

## 16. OTHER EQUIPMENT AND APPLIANCES

(A) **THIS SECTION IS INTENDED TO IDENTIFY PROBLEMS OR REPAIRS** and must be completed for each item that will, or may, be included with the Property. The terms of the Agreement of Sale negotiated between Buyer and Seller will determine which items, if any, are included in the purchase of the Property. **THE FACT THAT AN ITEM IS LISTED DOES NOT MEAN IT IS INCLUDED IN THE AGREEMENT OF SALE.**

(B) Are you aware of any problems or repairs needed to any of the following:

| Item | Yes | No | N/A | | Item | Yes | No | N/A |
|---|---|---|---|---|---|---|---|---|
| A/C window units |  |  |  | | Pool/spa heater |  |  |  |
| Attic fan(s) |  |  |  | | Range/oven |  |  |  |
| Awnings |  |  |  | | Refrigerator(s) |  |  |  |
| Carbon monoxide detectors |  |  |  | | Satellite dish |  |  |  |
| Ceiling fans |  |  |  | | Security alarm system |  |  |  |
| Deck(s) |  |  |  | | Smoke detectors |  |  |  |
| Dishwasher |  |  |  | | Sprinkler automatic timer |  |  |  |
| Dryer |  |  |  | | Stand-alone freezer |  |  |  |
| Electric animal fence |  |  |  | | Storage shed |  |  |  |
| Electric garage door opener |  |  |  | | Trash compactor |  |  |  |
| Garage transmitters |  |  |  | | Washer |  |  |  |
| Garbage disposal |  |  |  | | Whirlpool/tub |  |  |  |
| In-ground lawn sprinklers |  |  |  | | Other: |  |  |  |
| Intercom |  |  |  | | 1. |  |  |  |
| Interior fire sprinklers |  |  |  | | 2. |  |  |  |
| Keyless entry |  |  |  | | 3. |  |  |  |
| Microwave oven |  |  |  | | 4. |  |  |  |
| Pool/spa accessories |  |  |  | | 5. |  |  |  |
| Pool/spa cover |  |  |  | | 6. |  |  |  |

(C) **Explain any "yes" answers in Section 16:** _____

## 17. POOLS, SPAS AND HOT TUBS

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| A |  |  |  | ■ |
| A1 | ■ |  |  |  |
| A2 | ■ |  |  |  |
| A3 | ■ |  |  |  |
| A4 | ■ |  |  |  |
| A5 | ■ |  |  |  |
| A6 |  |  | ■ |  |
| A7 |  |  | ■ |  |
| B |  |  |  | ■ |
| B1 |  |  | ■ |  |
| B2 |  |  | ■ |  |

(A) Is there a swimming pool on the Property? If "yes,":
1. Above-ground or in-ground? _____
2. Saltwater or chlorine? _____
3. If heated, what is the heat source? _____
4. Vinyl-lined, fiberglass or concrete-lined? _____
5. What is the depth of the swimming pool? _____
6. Are you aware of any problems with the swimming pool?
7. Are you aware of any problems with any of the swimming pool equipment (cover, filter, ladder, lighting, pump, etc.)?
(B) Is there a spa or hot tub on the Property?
1. Are you aware of any problems with the spa or hot tub?
2. Are you aware of any problems with any of the spa or hot tub equipment (steps, lighting, jets, cover, etc.)?

(C) **Explain any problems in Section 17:** _____

Seller's Initials _HJGT_   Date _06/12/2024_   SPD Page 8 of 11   Buyer's Initials    Date _07/03/24_

**Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

### 18. WINDOWS

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| (A) Have any windows or skylights been replaced during your ownership of the Property? **A** |  |  |  | ■ |
| (B) Are you aware of any problems with the windows or skylights? **B** |  |  | ■ | ■ |

**Explain any "yes" answers in Section 18. Include the location and extent of any problem(s) and any repair, replacement or remediation efforts, the name of the person or company who did the repairs and the date the work was done:** _____
_____

### 19. LAND/SOILS

(A) **Property**

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Are you aware of any fill or expansive soil on the Property? **A1** |  |  | ■ | ■ |
| 2. Are you aware of any sliding, settling, earth movement, upheaval, subsidence, sinkholes or earth stability problems that have occurred on or affect the Property? **A2** |  |  | ■ | ■ |
| 3. Are you aware of sewage sludge (other than commercially available fertilizer products) being spread on the Property? **A3** |  |  | ■ | ■ |
| 4. Have you received written notice of sewage sludge being spread on an adjacent property? **A4** |  |  |  | ■ |
| 5. Are you aware of any existing, past or proposed mining, strip-mining, or any other excavations on the Property? **A5** |  |  | ■ | ■ |

**Note to Buyer:** *The Property may be subject to mine subsidence damage. Maps of the counties and mines where mine subsidence damage may occur and further information on mine subsidence insurance are available through* Department of Environmental Protection Mine Subsidence Insurance Fund, (800) 922-1678 or ra-epmsi@pa.gov.

(B) **Preferential Assessment and Development Rights**

Is the Property, or a portion of it, preferentially assessed for tax purposes, or subject to limited development rights under the:

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Farmland and Forest Land Assessment Act - 72 P.S.§5490.1, et seq. (Clean and Green Program) **B1** |  |  |  |  |
| 2. Open Space Act - 16 P.S. §11941, et seq. **B2** |  |  |  |  |
| 3. Agricultural Area Security Law - 3 P.S. §901, et seq. (Development Rights) **B3** |  |  |  |  |
| 4. Any other law/program: _____ **B4** |  |  |  |  |

**Note to Buyer:** *Pennsylvania has enacted the Right to Farm Act (3 P.S. § 951-957) in an effort to limit the circumstances under which agricultural operations may be subject to nuisance suits or ordinances. Buyers are encouraged to investigate whether any agricultural operations covered by the Act operate in the vicinity of the Property.*

(C) **Property Rights**

Are you aware of the transfer, sale and/or lease of any of the following property rights (by you or a previous owner of the Property):

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Timber **C1** |  |  | ■ | ■ |
| 2. Coal **C2** |  |  | ■ | ■ |
| 3. Oil **C3** |  |  | ■ | ■ |
| 4. Natural gas **C4** |  |  | ■ | ■ |
| 5. Mineral or other rights (such as farming rights, hunting rights, quarrying rights) Explain: **C5** |  |  | ■ | ■ |

_____

**Note to Buyer:** *Before entering into an agreement of sale, Buyer can investigate the status of these rights by, among other means, engaging legal counsel, obtaining a title examination of unlimited years and searching the official records in the county Office of the Recorder of Deeds, and elsewhere. Buyer is also advised to investigate the terms of any existing leases, as Buyer may be subject to terms of those leases.*

**Explain any "yes" answers in Section 19:** _____
_____

### 20. FLOODING, DRAINAGE AND BOUNDARIES

(A) **Flooding/Drainage**

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Is any part of this Property located in a wetlands area? **A1** |  |  |  | ■ |
| 2. Is the Property, or any part of it, designated a Special Flood Hazard Area (SFHA)? **A2** |  |  |  | ■ |
| 3. Do you maintain flood insurance on this Property? **A3** |  |  |  | ■ |
| 4. Are you aware of any past or present drainage or flooding problems affecting the Property? **A4** |  |  |  | ■ |
| 5. Are you aware of any drainage or flooding mitigation on the Property? **A5** |  |  |  | ■ |
| 6. Are you aware of the presence on the Property of any man-made feature that temporarily or permanently conveys or manages storm water, including any basin, pond, ditch, drain, swale, culvert, pipe or other feature? **A6** |  |  |  | ■ |
| 7. If "yes," are you responsible for maintaining or repairing that feature which conveys or manages storm water for the Property? **A7** |  |  |  |  |



Seller's Initials ____ *JJGT* ____ Date _06/12/2024_    **SPD Page 9 of 11**    Buyer's Initials [AI]    Date _07/03/24_

> **Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

Explain any "yes" answers in Section 20(A). Include dates, the location and extent of flooding and the condition of any man-made storm water management features: _____



**(B) Boundaries**

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Are you aware of encroachments, boundary line disputes, or easements affecting the Property? **B1** |  |  |  | ■ |
| 2. Is the Property accessed directly (without crossing any other property) by or from a public road? **B2** |  |  |  | ■ |
| 3. Can the Property be accessed from a private road or lane? **B3** |  |  |  | ■ |
|    a. If "yes," is there a written right of way, easement or maintenance agreement? **3a** |  |  |  | ■ |
|    b. If "yes," has the right of way, easement or maintenance agreement been recorded? **3b** |  |  |  | ■ |
| 4. Are you aware of any shared or common areas (driveways, bridges, docks, walls, etc.) or mainte-nance agreements? **B4** |  |  |  | ■ |

*Note to Buyer: Most properties have easements running across them for utility services and other reasons. In many cases, the easements do not restrict the ordinary use of the property, and Seller may not be readily aware of them. Buyers may wish to determine the existence of easements and restrictions by examining the property and ordering an Abstract of Title or searching the records in the Office of the Recorder of Deeds for the county before entering into an agreement of sale.*

Explain any "yes" answers in Section 20(B): _____
_____

## 21. HAZARDOUS SUBSTANCES AND ENVIRONMENTAL ISSUES

**(A) Mold and Indoor Air Quality (other than radon)**

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Are you aware of any tests for mold, fungi, or indoor air quality in the Property? **A1** |  |  |  | ■ |
| 2. Other than general household cleaning, have you taken any efforts to control or remediate mold or mold-like substances in the Property? **A2** |  |  |  | ■ |

*Note to Buyer: Individuals may be affected differently, or not at all, by mold contamination. If mold contamination or indoor air quality is a concern, buyers are encouraged to engage the services of a qualified professional to do testing. Information on this issue is available from the United States Environmental Protection Agency and may be obtained by contacting IAQ INFO, P.O. Box 37133, Washington, D.C. 20013-7133, 1-800-438-4318.*

**(B) Radon**

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Are you aware of any tests for radon gas that have been performed in any buildings on the Property? **B1** |  |  |  | ■ |
| 2. If "yes," provide test date and results _____ **B2** | ■ |  |  |  |
| 3. Are you aware of any radon removal system on the Property? **B3** |  |  |  | ■ |

**(C) Lead Paint**

If the Property was constructed, or if construction began, before 1978, you must disclose any knowledge of, and records and reports about, lead-based paint on the Property on a separate disclosure form.

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Are you aware of any lead-based paint or lead-based paint hazards on the Property? **C1** |  |  |  | ■ |
| 2. Are you aware of any reports or records regarding lead-based paint or lead-based paint hazards on the Property? **C2** |  |  |  | ■ |

**(D) Tanks**

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Are you aware of any existing underground tanks? **D1** |  |  |  | ■ |
| 2. Are you aware of any underground tanks that have been removed or filled? **D2** |  |  |  | ■ |

**(E) Dumping.** Has any portion of the Property been used for waste or refuse disposal or storage?
If "yes," location: _____

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| **E** |  |  |  | ■ |

**(F) Other**

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Are you aware of any past or present hazardous substances on the Property (structure or soil) such as, but not limited to, asbestos or polychlorinated biphenyls (PCBs)? **F1** |  |  |  | ■ |
| 2. Are you aware of any other hazardous substances or environmental concerns that may affect the Property? **F2** |  |  |  | ■ |
| 3. If "yes," have you received written notice regarding such concerns? **F3** |  |  |  | ■ |
| 4. Are you aware of testing on the Property for any other hazardous substances or environmental concerns? **F4** |  |  |  | ■ |

Explain any "yes" answers in Section 21. Include test results and the location of the hazardous substance(s) or environmental issue(s): _____

## 22. MISCELLANEOUS

**(A) Deeds, Restrictions and Title**

|  | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 1. Are there any deed restrictions or restrictive covenants that apply to the Property? **A1** |  |  |  | ■ |
| 2. Are you aware of any historic preservation restriction or ordinance or archeological designation associated with the Property? **A2** |  |  |  | ■ |




**Check yes, no, unknown (unk) or not applicable (N/A) for each question.** Be sure to check N/A when a question does not apply to the Property. Check unknown when the question does apply to the Property but you are not sure of the answer. All questions must be answered.

| | Yes | No | Unk | N/A |
|---|---|---|---|---|
| 3. Are you aware of any reason, including a defect in title or contractual obligation such as an option or right of first refusal, that would prevent you from giving a warranty deed or conveying title to the Property? **A3** | | | | |
| **(B) Financial** | | | | |
| 1. Are you aware of any public improvement, condominium or homeowner association assessments against the Property that remain unpaid or of any violations of zoning, housing, building, safety or fire ordinances or other use restriction ordinances that remain uncorrected? **B1** | | | | |
| 2. Are you aware of any mortgages, judgments, encumbrances, liens, overdue payments on a support obligation, or other debts against this Property or Seller that cannot be satisfied by the proceeds of this sale? **B2** | | | | |
| 3. Are you aware of any insurance claims filed relating to the Property during your ownership? **B3** | | | | |
| **(C) Legal** | | | | |
| 1. Are you aware of any violations of federal, state, or local laws or regulations relating to this Property? **C1** | | | | |
| 2. Are you aware of any existing or threatened legal action affecting the Property? **C2** | | | | |
| **(D) Additional Material Defects** | | | | |
| 1. Are you aware of any material defects to the Property, dwelling, or fixtures which are not disclosed elsewhere on this form? **D1** | | | | |

*Note to Buyer: A material defect is a problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system or subsystem is at or beyond the end of the normal useful life of such a structural element, system or subsystem is not by itself a material defect.*

**2. After completing this form, if Seller becomes aware of additional information about the Property, including through inspection reports from a buyer, the Seller must update the Seller's Property Disclosure Statement and/or attach the inspection report(s).** These inspection reports are for informational purposes only.

Explain any "yes" answers in Section 22: _____

_____

### 23. ATTACHMENTS

(A) **The following are part of this Disclosure if checked:**
☐ Seller's Property Disclosure Statement Addendum (PAR Form SDA)
☐ _____
☐ _____
☐ _____

**The undersigned Seller represents that the information set forth in this disclosure statement is accurate and complete to the best of Seller's knowledge. Seller hereby authorizes the Listing Broker to provide this information to prospective buyers of the property and to other real estate licensees. SELLER ALONE IS RESPONSIBLE FOR THE ACCURACY OF THE INFORMATION CONTAINED IN THIS STATEMENT. If any information supplied on this form becomes inaccurate following completion of this form, Seller shall notify Buyer in writing.**

SELLER *H. Jason Gold, Trustee* _____ DATE 06/12/2024
SELLER H. Jason Gold, Chapter 7 Trustee _____ DATE _____
SELLER Not individually but solely in his capacity _____ DATE _____
SELLER as the Chapter 7 Trustee in Bankruptcy  In re: Eagle _____ DATE _____
SELLER Properties and Investments LLC _____ DATE _____
SELLER Bankruptcy Case No: 23-10566-KHK _____ DATE _____

---

### RECEIPT AND ACKNOWLEDGEMENT BY BUYER
The undersigned Buyer acknowledges receipt of this Statement.  Buyer acknowledges that this Statement is not a warranty and that, unless stated otherwise in the sales contract, Buyer is purchasing this property in its present condition.  It is Buyer's responsibility to satisfy himself or herself as to the condition of the property.  Buyer may request that the property be inspected, at Buyer's expense and by qualified professionals, to determine the condition of the structure or its components.

BUYER *ANNN Investment* _____ DATE 07/03/24
BUYER _____ DATE _____
BUYER _____ DATE _____

# SHORT SALE ADDENDUM TO AGREEMENT OF SALE

**SHS**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

**PROPERTY** 7616 Grove Ave, Harrisburg, PA 17112

**SELLER** H. Jason Gold, Trustee

**BUYER** Annn Investme

1. This transaction is a potential Short Sale.

2. A Short Sale is a transaction in which Seller's proceeds are less than the amount necessary to pay off liens secured by the property. Examples of such liens include, but are not limited to, mortgages, home equity lines of credit, tax claims, homeowners' association/condominium fees, and legal judgments.

3. The Agreement of Sale is contingent upon Seller obtaining approval of the terms and conditions of the Agreement of Sale by each lender or other lien holder being asked to accept a payoff less than the full amount due ("Creditor(s)"). Buyer and Seller acknowledge that it may take an extended period of time to obtain Creditor approval of a Short Sale. Seller makes no representations about the response time of Creditor(s).
   **Notice Regarding Maintenance and Repair:** Buyer is advised that in a Short Sale, creditors will often retain the right to approve all financial aspects of the transaction, including expenses for repairs or ongoing maintenance of the Property. Creditors may not approve seller expenditures for these purposes, and Seller's financial situation may not allow for these costs to be covered directly by Seller.

4. Seller will submit the executed Agreement of Sale and all required documentation to Creditor(s) within __5__ DAYS of execution of the Agreement of Sale.
   **Notice Regarding Seller Documentation:** Seller may be required to provide documentation to Creditor(s) during the Short Sale process. Some items that may be requested during a Short Sale include, but are not limited to: a hardship letter, hardship proof, financial statements, bank statements, pay stubs, tax returns, list of repairs, listing agreement, agreement of sale, net sheet, and an MLS printout.

5. If Creditor(s) requires a change in the terms or conditions relating to the transaction as a condition of approving the Agreement of Sale, Seller will communicate these requirements to Buyer in writing within __5__ DAYS of receiving the requirements from Creditor(s). Buyer and Seller are not bound by any changes proposed by Creditor(s) unless Buyer and Seller agree in writing to make those changes. If either Buyer or Seller refuse to accept any changes required by Creditor(s) as a condition of approving the Agreement of Sale, Buyer or Seller may terminate the Agreement by written notice to the other party, with all deposit monies returned to the Buyer according to the terms of the Agreement of Sale.

6. (A) A mortgage application will be made:
   ☐ within the time period stated in the Agreement of Sale.
   ☐ within _____ days (7 if not specified) of receipt of written approval from Creditor(s).
   (B) Inspections elected in the Agreement of Sale will be performed
   ☐ within the time period stated in the Agreement of Sale.
   ☐ within _____ days (10 if not specified) of Buyer's receipt of written approval from Creditor(s).

7. If Creditor approval of the Agreement of Sale has not been received by **30 days** _____, Buyer or Seller may terminate the Agreement of Sale by written notice to the other party, with all deposit monies returned to the Buyer according to the terms of the Agreement of Sale.

**All other terms and conditions of the Agreement of Sale remain unchanged and in full effect. Buyer and Seller are advised to seek professional legal and financial advice before signing if either party desires such advice.**

**BUYER** _ANNN Investment_          **DATE** 07/03/24

**BUYER** _____          **DATE** _____

**BUYER** _____          **DATE** _____

**SELLER** _____          **DATE** _____

**SELLER** _H. Jason Gold, Trustee_          **DATE** 06/12/2024

**SELLER** H. Jason Gold, Chapter 7 Trustee          **DATE** _____
Not individually but solely in his capacity
as the Chapter 7 Trustee in Bankruptcy
In re: Eagle Properties and Investments LLC
Bankruptcy Case No: 23-10566-KHK

 Pennsylvania
Association of
Realtors®

**COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016**
1/16