## Residential Lease Agreement

**THIS LEASE (the "Lease") dated this** 16 **day of** July **, 20**23

**BETWEEN:**

Eagle Properties and Investments LLC

(the "Landlord")

OF THE FIRST PART

- AND-

Dina MacDonald; Jean Gambo; Troy MacDonald and Francesco Gambo

(collectively and individually the "Tenant")

OF THE SECOND PART

**IN CONSIDERATION OF** the Landlord leasing certain premises to the Tenant, the Tenant leasing those premises from the Landlord and the mutual benefits and obligations provided in this Lease, the receipt and sufficiency of which consideration is hereby acknowledged, the parties to this Lease agree as follows:

**Leased Property**

1. The Landlord agrees to rent to the Tenant the house, municipally described as 15474 Roxbury Rd, Glenwood, MD 21738, USA (the "Property"), for use as residential premises only. Neither the Property nor any part of the Property will be used at any time during the term of this Lease by Tenant for the purpose of carrying on any business, profession, or trade of any kind, or for the purpose other than as a private single-family residence.

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

2. Subject to the provisions of this Lease, apart from the Tenant and the Tenant's immediate family members, no other persons will live in the Property without the prior written permission of the Landlord.

3. No guests of the Tenants may occupy the Property for longer than one week without the prior written consent of the Landlord.

4. The following pets or animals may be kept in or about the Property:

    a. 2 rottweilers.

5. The Tenant agrees and acknowledges that the Property has been designated as a smoke-free living environment. The Tenant and members of Tenant's household will not smoke anywhere in the Property nor permit any guests or visitors to smoke in the Property.

**Term**

6. The term of the Lease commences at 12:00 noon on July 1, 2023 and ends at 12:00 noon on July 1, 2024.

**Rent**

7. Subject to the provisions of this Lease, the rent for the Property is $4,100.00 per month (the "Rent").

8. The Tenant will pay the Rent on or before the 1st day of each and every month of the term of this Lease to the Landlord at 445 Windover Ave NW, Vienna, VA 22180, USA or at such other place as the Landlord may later designate.

9. The Tenant will be charged an additional amount of $205.00 per infraction for any late Rent.

**Security Deposit**

10. On execution of this Lease, the Tenant will pay the Landlord a security deposit of $4,100.00 (the "Security Deposit").

11. The Landlord will hold the Security Deposit at an interest bearing account solely devoted to security deposits at Atlantic Union Bank located at 8221 Old Courthouse Rd, Vienna, VA

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

*Residential Lease*   Page 3 of 17

      22182, USA.

12.     The Landlord will return the Security Deposit at the end of this tenancy, less such deductions as provided in this Lease but no deduction will be made for damage due to reasonable wear and tear nor for any deduction prohibited by the applicable legislation of the State of Maryland (the "Act").

13.     During the term of this Lease or after its termination, the Landlord may charge the Tenant or make deductions from the Security Deposit for any or all of the following:

    a.     repair of walls due to plugs, large nails or any unreasonable number of holes in the walls including the repainting of such damaged walls;

    b.     repainting required to repair the results of any other improper use or excessive damage by the Tenant;

    c.     unplugging toilets, sinks and drains;

    d.     replacing damaged or missing doors, windows, screens, mirrors or light fixtures;

    e.     repairing cuts, burns, or water damage to linoleum, rugs, and other areas;

    f.     any other repairs or cleaning due to any damage beyond normal wear and tear caused or permitted by the Tenant or by any person whom the Tenant is responsible for;

    g.     the cost of extermination where the Tenant or the Tenant's guests have brought or allowed insects into the Property or building;

    h.     repairs and replacement required where windows are left open which have caused plumbing to freeze, or rain or water damage to floors or walls;

    i.     any other purpose allowed under this Lease or the Act.

    For the purpose of this clause, the Landlord may charge the Tenant for professional cleaning and repairs if the Tenant has not made alternate arrangements with the Landlord.

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

14. The Tenant may not use the Security Deposit as payment for the Rent.

**Quiet Enjoyment**

15. The Landlord covenants that on paying the Rent and performing the covenants contained in this Lease, the Tenant will peacefully and quietly have, hold, and enjoy the Property for the agreed term.

**Inspections**

16. At all reasonable times during the term of this Lease and any renewal of this Lease, the Landlord and its agents may enter the Property to make inspections or repairs, or to show the Property to prospective tenants or purchasers in compliance with the Act.

**Tenant Improvements**

17. The Tenant will obtain written permission from the Landlord before doing any of the following:

    a. applying adhesive materials, or inserting nails or hooks in walls or ceilings other than two small picture hooks per wall;

    b. painting, wallpapering, redecorating or in any way significantly altering the appearance of the Property;

    c. removing or adding walls, or performing any structural alterations;

    d. installing a waterbed(s);

    e. changing the amount of heat or power normally used on the Property as well as installing additional electrical wiring or heating units;

    f. placing or exposing or allowing to be placed or exposed anywhere inside or outside the Property any placard, notice or sign for advertising or any other purpose; or

    g. affixing to or erecting upon or near the Property any radio or TV antenna or tower.

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

**Utilities and Other Charges**

18. The Tenant is responsible for the payment of all utilities in relation to the Property.

**Insurance**

19. The Tenant is hereby advised and understands that the personal property of the Tenant is not insured by the Landlord for either damage or loss, and the Landlord assumes no liability for any such loss. The Tenant will obtain insurance for the personal property of the Tenant to the benefit of the Tenant. The Tenant will also insure the Property for liability insurance to the benefit of the Tenant and the Landlord.

**Abandonment**

20. If at any time during the term of this Lease, the Tenant abandons the Property or any part of the Property, the Landlord may, at its option, enter the Property by any means without being liable for any prosecution for such entering, and without becoming liable to the Tenant for damages or for any payment of any kind whatever, and may, at the Landlord's discretion, as agent for the Tenant, rent the Property, or any part of the Property, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such renting, and, at the Landlord's option, hold the Tenant liable for any difference between the Rent that would have been payable under this Lease during the balance of the unexpired term, if this Lease had continued in force, and the net rent for such period realized by the Landlord by means of the renting. If the Landlord's right of re-entry is exercised following abandonment of the Property by the Tenant, then the Landlord may consider any personal property belonging to the Tenant and left on the Property to also have been abandoned, in which case the Landlord may dispose of all such personal property in any manner the Landlord will deem proper and is relieved of all liability for doing so.

**Attorney Fees**

21. In the event that any action is filed in relation to this Lease, the unsuccessful party in the action will pay to the successful party, in addition to all the sums that either party may be called on to pay a reasonable sum for the successful party's attorney fees.

**Governing Law**

22. It is the intention of the parties to this Lease that the tenancy created by this Lease and the performance under this Lease, and all suits and special proceedings under this Lease, be construed in accordance with and governed, to the exclusion of the law of any other forum, by

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

the laws of the State of Maryland, without regard to the jurisdiction in which any action or special proceeding may be instituted.

### Severability

23. If there is a conflict between any provision of this Lease and the Act, the Act will prevail and such provisions of the Lease will be amended or deleted as necessary in order to comply with the Act. Further, any provisions that are required by the Act are incorporated into this Lease.

24. In the event that any of the provisions of this Lease will be held to be invalid or unenforceable in whole or in part, those provisions to the extent enforceable and all other provisions will nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Lease and the remaining provisions had been executed by both parties subsequent to the expungement of the invalid provision.

### Amendment of Lease

25. Any amendment or modification of this Lease or additional obligation assumed by either party in connection with this Lease will only be binding if evidenced in writing signed by each party or an authorized representative of each party.

### Additional Clause

26. The pet fee of $300 per pet is non-refundable at the time of move out.

### Damage to Property

27. If the Property, or any part of the Property, will be partially damaged by fire or other casualty not due to the Tenant's negligence or willful act or that of the Tenant's employee, family, agent, or visitor, the Property will be promptly repaired by the Landlord and there will be an abatement of Rent corresponding with the time during which, and the extent to which, the Property may have been untenantable. However, if the Property should be damaged other than by the Tenant's negligence or willful act or that of the Tenant's employee, family, agent, or visitor and the Landlord decides not to rebuild or repair the Property, the Landlord may end this Lease by giving appropriate notice.

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

### Maintenance

28. The Tenant will, at its sole expense, keep and maintain the Property and appurtenances in good and sanitary condition and repair during the term of this Lease and any renewal of this Lease.

29. Major maintenance and repair of the Property involving anticipated or actual costs in excess of $100.00 per incident not due to the Tenant's misuse, waste, or neglect or that of the Tenant's employee, family, agent, or visitor, will be the responsibility of the Landlord or the Landlord's assigns.

30. Where the Property has its own sidewalk, entrance, driveway or parking space which is for the exclusive use of the Tenant and its guests, the Tenant will keep the sidewalk, entrance, driveway or parking space clean, tidy and free of objectionable material including dirt, debris, snow and ice.

31. Where the Property has its own garden or grass area which is for the exclusive use of the Tenant and its guests, the Tenant will water, fertilize, weed, cut and otherwise maintain the garden or grass area in a reasonable condition including any trees or shrubs therein.

32. The Tenant will also perform the following maintenance in respect to the Property: Pool maintenance.

### Care and Use of Property

33. The Tenant will promptly notify the Landlord of any damage, or of any situation that may significantly interfere with the normal use of the Property or to any furnishings supplied by the Landlord.

34. The Tenant will not make (or allow to be made) any noise or nuisance which, in the reasonable opinion of the Landlord, disturbs the comfort or convenience of other tenants.

35. The Tenant will keep the Property reasonably clean.

36. The Tenant will dispose of its trash in a timely, tidy, proper and sanitary manner.

37. The Tenant will not engage in any illegal trade or activity on or about the Property.

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

38. The Landlord and Tenant will comply with standards of health, sanitation, fire, housing and safety as required by law.

39. The Tenant agrees that no signs will be placed or painting done on or about the Property by the Tenant or at the Tenant's direction without the prior, express, and written consent of the Landlord. Notwithstanding the above provision, the Tenant may place election signs on the Property during the appropriate time periods.

40. If the Tenant is absent from the Property and the Property is unoccupied for a period of four consecutive days or longer, the Tenant will arrange for regular inspection by a competent person. The Landlord will be notified in advance as to the name, address and phone number of the person doing the inspections.

41. The hallways, passages and stairs of the building in which the Property is situated will be used for no purpose other than going to and from the Property and the Tenant will not in any way encumber those areas with boxes, furniture or other material or place or leave rubbish in those areas and other areas used in common with any other tenant.

42. Footwear which are soiled or wet should be removed at the entrance to the building in which the Property is located and taken into the Tenant's Property.

43. At the expiration of the term of this Lease, the Tenant will quit and surrender the Property in as good a state and condition as they were at the commencement of this Lease, reasonable use and wear and tear excepted.

**Carbon Monoxide Alarm**

44. Prior to the Tenant taking possession of the Property, the Landlord will ensure that any carbon monoxide alarm in place is operational. Upon possession, the Landlord will provide the Tenant with working batteries, for all carbon monoxide alarms. The Landlord will be responsible for the repair and replacement of any missing or nonfunctional carbon monoxide alarm upon written request of the Tenant.

45. The Tenant will keep, test, and maintain in good repair all the carbon monoxide alarms in the Property. The Tenant must provide the Landlord or the Landlord's agent with a written notice if any carbon monoxide alarm needs its batteries replaced or if the alarm is stolen, removed,

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

missing, or not operational. Further, the Tenant must notify the Landlord, or its agent, in writing of any deficiency in any carbon monoxide alarm that the Tenant is unable to fix.

46. No person may remove any batteries from, or in any way render inoperable, a carbon monoxide alarm except as part of the process to inspect, maintain, repair or replace the alarm or batteries in the alarm.

### Prohibited Activities and Materials

47. The Tenant will not keep or have on the property any article or thing of a dangerous, flammable or explosive character that might unreasonably increase the danger of fire on the Property or that might be considered hazardous by any responsible insurance company.

48. The Tenant will not perform any activity on the Property or have on the property any article or thing that the Landlord's insurance company considers increases any insured risk such that the insurance company denies coverage or increases the insurance premium.

49. The Tenant is prohibited from:

    a.    the storage of expensive articles on the Property if it creates an increased security risk; and

    b.    the growing of, or storage of, medical marijuana on the Property.

50. The Tenant will not perform any activity on the Property that the Landlord feels significantly increases the use of electricity, heat, water, sewer or other utilities on the Property.

### Rules and Regulations

51. The Tenant will obey all rules and regulations of the Landlord regarding the Property.

### Address for Notice

52. For any matter relating to this tenancy, the Tenant may be contacted at the Property.  After this tenancy has been terminated, the Tenant may be contacted at the Property or at such other address as the Tenant may advise.  At all times, the Tenant may also be contacted or served at or through the phone number or email below:

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

    a.    Phone: (301) 873-8422.

    b.    Email: dmac724@gmail.com.

53.    For any matter relating to this tenancy, whether during or after this tenancy has been terminated, the Landlord's address for notice is:

    a.    Name: Eagle Properties and Investments LLC.

    b.    Address: 445 Windover Ave NW, Vienna, VA 22180, USA.

           The contact information for the Landlord is:

    c.    Phone:  (571) 436-3545.

    d.    Email address: amit@eagleinvestmentsllc.com.

**General Provisions**

54.    All monetary amounts stated or referred to in this Lease are based in the United States dollar.

55.    Any waiver by the Landlord of any failure by the Tenant to perform or observe the provisions of this Lease will not operate as a waiver of the Landlord's rights under this Lease in respect of any subsequent defaults, breaches or non-performance and will not defeat or affect in any way the Landlord's rights in respect of any subsequent default or breach.

56.    This Lease will extend to and be binding upon and inure to the benefit of the respective heirs, executors, administrators, successors and assigns, as the case may be, of each party to this Lease. All covenants are to be construed as conditions of this Lease.

57.    All sums payable by the Tenant to the Landlord pursuant to any provision of this Lease will be deemed to be additional rent and will be recovered by the Landlord as rental arrears.

58.    Where there is more than one Tenant executing this Lease, all Tenants are jointly and severally liable for each other's acts, omissions and liabilities pursuant to this Lease.

59. Locks may not be added or changed without the prior written agreement of both the Landlord and the Tenant, or unless the changes are made in compliance with the Act.

60. The Tenant will be charged an additional amount of $25.00 for each N.S.F. check or checks returned by the Tenant's financial institution.

61. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Lease. Words in the singular mean and include the plural and vice versa. Words in the masculine mean and include the feminine and vice versa.

62. This Lease and the Tenant's leasehold interest under this Lease are and will be subject, subordinate, and inferior to any liens or encumbrances now or hereafter placed on the Property by the Landlord, all advances made under any such liens or encumbrances, the interest payable on any such liens or encumbrances, and any and all renewals or extensions such liens or encumbrances.

63. This Lease may be executed in counterparts. Facsimile signatures are binding and are considered to be original signatures.

64. This Lease will constitute the entire agreement between the Landlord and the Tenant. Any prior understanding or representation of any kind preceding the date of this Lease will not be binding on either party except to the extent incorporated in this Lease.

65. The Tenant will indemnify and save the Landlord, and the owner of the Property where different from the Landlord, harmless from all liabilities, fines, suits, claims, demands and actions of any kind or nature for which the Landlord will or may become liable or suffer by reason of any breach, violation or non-performance by the Tenant or by any person for whom the Tenant is responsible, of any covenant, term, or provisions hereof or by reason of any act, neglect or default on the part of the Tenant or other person for whom the Tenant is responsible. Such indemnification in respect of any such breach, violation or non-performance, damage to property, injury or death occurring during the term of the Lease will survive the termination of the Lease, notwithstanding anything in this Lease to the contrary.

66. The Tenant agrees that the Landlord will not be liable or responsible in any way for any personal injury or death that may be suffered or sustained by the Tenant or by any person for whom the

Tenant is responsible who may be on the Property of the Landlord or for any loss of or damage or injury to any property, including cars and contents thereof belonging to the Tenant or to any other person for whom the Tenant is responsible.

67. The Tenant is responsible for any person or persons who are upon or occupying the Property or any other part of the Landlord's premises at the request of the Tenant, either express or implied, whether for the purposes of visiting the Tenant, making deliveries, repairs or attending upon the Property for any other reason. Without limiting the generality of the foregoing, the Tenant is responsible for all members of the Tenant's family, guests, servants, tradesmen, repairmen, employees, agents, invitees or other similar persons.

68. During the last 30 days of this Lease, the Landlord or the Landlord's agents will have the privilege of displaying the usual 'For Sale' or 'For Rent' or 'Vacancy' signs on the Property.

69. Time is of the essence in this Lease. Every calendar day except Saturday, Sunday or U.S. national holidays will be deemed a business day and all relevant time periods in this Lease will be calculated in business days. Performance will be due the next business day, if any deadline falls on a Saturday, Sunday or a national holiday. A business day ends at five p.m. local time in the time zone in which the Property is situated.

**IN WITNESS WHEREOF** The parties have duly affixed their signatures on this __16__ day of __July__, 20__23__.

*Residential Lease*             Page 13 of 17

*Dina MacDonald*  
dotloop verified  
06/16/23 10:12 PM EDT  
O1HD-9PYS-0HCY-YTQK

Tenant: Dina MacDonald

*Jean Gambo*  
dotloop verified  
06/16/23 9:57 AM EDT  
RMI4-YFK9-4HWM-GAMT

Tenant: Jean Gambo           Landlord: Eagle Properties and Investments LLC

per: *Amit Jain*  
dotloop verified  
06/16/23 10:23 AM EDT  
Y0MH-DVGG-ITIW-6LZP

Tenant: Troy MacDonald

*Francesco Gambo*  
dotloop verified  
06/16/23 5:56 PM EDT  
GF5C-UB3G-KNIG-FGNU

Tenant: Francesco Gambo

The Tenant acknowledges receiving a duplicate copy of this Lease signed by the Tenant and the Landlord on the 16 day of July, 2023.

*Dina MacDonald*  
dotloop verified  
06/16/23 10:12 PM EDT  
UZVT-LOTO-ZNN2-HHX4

Tenant: Dina MacDonald

*Jean Gambo*  
dotloop verified  
06/16/23 9:57 AM EDT  
XTIG-HWTD-EML5-815C

Tenant: Jean Gambo

Tenant: Troy MacDonald

*Francesco Gambo*  
dotloop verified  
06/16/23 5:56 PM EDT  
YR74-MWIJ-G0SR-Y3MP

Tenant: Francesco Gambo

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

# Lead-Based Paint Disclosure

Property: 15474 Roxbury Rd, Glenwood, MD 21738, USA
Landlord: Eagle Properties and Investments LLC
Tenant: Dina MacDonald; Jean Gambo; Troy MacDonald and Francesco Gambo

**Landlord's Disclosure**

The Landlord CERTIFIES THAT:

1. The Landlord has NO knowledge of any lead-based paint and/or lead-based paint hazards in or about the Property.

2. The Landlord has NO records or reports relating to lead-based paint and/or lead-based paint hazards in or about the Property.

Landlord: Eagle Properties and Investments LLC

Date: __16__ day of __July__, 20__23__   per: _Amit Jain_

dotloop verified
06/16/23 10:23 AM EDT
IPOS-G6EA-V8YX-68O4

**Tenant's Disclosure**

The Tenant ACKNOWLEDGES receipt of:

i. the information contained in the above Landlord's Disclosure including the above-mentioned reports and records; and

ii. the pamphlet *Protect Your Family from Lead in Your Home* (EPA-747-K-99-001) or an equivalent pamphlet that has been approved for use in the state by the Environmental Protection Agency.

*Residential Lease*     Page 15 of 17

*Dina MacDonald*
dotloop verified
06/16/23 10:12 PM EDT
56NJ-YF7S-WHNZ-RVZB

Tenant: Dina MacDonald

*Jean Gambo*
dotloop verified
06/16/23 9:57 AM EDT
DVBA-ZCK0-VVHQ-M98M

Tenant: Jean Gambo

Date: 16 day of July, 2023

Tenant: Troy MacDonald

*Francesco Gambo*
dotloop verified
06/16/23 5:56 PM EDT
3ZWP-KYLO-PAFX-CL5M

Tenant: Francesco Gambo

The pamphlet *Protect Your Family from Lead in Your Home* can be ordered in hard copy or can be printed from the website http://www2.epa.gov/lead/protect-your-family-lead-your-home.

## Asbestos Disclosure

Property: 15474 Roxbury Rd, Glenwood, MD 21738, USA

Landlord: Eagle Properties and Investments LLC

Tenant: Dina MacDonald; Jean Gambo; Troy MacDonald and Francesco Gambo

**Landlord's Disclosure**

The Landlord CERTIFIES THAT:

1.     The Landlord has investigated and there is no asbestos in or about the Property.

2.     The Landlord has NO records or reports with respect to asbestos in or about the Property.

Landlord: Eagle Properties and Investments LLC

Date: __16__ day of __July__, 20__23__    per: *Amit Jain*

dotloop verified
06/16/23 10:23 AM EDT
FAUD-DBLP-L6LX-KAD1

**Tenant's Disclosure**

The Tenant ACKNOWLEDGES receipt of the information contained in the above Landlord's Disclosure including any reports and records.

dotloop signature verification: dtlp.us/usSa-l2My-SYPn

*Residential Lease*                          Page 17 of 17

*Dina MacDonald*
dotloop verified
06/16/23 10:12 PM EDT
RWFJ-2HV6-LXFV-4G6N

Tenant: Dina MacDonald

*Jean Gambo*
dotloop verified
06/16/23 9:57 AM EDT
CU61-N2WU-U1FR-YKM6

Tenant: Jean Gambo

Date: 16 day of July , 20 23

Tenant: Troy MacDonald

*Francesco Gambo*
dotloop verified
06/16/23 5:56 PM EDT
J0NJ-BI3I-Y981-EZBM

Tenant: Francesco Gambo

Copyright 2002-2023, LegalContracts.com